Motion, treated as a motion for clarification of this Court’s memorandum and for amendment of this Court’s remittitur, granted. This Court’s November 18, 1992 memorandum is amended by deleting the first paragraph thereof and substituting in its stead the following: "The order of the Appellate Division should be reversed, with costs, and the order of Supreme Court, insofar as it granted appellant Christa Construction, Inc.’s motion to compel arbitration, reinstated.” Return of remittitur requested and, when returned, it will be amended to read as follows:
"Order reversed, with costs, and order of Supreme Court, Ontario County, insofar as it granted appellant Christa Construction, Inc.’s motion to compel arbitration, reinstated in a memorandum.
"Acting Chief Judge Simons and Judges Kaye, Titone, Bellacosa and Smith concur; Judge Hancock, Jr., taking no part.”
Inasmuch as only Christa Construction, Inc. moved for leave to appeal and we granted that motion, and inasmuch as Christa is the only party appellant in the Court of Appeals, we can and and did grant affirmative relief on this record and in this procedural setting only to that party.
Concur: Acting Chief Judge Simons and Judges Kaye, Titone, Bellacosa and Smith. Taking no part: Judge Hancock, Jr.
*1035 DIGEST-INDEX [See separate Table of Statutes and Rules Construed] ACTIONS. See Dismissal and Nonsuit, and other specific titles. ADMINISTRATIVE LAW. Judicial Review. 1. Substantial Evidence Test — Propriety Where Procedural Noncompliance by Administrative Body Amounts to Abuse of Discretion or Authority. — In a CPLR article 78 proceeding challenging a determination of respondent Board of Education dismissing petitioner teacher from her tenured teaching position for insubordination wherein the Court of Appeals concluded that respondent violated the mandatory provisions of Education Law § 3020-a (3) (b) and (c) by paying compensation beyond that authorized by statute to a member of the hearing panel that considered petitioner’s case, respondent’s contention that the Court should nonetheless affirm the hearing panel’s determinations if they are supported by substantial evidence in the record is rejected. Where the procedural noncompliance by an administrative body rises to the level of an abuse of discretion or authority, as it does here, the noncompliance alone is sufficient to warrant granting a new hearing. To employ a substantial evidence test here would be to give validity to a record clouded by the unlawful act of the Board and to leave petitioner with an inadequate remedy. Matter of Syquia v Board of Educ., 80 NY2d 531. ADOPTION. Notice to Putative Father. 1. Consent — Unwed Father Who is Unaware of Child’s Conception or Birth — Due Process. — Petitioner, an unwed father, who was unaware of the pregnancy or the birth of his child until nearly 18 months after the child’s birth, was neither entitled to notice nor was his consent to the adoption of his child required where he failed to take any steps to discover the pregnancy or the birth of the child before first asserting his parental interest 10 months after the adoption became final (see, Domestic Relations Law § 111-a [2]; § 111 [1] [e]). In determining whether an unwed father has created a liberty interest, the timing of the father’s actions is the most significant element. The biological father must promptly manifest his parental interest through action on his part; absent that, the biological link of the father is insufficient to create a constitutionally protected interest. Here, petitioner’s inaction was solely attributable to him and under the circumstances he is not entitled to the protections of constitutional due process. Matter of Robert O. v Russell K., 80 NY2d 254. 2. Consent — Unwed Father Who is Unaware of Conception or Birth of Child — Equal Protection. — Petitioner, an unwed father, who was unaware of the pregnancy or birth of his child until 10 months after the child’s adoption became final was not denied equal protection because the applicable statutes (Domestic Relations Law § 111-a [2]; § 111 [1] [e]) did not require notice to one in his position or require his consent to the adoption. The Equal Protection Clause does not preclude the State from withholding the privilege of vetoing an adoption from an unwed father who has never come forward to participate in the rearing of his 1035
*1036 1036 80 NEW YORK REPORTS, 2d SERIES ADOPTION — Cont’d child. That "unknowing” unwed fathers may be treated differently under the statute than other unwed fathers is not dispositive. The equal protection inquiry focuses on whether the statute’s relation to the State interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment, and petitioner has not met the burden of showing a lack of rationality in either the notice or the consent provisions of New York law. Matter of Robert O. v Russell K., 80 NY2d 254. AGENCY. See Brokers. APPEAL. See, also, Crimes, and other specific titles. Academic and Moot Questions. 1. Temporary Injunctive Relief — Resolution of Summary Judgment Motion.— In a special proceeding by the Attorney-General to enjoin a corporation operating a health club from entering into any new contracts with consumers until it had complied with the security requirements of General Business Law § 622-a and to impose substantial fines and costs, the arguments of respondents, an individual and a related corporation, that they were denied due process by the grant of temporary injunctive relief freezing their bank accounts pending trial and directing them to file a bond, and that they were improperly joined in the court’s order notwithstanding an absence of evidence showing that they exercised control over or acted as agents for the now defunct health club, are not rendered moot by Supreme Court’s decision, issued while the instant appeal was under advisement, granting the Attorney-General’s motion for summary judgment against the health club, since that motion resolved only the issue of liability, and because the issue of damages persists, as does the issue of liability with respect to the related corporate defendant, the order freezing bank accounts and requiring the filing of the bond continues to ensure availability of funds while the remaining issues are resolved. Therefore, the propriety of issuing that order remains an issue meriting appellate review. People v Health & Sports Clubs, 80 NY2d 803. Court of Appeals. 2. Matters Reviewable — Improper Summation Comments. — To the extent that Reehil v Fraas (197 NY 64) states that exceptions to improper summation comments raise no question of law reviewable by the Court of Appeals, it is no longer to be followed. DiMichel v South Buffalo Ry. Co., 80 NY2d 184. 3. Consideration of Matters Outside Record — Child Custody Proceeding. — In a proceeding pursuant to Social Services Law §392 involving a determination of custody of a child voluntarily placed in foster care and not freed for adoption, where the Appellate Division applied an erroneous "best interest” test, the Court of Appeals, in reversing the Appellate Division’s award of legal custody to the foster parents, will take notice of new facts and allegations outside the record to the extent they indicate that the record before the Court of Appeals is no longer sufficient for determining appellant father’s fitness and right to custody, and remit to Family Court for a new hearing and determination of those issues. Appellant’s request that the Court of Appeals ignore the new developments and simply grant appellant custody, because matters outside the record cannot be considered by an appellate court, would exalt the procedural rule to a point of absurdity and reflect no credit on the judicial process. Changed circumstances may have particular significance in child custody matters. Matter of Michael B., 80 NY2d 299. 4. Matters Reviewable — Latent Defect in Juvenile Delinquency Petition. — In a juvenile delinquency proceeding, respondent’s argument, raised for the first time on his appeal to the Appellate Division from the dispositional order, that the capacity of the 10-year-old complainant to sign the supporting deposition under oath had not been properly established through a voir dire conducted before her signature was affixed, cannot be reviewed by the Court of Appeals. Inasmuch as
*1037 DIGEST-INDEX, 80 NY2d 1037 APPEAL — Cont’d the claimed defect was not apparent from the face of the accusatory instrument, it was not the kind of nonwaivable "jurisdictional flaw” that the Court of Appeals may consider even in the absence of a timely objection. Matter of Edward B., 80 NY2d 458. 5. Matters Reviewable — Latent Defect in Juvenile Delinquency Petition. — In a juvenile delinquency proceeding, respondent’s claim on his appeal from the Appellate Division order affirming Family Court’s dispositional order that the supporting deposition was legally inadequate because the complainant was not made aware of its precise contents before she signed it, has not been waived and is properly before the Court of Appeals notwithstanding that respondent’s contention concerns a latent rather than a facial defect since the claim was the subject of a motion to dismiss. Matter of Edward B., 80 NY2d 458. Finality of Judgments and Orders. 6. Order Granting Motion to Disqualify Counsel. — An order granting or denying a motion to disqualify counsel is nonfinal since it merely administers the course of litigation. Accordingly, to the extent an appeal to the Court of Appeals seeks review of so much of an order of the Appellate Division as reversed an order of the Surrogate’s Court granting objectant’s motion to disqualify the proponent’s counsel, it is dismissed. Matter of Henderson, 80 NY2d 388. Grant of Relief to Nonappealing Party. 7. In two personal injury actions in which the Appellate Division held that defendants had to turn over to plaintiffs only those surveillance tapes that they intended to use at trial, the Court of Appeals cannot consider, on defendants’ appeals from the respective Appellate Division orders, plaintiffs’ arguments that they are entitled to view every surveillance film that defendants may have taken, regardless of whether defendants intend to use the films at trial, since any broadening of the scope of discovery authorized by the Appellate Division would, in effect, grant affirmative relief to plaintiffs, who are not appellants here. DiMichel v South Buffalo Ry. Co., 80 NY2d 184. Matters Reviewable. See Infants, 6. ARBITRATION. Stay of Arbitration. 1. Potential Public Policy Violation. — A controversy over petitioner’s right to receive supplemental payments upon his withdrawal from respondent law firm should be decided by an arbitrator in the first instance in light of the broad arbitration clause in the parties’ partnership agreement and the existence of factual disputes between the parties, including which amendment of the agreement applies and whether the supplemental payments were intended to constitute approximation of the withdrawing partner’s share of undistributed earned income. Petitioner’s claim that an arbitrator’s award denying him benefits would be contrary to public policy is insufficient to preemptively stay arbitration and may be addressed subsequently on a motion to vacate or confirm the award, if such an award is in fact made. Hackett v Milbank, Tweed, Hadley & McCloy, 80 NY2d 870. 2. Contractual Dispute between School District and Contractors — Public Policy. — In litigation arising out of a contract between a construction company and a board of education, Supreme Court properly ordered the parties to arbitrate their differences, notwithstanding the assertion of the school district that the contract is void because the board’s agreement with respect to change orders, if enforced through an arbitration, would result in an expenditure by the board in excess of amounts lawfully appropriated (see, Education Law § 1718 [1]), since arbitration is a favored method of dispute resolution in New York, and New York courts should interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration. While arbitration may be challenged on public policy grounds, that is a limited exception which is not applicable here. Board of Edue. v Christa Constr., 80 NY2d 1031.
*1038 1038 80 NEW YORK REPORTS, 2d SERIES ATTORNEY AND CLIENT. Disciplinary Proceedings. 1. Fitness to Practice Law — Acts Committed while Attorney Mentally 111.— Respondent attorney was properly found to be unfit to practice law and disbarred for violating DR 1-102 (A) (6) (now DR 1-102 [A] [7] [22 NYCRR 1200.3 (a) (7)]), which prohibits a lawyer from engaging in "conduct that adversely reflects on [the lawyer’s] fitness to practice law”, on the basis of his commission of four homicides, notwithstanding that he was found not guilty of the killings by reason of mental disease or defect. That respondent was not criminally culpable for the four killings is not controlling. The primary purpose of an attorney disciplinary proceeding is the protection of the public in its reliance on the integrity and responsibility of the legal profession. Thus, the inquiry is not directed to the attorney’s subjective mental processes, but to the objectives and qualitative nature of the conduct, for it is the acts themselves which the public sees and which guide its perception of the Bar. Although respondent was not criminally responsible for his acts, they tended to undermine public confidence in the Bar and, as such, they properly provided a basis for disciplinary action. Matter of Rowe, 80 NY2d 336. ' 2. Holding Oneself Out as Attorney in Violation of Suspension Order — Use of Letters "J.D.”. — In an attorney disciplinary proceeding, in determining whether an individual held himself out as an attorney in violation of an Appellate Division order of suspension, the individual’s use of the letters "J.D.” following his name identified that person as one who has successfully completed a law school curriculum, not as a member of the Bar licensed to practice law. Matter of Rowe, 80 NY2d 336. 3. Practice of Law — Publication of Law-Related Article by Suspended Attorney. — Respondent attorney did not violate the provision of an Appellate Division order of suspension, which directed respondent to desist and refrain "from practicing law in any form”, by publishing a law-related article during his suspension. The practice of law involves the rendering of legal advice and opinions directed to particular clients. Inasmuch as respondent’s article neither rendered advice to a particular person nor was intended to respond to known needs and circumstances of a larger group, its publication did not constitute the practice of law. Matter of Rowe, 80 NY2d 336. 4. Publication of Law-Related Article by Suspended Attorney — Freedom of Speech. — An Appellate Division order of suspension, which, in part, prohibited respondent attorney "from giving to another an opinion as to the law or its application or any advice in relation thereto”, violated respondent’s constitutional right to speak freely insofar as it was applied to discipline respondent for publishing a law-related article during his suspension that "offered advice to readers on the significance and effect of court decisions concerning the legal rights of psychiatric patients who refuse treatment”. The courts may, in the public interest, prohibit attorneys from practicing law and that prohibition may incidentally affect the attorney’s constitutional right to free speech by forbidding the giving of advice to clients. Where the individual is not practicing law, however, and does not purport to be exercising judgment on behalf of any particular individual, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech, and impermissibly interferes with that individual’s First Amendment rights. Here, since publication of the article did not constitute the practice of law, and respondent was exercising his right to free speech by publishing his article, application of the Appellate Division order to discipline respondent for publishing the article violated respondent’s constitutional right to free speech. Matter of Rowe, 80 NY2d 336. ATTORNEY-GENERAL. Enjoining Deceptive Practices. 1. Consumer Fraud — Liability of Individual Corporate Director. — In a special proceeding by the Attorney-General to enjoin a corporation operating a health
*1039 DIGEST-INDEX, 80 NY2d 1039 ATTORNEY-GENERAL — Cont’d club from entering into any new contracts with consumers until it had complied with the security requirements of General Business Law § 622-a and to impose substantial fines and costs, there is no merit to the contention of an individual respondent and another corporate respondent that the trial court was without a basis to freeze their bank accounts or impose a bond requirement on them because the health club was a completely separate and distinct corporation which was not controlled by them, since Executive Law § 63 (12) authorizes the Attorney-General to prosecute "any person” who engages in repeated fraudulent or illegal acts, with "fraud” broadly defined, and not only is it sufficiently likely to be shown at trial that the individual respondent, as the 50% owner and eventual sole director of the health club, against which abundant evidence of fraud and persistent illegality exists, had actual knowledge of the club’s fraudulent activities, but there is also evidence that it was the individual respondent himself who decided to operate the club without complying with section 622-a. Accordingly, the individual respondent may be liable for any money owed to club members and any civil fines owed the State. People v Health & Sports Clubs, 80 NY2d 803. 2. Consumer Fraud — Liability of Related Corporation. — In a special proceeding by the Attorney-General to enjoin a corporation operating a health club from entering into any new contracts with consumers until it had complied with the security requirements of General Business Law § 622-a and to impose substantial fines and costs, there is no merit to the contention of another corporate respondent that the trial court was without a basis to freeze its bank accounts or impose a bond requirement on it because the health club was a completely separate and distinct corporation, since there was a sufficient showing that the two corporations were not separate and distinct entities. The other corporation had the same two shareholders as did the health club, and it owned and operated the buildings in which the health club operated. Moreover, there was evidence that during negotiations with the Attorney-General, representations were made that the health club should be given a waiver from compliance with the statute because it was owned by the other corporate respondent, which had substantial assets and would stand behind the club’s debts. Additionally, there was other evidence of affinity between the corporations and, thus, there was a substantial likelihood that the Attorney-General could prove that the corporations were interlocking and acted in concert, thereby subjecting the other corporation to liability for the fraudulent and illegal activities pursued by the health club. People v Health & Sports Clubs, 80 NY2d 803. 3. Due Process — Freezing Bank Accounts — Filing Bond. — In a special proceeding by the Attorney-General to enjoin a corporation operating a health club from entering into any new contracts with consumers until it had complied with the security requirements of General Business Law § 622-a and to impose substantial fines and costs, an individual and a related corporation, also named as respondents, were not denied due process by the granting of temporary injunctive relief freezing their bank accounts pending trial and directing them to file a bond, since the instant dispute had proceeded for some months, the present litigation came as no surprise to them, prior negotiations with the Attorney-General clearly apprised respondents of the underlying facts, as did the petition, and afforded them ample opportunity to raise opposing contentions on the merits, and respondents restated those contentions in their answering petitions and at oral argument. Accordingly, the procedure was constitutionally sufficient and there was adequate support in the record to warrant the temporary relief awarded by the trial court. People v Health & Sports Clubs, 80 NY2d 803. BROKERS. Real Estate Brokers. 1. Responsibility of Corporate Broker for Violations by Salespersons — "Actual Knowledge” of Salespersons Not to be Imputed to Corporate Broker. — Knowledge possessed by sales employees of a corporate real estate broker is not by itself sufficient to satisfy the statutory ingredient of "actual knowledge” that must be chargeable against a broker under Real Property Law § 442-c for revocation or
*1040 1040 80 NEW YORK REPORTS, 2d SERIES BROKERS — Cont’d suspension of license purposes. The purposes and limitations of the relevant statute can best be effectuated and harmonized by allowing a corporate broker to be charged with "actual knowledge” only when its principals, i.e., representative brokers, directors or officers have actual knowledge of the pertinent violation or misrepresentation. Accordingly, respondent New York State Department of State’s suspension of petitioner corporate broker’s license for acts and knowledge of only its salesperson employees is not authorized and that determination was correctly annulled by the Appellate Division; however, since the absence of "actual knowledge” does not insulate real estate brokers from disciplinary measures less severe than license suspension or revocation for misconduct, a remand for consideration of an appropriate lesser sanction, if any, based on demonstrated untrustworthiness or incompetency, is necessary. Matter of Roberts Real Estate v New York State Dept, of State, Div. of Licensing Seros., 80 NY2d 116. CITIES. See Municipal Corporations. CIVIL RIGHTS. Discrimination in Employment. 1. Availability of Punitive Damages in Court Action. — A person aggrieved by a discriminatory practice in violation of the Human Rights Law may not recover punitive damages in a court action brought pursuant to Executive Law § 297 (9). Nothing in the statute indicates that the Legislature, in making legal remedies available in a judicial proceeding, contemplated that the courts would grant relief for a purpose other than alleviating or rectifying the harm done to the person aggrieved by the discrimination. In administrative proceedings before the State Division of Human Rights, the purpose of the permissible remedies is solely to right the wrong done to the aggrieved person, not to punish the wrongdoer. That the Legislature has consistently been concerned with rectifying the wrong to the injured party caused by the discriminatory practice — not punishing the transgressor — is borne out by the relevant history of the Human Rights Law from the time of its original enactment in 1951. Moreover, the logical inference from the Legislature’s action in amending the Human Rights Law to expressly permit punitive damages in housing cases is that such damages were not then recoverable for discrimination in other areas including employment. Thoreson o Penthouse Inti., 80 NY2d 490. CIVIL SERVICE. See, also, Municipal Corporations; Schools, and other specific titles. Appointment and Promotion. 1. County Deputy Sheriffs/Correction Officers. — County Law § 652-a, which permits the Sheriff in certain counties to continue "the appointment and promotion of deputy sheriffs” and which was adopted in response to an amendment to the State Constitution eliminating the basis for exempting certain employees of the Sheriff from the Civil Service Law, was designed to provide time during which a fair and orderly means of dealing with the many issues raised by the constitutional amendment are addressed and resolved, and was intended to maintain the status quo in order to prevent any disruption in either the law enforcement or corrections services provided by the Sheriff. Accordingly, the statute authorized a Sheriff to make appointments to fill staff vacancies at the county jail, and respondent personnel officer erred in declaring the appointments of petitioners invalid because they were nominally for the position of correction officer instead of Deputy Sheriff, since it is clear from the legislative history that the Legislature did not use the term "deputy sheriff”, or intend it to be used, in a narrow, technical way. Matter of Orlopp o Stirpe, 80 NY2d 946. Classification. 2. Exempt or Competitive Class — Impracticability of Competitive Testing. — In a proceeding challenging the designation of 40 Municipal Financial Analyst
*1041 DIGEST-INDEX, 80 NY2d 1041 CIVIL SERVICE — Cont’d positions as exempt, an order of the Appellate Division, which affirmed a judgment granting the petition, should be affirmed, since the Appellate Division properly concluded that the impracticability of competitive testing for the positions in question had not been established; nor did the record disclose any different or additional qualifications which would distinguish Municipal Financial Analysts from auditors placed in the competitive class. Accordingly, there was no rational basis for the wholesale exemption of all Municipal Financial Analysts from civil service competitive examination. Matter of Shafer v Regan, 80 NY2d 1006. Police. 3. Promotion — Accident Disability Retirement. — In a proceeding to direct respondent municipal officials to retroactively promote petitioner patrolman, who had retired on an accident disability pension, to the rank of sergeant and to recalculate his retirement allowance on the basis of the higher rank, an order of the Appellate Division, which affirmed the dismissal of the petition, is affirmed for the reasons stated in the memorandum thereat, which concluded that Matter of Deas v Levitt (73 NY2d 525) was controlling and required dismissal of the petition since it was undisputed that before the promotional list expired, petitioner failed to challenge its validity and, thus, he had no right to the relief requested; that it could not be said that respondents acted arbitrarily, capriciously or in bad faith by failing to notify petitioner before his retirement that he had passed a rescored promotional examination where petitioner was initially told that he had failed the examination, which was regraded following a successful, independent court challenge; that no property right is created by the right to appeal an adverse promotional decision (see, NY City Charter § 812 [d]); that petitioner was not entitled to relief pursuant to Civil Service Law § 50 (4) or § 52 (2); that selection for a Police Academy orientation course is not the legal equivalent of the promulgation of an official promotional list; that no one was promoted from the revised eligible list until after petitioner’s medical retirement; that there was nothing to indicate that any person had ever been promoted after approval of a medical retirement, and that respondents did not act arbitrarily, capriciously or in bad faith. Matter ofHasenstab v McGuire, 80 NY2d 812. 4. Line-of-Duty Injury — Negligence of Injured Officer. — In a proceeding to review a determination of respondents denying petitioner police officer a line-of-duty designation for a back injury, thereby disqualifying petitioner from receiving payment of her hospital bills pursuant to Administrative Code of the City of New York § 12-127 (b), which authorizes the City to pay hospital bills of its uniformed forces who, while on duty, sustain injury through no "fault or misconduct” on their part, respondents properly interpreted the "fault or misconduct” standard to include negligence, thereby prohibiting payment of petitioner’s hospital expenses, which were occasioned by petitioner’s slip in a puddle of water in a precinct bathroom. Although petitioner contends that the statutory standard refers to gross negligence or acts that would result in the denial of benefits under the Workers’ Compensation Law, her reliance is misplaced since the Workers’ Compensation Law provides benefits "without regard to fault as a cause of the injury” (Workers’ Compensation Law § 10 [1]), and construing "fault” as equivalent to "gross negligence” is unsupported by either the plain meaning of “fault” or the legislative history. Moreover, respondents’ interpretation is reasonable in this instance. Matter ofHeintz v Brown, 80 NY2d 998. 5. Line-of-Duty Injury — Slipping on Wet Bathroom Floor. — In a proceeding to review a determination of respondents denying petitioner police officer a line-of-duty designation for a back injury she sustained when she slipped on a wet bathroom floor in the precinct, thereby disqualifying petitioner from receiving payment of her hospital bills pursuant to Administrative Code of the City of New York § 12-127 (b), which does not authorize such payment if an officer’s injury resulted from his or her "fault or misconduct”, respondents’ determination was neither arbitrary, capricious, nor an abuse of discretion, since respondents met their burden of showing that petitioner was negligent. That petitioner failed to
*1042 1042 80 NEW YORK REPORTS, 2d SERIES CIVIL SERVICE — Cont’d avoid an obvious hazard is supported by her own statement that the water was a puddle in front of a sink; moreover, petitioner’s failure to allege any facts tending to show that her injuries were not due to any fault or misconduct on her part leaves the finding of negligence unrebutted. In addition, petitioner’s request was subjected to five levels of internal review via an informal grievance process, and at no time during that process did petitioner supplement her claim with information establishing that she was not negligent. Accordingly, there was a rational basis for respondents’ determination. Matter ofHeintz v Brown, 80 NY2d 998. Retirement and Pension Benefits. See Civil Service, 3. CONSTITUTIONAL LAW. Constitutionality of Senate Redistricting Plan. See Legislature, 1, 2. Due Process of Law. See Adoption, 1; Attorney-General, 3; Crimes, 55; Social Services, 3; Taxation, 5. Duties of State Comptroller. See Counties, 1. Equal Protection of Laws. See, also, Adoption, 2; Social Services, 3; Taxation, 6. 1. Rational Basis Test. — The rational basis test is the appropriate standard of review for a challenge under the Equal Protection and Due Process Clauses of the Federal and State Constitutions to Social Services Law § 131-c (2), which requires that a portion of the income of a grandparent who resides in the same dwelling unit as an infant grandchild and minor parent under the age of 18, be deemed available to the infant in determining the infant’s eligibility for Home Relief payments, since the statute involves economic and social welfare concerns, presenting no distinctions based on race, disability or other suspect classification. Lovelace v Gross, 80 NY2d 419. Freedom of Speech. See Attorney and Client, 4; Libel and Slander, 1-4. Obligation of State to Aid Needy. See Social Services, 4. Privileges and Immunities Clause. See Taxation, 6. CONTRACTS. See, also, Arbitration; Brokers; Insurance; Municipal Corporations; Vendor and Purchaser, and other specific titles. Illegal Contracts. 1. Enforceability of Loan Agreement That Violates Small Business Administration Regulations. — A loan agreement that violated Federal Small Business Administration (SBA) regulations by charging an excessive rate of interest and requiring a commitment fee is enforceable under New York law, since the violation was not malum, in se but was merely malum prohibitum due to Federal law, which does not provide for borrowers to interpose illegality as a defense to repayment of their loans, and the SBA’s regulatory sanctions, reinforced by the potential civil liability where State law is also violated, complementarily and proportionately protect the public policy underlying the Federal Small Business Investment Act. Nothing in the Federal law compels a different result. Further, permitting plaintiff to seek repayment of the debt does not command illegal conduct; the SBA scheme does not provide that a loan in violation of its regulations is void ab initia, and the terms being enforced fall within the allowable parameters of Federal law. Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124. COUNTIES. See, also, Municipal Corporations. Entitlement to STOP-DWI Funds. 1. Constitutional Duties of State Comptroller. — A provision in the 1990-1991 State Operations Budget, which directed the State Comptroller to collect and
*1043 DIGEST-INDEX, 80 NY2d 1043 COUNTIES — Cont’d withhold a maximum of 2% of the revenues received in any court by counties participating in the special traffic options program for driving while intoxicated (STOP-DWI) in order to defray the costs incurred by the State Department of Motor Vehicles relating to STOP-DWI, violates NY Constitution, article V, § 1 since it assigns to the Comptroller duties not incidental to his constitutional duties and grants him overbroad discretion to effect the reduction in the counties’ share of STOP-DWI revenues. Although plaintiff counties concede that the Legislature, which has ultimate authority over the disposition of fines collected in the State, may reduce or even eliminate their share of the STOP-DWI revenues, the instant challenge concerns the methodology by which the Legislature accomplished the "up to” 2% reduction, and in that regard, the Supreme Court and Appellate Division correctly concluded that the provision in question did not merely direct the Comptroller to allocate funds between the State and localities, but invested him with extraconstitutional administrative duties which had no nexus with any auditing or other constitutionally designated function of the office of State Comptroller. County of Rensselaer v Regan, 80 NY2d 988. COURTS. Jurisdiction. See Crimes, 15. CRIMES. See, also, Evidence; Grand Jury; Infants (Juvenile Delinquents); Motor Vehicles, and other specific titles. Alibi. 1. Rebuttal Evidence. — In a robbery prosecution, the trial court did not err in permitting the People to rebut alibi witnesses’ testimony that they had promptly reported defendant’s alibi to police by calling the police officer to testify that such statements were never made, since the rule prohibiting the use of extrinsic evidence to impeach a witness on a matter that is merely collateral has no application where the issue to which the evidence relates is material in the sense that it is relevant to the very issues that the jury must decide. The extrinsic evidence herein was used to challenge the validity of the alibi, a material issue in the case, and was, therefore, not limited to collateral significance. Moreover, it makes no difference that the testimony to be impeached was elicited by the prosecutor rather than the defense, since, regardless of who elicited the evidence, the subject of that testimony was directly pertinent to the truthfulness of defendant’s alibi and, consequently, was relevant to a "material” issue. People v Knight, 80 NY2d 845. Appeal. See, also, Crimes, 23, 73, 82, 83. 2. Court of Appeals — Affirmative Relief Unavailable to Nonappealing Party.— On defendant’s appeal to the Court of Appeals from an order of the Appellate Division, which reversed County Court’s order granting a motion by defendant to suppress certain physical evidence seized pursuant to a search warrant that was supported in part by information from a confidential informant, after the People were unable to produce the informant for an in camera Darden hearing, the Court of Appeals is unable to consider the People’s argument that the hearing court should not have ordered a Darden examination in the first instance since, if the Court of Appeals were to hold that the hearing Judge abused his discretion in ordering the examination, it would in essence be affording affirmative relief to a nonappealing party, which the Court of Appeals is not empowered to do. To the extent that People v Johnson (39 NY2d 364) suggests that CPL 470.35 (2) (b) gives the Court of Appeals power to grant affirmative relief to a nonappealing party, it is overruled. People v Carpenito, 80 NY2d 65. 3. Trial Court Order Suppressing Evidence — Further Prosecution Not Barred under CPL 450.50 (2) When People Withdraw Appeal with Permission of Appellate Court. — CPL 450.50 (2), which provides that the taking of an appeal by the People pursuant to CPL 450.20 (8) from a trial court order suppressing evidence constitutes a bar to the prosecution of the accusatory instrument unless and until
*1044 1044 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d the suppression order is reversed upon appeal and vacated, does not operate to bar further prosecution of an indictment unless and until the underlying People’s appeal actually culminates in an affirmance. Thus, the People’s CPL 450.50 (1) statement that the order to be appealed has rendered their case either "insufficient as a matter of law” or "so weak in its entirety that any reasonable possibility of prosecuting * * * has been effectively destroyed”, which the People are required to file by CPL 450.20 (8) when they take such an appeal, is not binding on the People so as to foreclose prosecution after the People’s appeal has been withdrawn with the permission of the appellate court. An appeal that has been "withdrawn” with the permission of the court is a nullity. Consequently, a withdrawn appeal is not an appeal that has been "taken” within the meaning of CPL 450.50 (2) and the bar to further prosecution contemplated by that statute is not applicable. Further, if the appellate court has authorized the withdrawal of an appeal, the accompanying CPL 450.50 (1) statement is necessarily withdrawn along with it and, in consequence, it is of no further legal significance. People v McIntosh, 80 NY2d 87. 4. Power of Court of Appeals to Review Legality of Corrective Action Directed by Appellate Division upon Reversal of Conviction. — The Court of Appeals does not have power under CPL 450.90 (2) (b) to review on defendant’s appeal the legality of the corrective action ordered by the Appellate Division in connection with its reversal of defendant’s conviction of one count of criminal possession of a weapon in the third degree. Although CPL 450.90 (2) (b) authorizes an appeal to be taken from an Appellate Division order reversing or modifying a judgment or order of a criminal court if the "appeal is based upon a contention that corrective action * * * taken or directed by the intermediate appellate court was illegal”, subdivision (2) must be read in conjunction with CPL 450.90 (1), which requires first that the order appealed from be adverse or partially adverse to the party appealing, and defendant was not adversely affected by the Appellate Division order reversing his judgment of conviction. People v Jackson, 80 NY2d 112. 5. Relief Available upon Finding That Trial Court Improperly Entertained Oral Suppression Motion. — Where the Appellate Division correctly concluded that defendant’s oral motion to suppress should not have been entertained, the proper relief would have been for the Appellate Division to reverse the order of suppression and remit for further proceedings, including a new motion to suppress if appropriate, rather than to consider and dispose of the suppression motion on the merits. Since the motion was not made in accordance with the dictates of CPL article 710, it was, in effect, a nullity, and the Appellate Division should have treated the motion as if it had never been made in determining the proper relief on appeal. People v Mezon, 80 NY2d 155. 6. Court of Appeals — Fact Finding. — Where the trial court and the Appellate Division held the entire 90-day period of delay between the dismissal of an indictment and the People’s obtaining a new indictment to be unreasonable, the Court of Appeals will not consider the People’s request to exclude at least some of that period as a "reasonable time” for motion practice, since any effort by the Court of Appeals to define a lesser "reasonable” period for motion practice would require the Court to engage in fact finding, which is outside the scope of its powers. People v Cortes, 80 NY2d 201. 7. Matters Appealable — Bargained-For Waiver of Right to Appeal — Disposition. — A bargained-for waiver of the right to appeal does not affect the appealability of a judgment that is otherwise appealable under CPL 450.10 (1) and does not operate to deprive the appellate court of its jurisdiction of the appeal. Instead, it merely forecloses appellate review of all claims that might be raised on appeal, except those categories of claims that survive such waivers under case law. Accordingly, the proper disposition in appeals where there is no claim that the waiver was constitutionally defective and no public policy impediment to enforcing the waiver, is an affirmance predicated on the absence of any reviewable issues that have not been superseded by the waiver. Additionally, in cases where there has been a bargained-for waiver of the right to appeal and the intermediate appellate court determines that the judgment of conviction should be affirmed, it
*1045 DIGEST-INDEX, 80 NY2d 1045 CRIMES — Cont’d would be helpful if the intermediate appellate court would specify whether its disposition is based on the existence of an enforceable waiver or instead on the merits of the defendant’s appellate claims, so as to facilitate further appellate review and minimize unnecessary remittals. People v Callahan, 80 NY2d 273. 8. Validity of Waiver of Right to Appeal as Part of Negotiated Sentence or Plea Bargain — Appellate Challenge to Sentencing Procedures. — Except where the very power of the court is implicated, appellate challenges to the procedures utilized in determining and imposing sentence may effectively be waived by a voluntarily and intelligently made agreement entered in connection with a sentence or plea bargain. Accordingly, defendant cannot avoid the effect of his waiver of the right to appeal made in connection with his plea bargain where his appellate claim is addressed merely to the adequacy of the procedures the court used to arrive at its sentencing determination, specifically its purported overreliance on the presentencing report’s restitution recommendation and its failure to conduct a special inquiry into defendant’s ability to pay a surcharge. People v Callahan, 80 NY2d 273. 9. Validity of Waiver of Right to Appeal as Part of Negotiated Sentence or Plea Bargain — Constitutional Speedy Trial Claims. — Because of the societal interest in speedy trials and the implications for the integrity of the criminal justice system, parties cannot foreclose appellate review of a constitutional speedy trial claim through the plea bargaining process. This rule applies without regard to whether the facts in the particular case suggest duress arising from the facts underlying the speedy trial claim itself. People v Callahan, 80 NY2d 273. 10. Validity of Waiver of Right to Appeal as Part of Negotiated Sentence or Plea Bargain — Voluntary, Knowing and Intelligent Waiver. — Before a waiver of the right to appeal obtained as a condition of a sentence or plea bargain may be enforced, the record must be examined to ensure that the waiver was voluntary, knowing and intelligent. Accordingly, the Appellate Division erred in holding enforceable defendant’s bargained-for waiver of his right to appeal where there was no record discussion between the court and defendant concerning the waiver, there was not even an attempt by the court to ascertain on the record an acknowledgement from defendant that he had, in fact, signed the waiver or that, if he had, he was aware of its contents, and there is nothing on the record to establish that the court was familiar with the circumstances surrounding the execution of a proffered document purporting to embody defendant’s waiver. There is, thus, no assurance that the waiver was executed under constitutionally acceptable circumstances. People v Callahan, 80 NY2d 273. 11. Retroactivity of Judicial Decision — Application of State Retroactivity Rules Where Decision Involves No Federal Constitutional Principles. — The question of the retroactivity of People v Antommarehi (80 NY2d 247), which held that the court may not actively solicit answers from a prospective juror which relate to that juror’s bias or hostility in the absence of defendant, is one of State law, since that decision involves no Federal constitutional principles. The basis for the Antommarehi decision is found in CPL 260.20, which provides that a defendant must be personally present during the trial of an indictment and has been construed to extend to the impaneling of the jury. Accordingly, Griffith v Kentucky (479 US 314), which held that a new constitutional rule is to be applied retroactively to all cases pending on direct review, is not binding on the Court of Appeals in determining the retroactivity of Antommarehi. People v Mitchell, 80 NY2d 519. 12. Court of Appeals — Grant of Relief to Nonappealing Party — New Trial Sought by Nonappealing Defendant. — Where, on the People’s appeal, the Court of Appeals reinstated defendant’s conviction, that Court is precluded from reviewing defendant’s alternative contentions seeking a new trial, since the relief sought goes beyond mere affirmance of the Appellate Division order appealed from and thus constitutes a request for affirmative relief requiring defendant to obtain leave to appeal, which previously was denied. People v Acosta, 80 NY2d 665. 13. Matters Reviewable — Remittal by Court of Appeals to Appellate Division — Excessive Sentence Claim Not Previously Considered by Appellate Division.— Where the Court of Appeals reversed an Appellate Division order reversing and
*1046 1046 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d vacating defendant’s conviction, reinstated the conviction and remitted the case to the Appellate Division for consideration of the facts, the Appellate Division should, if it upholds the conviction upon exercise of its factual review power, consider defendant’s excessive sentence claim. Although the Appellate Division rejected defendant’s "other” claims by initially reversing the conviction and vacating the resultant sentence, that court necessarily did not pass on defendant’s argument that his sentence was harsh and excessive. People v Acosta, 80 NY2d 665. 14. Appeal by People. — An order of the Appellate Division, which, inter alia, dismissed an appeal by the People from a judgment convicting defendant of burglary and resisting arrest, should be affirmed since CPL 450.30 (2), which authorizes the People to appeal from a sentence that is invalid as a matter of law, does not similarly entitle the People to appeal from a conviction, and the People do not allege that defendant’s sentence is an illegal one; rather, their challenge focuses upon the legality of the Trial Judge’s decision to accept defendant’s plea over the prosecutor’s objection. Thus, in the guise of challenging the sentence imposed, the People are essentially attacking the validity of defendant’s underlying conviction, and the statute does not permit them to do so. People v Cosme, 80 NY2d 790. 15. Jurisdiction of Court of Appeals. — The Court of Appeals has jurisdiction to pass upon a claim that Penal Law § 245.01, exposure of a person, offends the Equal Protection Clauses of the Federal and State Constitutions (see, CPL 470.35 [2] [a]), since appellants’ contention was expressly passed upon by County Court (acting as an appellate court), and its disposition of that claim was a necessary basis for its order of reversal of a City Court order which had dismissed the informations. People v Santorelli, 80 NY2d 875. 16. Dismissal of Appeal — Execution of Judgment. — An order of the Appellate Division, which denied a motion by defendant for summary reversal of an execution of judgment or for a reconstruction hearing, and dismissed an appeal by defendant from the execution of judgment, is affirmed, where defendant was tried and sentenced in absentia, filed an appeal which was dismissed, and was arrested on a Bench warrant some eight years later, whereupon the judgment of conviction was executed and he began serving his sentence, since the Appellate Division did not err as a matter of law in dismissing the appeal from the execution of judgment to that court. People v Scott, 80 NY2d 888. 17. Preservation of Issue for Appellate Review — Sentence. — In a robbery prosecution in which defendant was sentenced to four concurrent terms of imprisonment, an order of the Appellate Division, which affirmed defendant’s conviction and sentence, is affirmed. The People’s contention that defendant’s fourth term of imprisonment should have been imposed consecutively to the other three because he was out on bail when he committed the fourth robbery (see, Penal Law § 70.25 [2-b]) was not advanced at a time sufficient to preserve the issue for review in the Court of Appeals. People v Santiago, 80 NY2d 916. Arrest. 18. Probable Cause — Veracity Prong of Aguilar/Spinelli Test — Corroboration by Verification of Noncriminal Details of Informant’s Information. — The veracity prong of the Aguilar/Spinelli test for the adequacy of probable cause supporting a warrantless arrest based on hearsay information provided by an informant may, in a proper case, be established through corroboration where the police have verified only noncriminal details of activity referred to in the informant’s statement. Thus, to be sufficient corroboration, the independently verified details, although not of themselves criminal in nature, may not be merely peripheral to the reported criminal scheme; they must fit within the informant’s story of the contemplated crime as activities which are significant and essential to carrying it out. Corroboration by such noncriminal details, particularly where known informants have given the tip to authorities on their own initiative, will adequately
*1047 DIGEST-INDEX, 80 NY2d 1047 CRIMES — Cont’d protect the rights of the suspect by guarding against the informant’s guile, gregariousness or gullibility which may cause him to pass on unreliable or even deliberately false information. People v DiFalco, 80 NY2d 693. 19. Probable Cause — Veracity Prong of Aguilar/Spinelli Test — Corroboration by Verification of Noncriminal Details of Informant’s Information — Possession of Cocaine. — With respect to the warrantless arrest of defendant and the codefendant passenger when police stopped the car defendant was driving and seized cocaine found therein, the veracity component of the Aguilar/Spinelli test for the adequacy of probable cause was satisfied by police corroboration of details of the information provided by an identified informant that were not, if taken separately, suggestive of criminal activity. The informant had told the police that the codefendant was going to Rochester from Batavia to buy drugs, that he had promised to buy drugs for the informant with the $200 "buy money” police had given the informant, and that he had agreed to deliver the drugs at a specified location in Bergen approximately 1 hour and 45 minutes later. The heart of the criminal enterprise was the trip to Rochester where the drugs were to be purchased, as to which the informant gave the police the following details which they verified through personal observation: (1) codefendant would be driving a white Chevrolet Impala; (2) the car would proceed from codefendant’s house to Route 490; (3) codefendant would drive onto Route 490 east toward Rochester; (4) he would return on Route 490 west; and (5) the trip from Batavia to Rochester and back to Bergen where the delivery was to be made would take about 1 hour and 45 minutes. Additional facts observed by the police point to the criminal purpose of the mission: that the informant no longer had the $200 which he stated he had given to codefendant, that codefendant’s car was stopped on the Bergen exit of Route 490 west, and that codefendant had returned on Route 490 west to the Bergen exit soon enough to make the prospective delivery to the informant at the appointed time. Under these circumstances, the police had sufficient independent verification to satisfy the veracity component of Aguilar/ Spinelli. People v DiFalco, 80 NY2d 693. 20. Wrongful Arrest — Suppression of Incriminating Evidence. — In a gambling prosecution in which defendant was wrongfully arrested outside a room in which illegal gambling was being conducted, defendant’s conviction for various gambling offenses should be reversed and the indictment against him dismissed, where defendant was arrested in the hallway outside the room in question just prior to the execution of a search warrant for said room, and where defendant, upon being led back to the room by the police, picked up a jacket which had been draped over a chair in the room and put it on when he was escorted out of the room by the police, since while the jacket was properly admitted in evidence as the product of the warrant execution, it had no incriminating value against defendant absent evidence connecting defendant to it, and the necessary connecting evidence was supplied by the arresting officer’s testimony concerning defendant’s conduct upon his concededly unlawful arrest and asportation to the room. Accordingly, that testimony should have been suppressed as it resulted, not from the lawful execution of a valid search warrant, but from defendant’s wrongful arrest, and, because that testimony was the only evidence connecting defendant with the jacket which was the only direct link between defendant and the gambling activities, the indictment should have been dismissed. People v Rossi, 80 NY2d 952. Bail Jumping. See Infants, 4. Bribery. 21. "Agreement or Understanding” That Bribe Will Influence Public Servant’s Conduct. — With respect to a third degree bribery charge under Penal Law § 200.00, the statutory phrase "agreement or understanding” means more than "intent to influence”; rather, the statute disjunctively requires either a mutual "agreement” between the bribe maker and the public servant, or at least a unilateral "understanding”, i.e., a perception or belief, in the mind of the bribe
*1048 1048 80 NEW YORK REPORTS, 2d SERIES CREMES — Cont’d maker that the bribe will influence the public servant’s conduct. People v Tran, 80 NY2d 170. 22. Sufficiency of Evidence — Proof of Understanding That Bribe Would Influence Public Servant’s Conduct. — A count of bribery in the third degree (Penal Law § 200.00) against defendant, the fire safety director of two hotels with outstanding fire safety violations, must be dismissed on the ground that the People’s evidence is legally insufficient where that evidence established only that when a municipal fire safety inspector told defendant a new violation would be reported, defendant put $310 into the shirt pocket of the inspector, who immediately removed the money and said he could not accept it and that the violation would still be reported, and defendant responded by telling the inspector to keep the money "even if [he] wrote a violation” and "do whatever [he] had to do, but keep [the money]”. To sustain the charge of bribery, the prosecution was required to prove at least an "understanding” in the mind of the bribe maker that the bribe receiver would effectuate the proscribed corruption of public process and was affected to do so by the actus reus of this particular crime. Here, there is no evidence from which any "understanding”, as required by the statute, can be attributed to the defendant. People v Tran, 80 NY2d 170. Confession. 23. Appeal — Matters Reviewable. — In a drug prosecution in which defendant asserts that certain statements he made to the police should have been suppressed, an order of the Appellate Division, which affirmed defendant’s conviction for criminal possession of a controlled substance in the second degree, is affirmed since the determination that a defendant validly waived the constitutional right to remain silent resolves a mixed question of law and fact, and is not subject to further review in the Court of Appeals where, as here, it is supported by evidence in the record. People v Nunez, 80 NY2d 858. Conspiracy. 24. Admissibility of Coconspirator’s Recorded Hearsay Statements. — In a prosecution arising out of the alleged bribery of an investigator posing as a municipal fire safety inspector who discovered a violation at the subject hotel, the People failed to present independent prima facie evidence of a conspiracy justifying use of a coconspirator’s recorded hearsay evidence against defendant where the People’s evidence established that defendant and his alleged coconspirator were both hotel employees, that defendant urged the undercover investigator to return to the hotel on the day in question, and that the alleged coconspirator gave $100 to the investigator when he returned. Although the coconspirator’s recorded statement that the purpose of the payment was to "clear up * * * something here, about Local Law 16”, is admissible as a verbal act offered not for the truth of the matter asserted, but merely to give legal effect to the conduct it accompanied, it served at best to establish only that the coconspirator paid the investigator $100 to influence his handling of the hotel’s alleged Local Law 16 violations; it does not and cannot be used to supply the prima facie foundation or connection to defendant as part of a conspiracy. People v Tran, 80 NY2d 170. Controlled Substances. 25. Attempted Criminal Possession — Rejection of Drugs as Abandonment of Attempt. — In the prosecution of defendant for attempted criminal possession of a controlled substance in the first degree wherein the evidence established that defendant, with the intent to possess more than four ounces of a controlled substance, met with his supplier’s courier and examined cocaine, but rejected it because he was dissatisfied with the quality, defendant’s rejection of the drugs did not vitiate the attempt under an abandonment theory (see, Penal Law § 40.10 [3]). Abandonment is an affirmative defense which the defendant has the burden of establishing by a preponderance of the evidence, but defendant never sought to present such defense at trial. Moreover, to qualify for the defense, the abandonment must be permanent, and here the evidence revealed that even after rejecting the initial offer, defendant continued making efforts to obtain cocaine. People v Acosta, 80 NY2d 665.
*1049 DIGEST-INDEX, 80 NY2d 1049 CRIMES — Cont’d 26. Attempted Criminal Possession — Rejection of Proffered Drugs Due to Defect in Quality. — Under the Penal Law, a person is guilty of an attempt to commit a crime when, with intent to commit a crime, he or she commits acts very near to the accomplishment of the intended crime (see, Penal Law § 110.00). Accordingly, a person who, with intent to possess cocaine, orders from a supplier, admits a courier into his or her home, examines the drugs and ultimately rejects them because of perceived defects in quality, has passed beyond mere preparation to commit a crime and come "very near” to possessing the drugs; thus, that person has attempted to possess cocaine within the meaning of the Penal Law. The only remaining step between the attempt and the completed crime is the person’s acceptance of the proffered merchandise, an act entirely within his or her control. People v Acosta, 80 NY2d 665. 27. Attempted Criminal Possession — Sufficiency of Evidence. — The evidence was legally sufficient to support defendant’s conviction of attempted criminal possession of a controlled substance in the first degree where, on the evidence presented, a rational jury could have found beyond a reasonable doubt that defendant, with the intent to possess more than four ounces of a controlled substance, met with his supplier’s courier and examined cocaine, but rejected it because he was dissatisfied with the quality. Although the alleged courier who the stakeout officers observed entering defendant’s apartment building carrying an apparently heavy bag, and emerging from the building some 15 minutes later carrying the same apparently heavy bag, was not stopped by the police or seen approaching defendant’s apartment itself, the evidence evaluated as a whole, including inferences from the evidence that rational individuals were entitled to draw, was sufficient to establish that defendant in fact met with a drug courier and examined the drugs. People v Acosta, 80 NY2d 665. Disclosure. 28. "Attorneys’ Work Product”. — In the prosecution of defendant, a report prepared by a former Assistant District Attorney which contained only factual matter — the names of witnesses and police officers involved in the investigation and the fact that defendant had made a statement — does not constitute "attorneys’ work product” so as to be exempt from disclosure to defendant pursuant to CPL 240.10 (2). People v Banch, 80 NY2d 610. 29. Failure to Produce Rosario Material — Pretrial Suppression Hearing — Remedy. — Where the People produced as Rosario material the purported memo book of a police officer witness at a pretrial suppression hearing, but at trial it was discovered that the memo book produced was in fact not that officer’s memo book, defendant is entitled to a new suppression hearing on his appeal from the Appellate Division order affirming his conviction, since the trial court failed to grant defendant’s request to reopen the suppression hearing when the mistake was discovered at trial. Since defendant was never given the opportunity to cross-examine the officer’s hearing testimony with the correct records, the Rosario violation must be viewed as a complete deprivation of Rosario material and, as such, the violation is not subject to harmless error analysis. However, the remedy for a pretrial Rosario violation is not automatic reversal of the conviction but a new hearing; retrial is necessary only if, after that hearing, the motion court concludes that defendant should prevail. People v Banch, 80 NY2d 610. 30. Failure to Produce Rosario Material — Sufficiency of Showing That Material Lost or Destroyed. — On defendant’s appeal from the Appellate Division order affirming his conviction, the per se reversal rule for Rosario violations requires a new trial where Rosario material, consisting of a report prepared by one of the People’s witnesses that defense counsel first learned of during the trial, could not be located by the prosecutor during a brief trial recess, and the trial court denied defendant’s motion to strike the testimony of that witness when the material could not be produced, since the record does not support the People’s claim that the Rosario material was lost or destroyed, and no other exception to the per se reversal rule applies. Inasmuch as the record reflects only that the material was not in the People’s trial folder and that the prosecutor could not locate the
*1050 1050 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d material during a very brief trial recess, there is an insufficient basis for the People’s current appellate claim that the material was lost or destroyed. People v Banch, 80 NY2d 610. 31. What Constitutes Rosario Material. — In the prosecution of defendant, a report prepared by a former Assistant District Attorney (ADA), which contained the names of witnesses and police officers involved in the investigation and the fact that defendant had made a statement, but did not contain the statements of witnesses or interview summaries drawn from statements of witnesses, constitutes Rosario material to the extent that the report is a statement by the former ADA reflecting the activities about which he testified at trial. People v Banch, 80 NY2d 610. Eavesdropping Warrants. 32. Pen Register with Capacity to Monitor Conversations. — A pen register having the additional capacity to monitor conversations should be treated as an eavesdropping device under the Criminal Procedure Law even where the audio function is "disabled” and no conversations are actually overheard; therefore, the use of such a device by police is permitted only when a Magistrate has issued a warrant based on probable cause. Such a device has the capacity, through willful use or otherwise, to intrude on legitimately held privacy, and it is the warrant requirement, interposing the Magistrate’s oversight, that provides to' citizens appropriate protection against unlawful intrusion. People v Bialostok, 80 NY2d 738. 33. Suppression of Evidence Obtained in Absence of Warrant. — In the prosecution of defendants on gambling and conspiracy charges, where the police failed to obtain an eavesdropping warrant during the initial period when pen registers with the additional capacity to monitor conversations were connected to telephone lines used by defendants, the evidence obtained through the use of the pen registers during that period, consisting of information that was used in support of a later application for an eavesdropping warrant to monitor conversations on the two lines, should have been suppressed. However, the error was harmless here since evidence other than that which should have been suppressed provided more than sufficient grounds for the Magistrate’s finding of probable cause to support the eavesdropping warrant that was obtained. People v Bialostok, 80 NY2d 738. 34. Written Notice Requirement — Adequacy of Informal Notice. — In the prosecution of defendant on gambling and conspiracy charges, suppression of evidence obtained through use of a lawful wiretap is not required on the ground that law enforcement officials failed to meet the requirement of CPL 700.50 (3) that written notice of a wiretap be given within 90 days of a warrant’s termination, since defendant received adequate informal notice through his attorney within the applicable time period through information provided directly by law enforcement officials, and formal notice was given, albeit four days late. The purposes of the warrant notification requirement are to publicize wiretaps to the community at large and to those subjected to them and to assure defendants are able to challenge the legality of eavesdropping warrants in a timely manner. Those purposes were served here by the direct notification to defendant’s attorney. Although the delay in formal notice is not condoned, suppression is not appropriate under these circumstances. People v Bialostok, 80 NY2d 738. 35. Written Notice Requirement — "Termination” of Eavesdropping Warrant. —For purposes of the written notice of eavesdropping that CPL 700.50 (3) requires to be given within 90 days "after termination of an eavesdropping warrant, or expiration of an extension order”, an eavesdropping warrant which provided that it "shall terminate upon attainment of the authorized objective or in any event [on December 26,1986]”, terminated when the investigators attained their objective on December 22,1986 and appropriately discontinued their surveillance at that time. Although the language of the statute states that the relevant initiating event is termination of the warrant and not termination of the eavesdropping, those two events occurred simultaneously under the terms of this warrant. The fact that the investigators could have continued eavesdropping
*1051 DIGEST-INDEX, 80 NY2d 1051 CRIMES — Cont’d legally until December 26 if their objective had not been attained is irrelevant. People v Bialostok, 80 NY2d 738. Endangering Public Health, Safety or Environment. 36. Activity within Scope of Required Permit. — The count of an indictment charging defendants with endangering public health, safety or the environment in the second degree (ECL 71-2713 [1]) stemming from the death of an employee of the corporate defendant, which was engaged in the business of transporting petroleum products, when petroleum vapors exploded while the employee was cleaning a tank trailer, was correctly dismissed. Pursuant to ECL 71-2720 (1), the provisions of ECL 71-2713 (1) and its companion statutes do not apply to "persons who possess and whose conduct is subject to and in compliance with * * * a valid license, permit, certificate or order” when engaged in an activity requiring such a license, permit, etc. Here, defendants possessed a valid permit to transport petroleum wastes and, although there was evidence that defendants may have violated the terms of their transporter permit in various ways, there was no evidence before the Grand Jury that the tank cleaning was other than a normal and lawful aspect of defendants’ transport activities or that any violations contributed to the release of vapors. Thus, it appears that the petroleum vapors were released in the course of an activity that fell within the scope of defendants’ transporter permit and therefore within the exemption of ECL 71-2720 (1). People v Roth, 80 NY2d 239. Evidence. See, also, Crimes, 24. 37. Hearsay — Past Recollection Recorded — Record of Observations Made by Someone Other than Observer — Accuracy and Trustworthiness of Memorandum. —In the prosecution of defendant for rape and sodomy, the trial court erred in admitting — under the hearsay exception for past recollection recorded — a police officer’s memorandum consisting of a phone message with a license plate number allegedly belonging to defendant’s car, where the individual who observed the car and reported the license plate number stated that she transmitted to the detective what she believed to be her accurate observation of the license plate number, but the detective had no recollection of that transmission or of having made the memorandum and could not therefore state that what he wrote down was what he had been told. Under the circumstances, there can be no more than supposition on the critical question of whether what was observed and sent corresponded with what was heard by the recorder and written down. Without some verification by the observer-sender that what was recorded accurately reflected her observations when made, the record of those observations should not have been received against defendant as substantive incriminating evidence. People v Taylor, 80 NY2d 1. 38. Hearsay — Present Sense Impression Exception — Admissibility of Recordings of 911 Transmissions. — Under the present sense impression exception to the hearsay rule, spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence. Further, such statements may be admitted even though the declarant is not a participant in the events and is an unidentified bystander. Accordingly, in the prosecution of defendant for burglary and other charges arising from a break-in at a restaurant, recordings of two 911 transmissions describing the events in progress were properly admitted in evidence against defendant pursuant to the present sense impression exception notwithstanding that the caller was not identified by name and was not a participant in the events observed. The descriptions contained in the recordings were sufficiently corroborated by the testimony of the police officers who arrived at the restaurant shortly after the first call and who apprehended two suspects fitting the description given by the caller. The police observed what the 911 caller had described only moments before. The suspects were seen running out of the restaurant through the broken glass door and seeking refuge on the roof, lending credence to the report that there was a burglary in progress. That the circumstances and events at the scene were still very much as described by the caller corroborates
*1052 1052 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d what seems evident from the calls themselves — that the caller’s reports were spontaneous and made contemporaneously with the events described. People v Brown, 80 NY2d 729. 39. Victim’s Prior Sexual Conduct. — In a sex crimes prosecution in which the trial court allowed evidence of a relationship between the minor complainant and her male friend to be presented to the jury, the court did not err in its related discretionary evidentiary ruling precluding cross-examination of the complainant with respect to the sexual aspect of that relationship (CPL 60.42 [5]). People v Halbert, 80 NY2d 865. 40. Hearsay — Suppression Hearing. — In a homicide prosecution, the People did not meet their burden at a hearing to suppress statements defendant allegedly made at the police precinct that defendant freely consented to go to the precinct, where the People’s sole witness was a police detective who testified that the three police officers who brought defendant to the precinct told him that defendant voluntarily accompanied them to the precinct, and where defendant’s wife testified that the officers said to defendant that if he did not come to the precinct voluntarily he would be forced to do so, since the detective’s hearsay testimony, although admissible (CPL 710.60 [4]), did not supply the necessary proof. That the detective, who had no personal knowledge of the relevant facts, testified truthfully as to what the other officers told him has no bearing on the pertinent issue of whether the officers’ statements were true; thus, the finding of the hearing court that the detective was credible is irrelevant. The information obtained by the detective was not something on which he relied in taking action and was unrelated to the performance of his duties; rather, his knowledge concerning the disputed events was fortuitous, and there is no basis to attribute reliability to his hearsay information. People v Gonzalez, 80 NY2d 883. Exposure of Person. 41. Public Display of Women’s Breasts — Lack of Lewd Conduct. — Informations charging defendants, women, with violating Penal Law § 245.01, exposure of a person, for conduct consisting of baring "that portion of the breast which is below the top of the areola” in a public park, should be dismissed, since the statute, when originally enacted, was aimed at discouraging "topless” waitresses and their promoters, and, thus, should not be applied to the noncommercial, not lewd exposure alleged. People v Santorelli, 80 NY2d 875. Fair Trial. 42. Courtroom Demonstration — Prosecutor’s Comments on Summation. — In a homicide prosecution, an order of the Appellate Division, which affirmed a judgment convicting defendant of first- degree manslaughter, should be affirmed. The trial court did not abuse its discretion in allowing a demonstration in which court officers portrayed the defendant and the victim for the limited purpose of illustrating their relative positions, according to a witness’ testimony, at the time of the shooting, and the prosecutor’s attempts to carry the demonstration further were curtailed by the court in response to defendant’s objections; appropriate limiting instructions were given. Accordingly, no undue prejudice resulted. Moreover, to the extent that the prosecutor misstated the law of justification or made other improper comments, the trial court’s instructions for the jury to follow only the court’s instructions on the law and its other curative instructions were sufficient to ensure defendant a fair trial. People v Barnes, 80 NY2d 867. Gambling. 43. A rational trier of fact could find defendant guilty beyond a reasonable doubt of promoting gambling, possession of gambling records, and possession of a gambling device where defendant was discovered by police officers, who were executing a search warrant, in a room, seated at a table and speaking on a telephone, which was connected to tape recorders on the floor; where five telephones, a validator clock, line and tally sheets, and piles of completed timestamped betting slips were on the table, and where the officers answered the telephones while in the room, and the calls were found to be from prospective bettors. People v Paecione, 80 NY2d 1019.
*1053 DIGEST-INDEX, 80 NY2d 1053 CRIMES — Cont’d Harmless and Prejudicial Error. See, also, Crimes, 49. 44. Combination of Errors Resulting in Prejudice. — In the prosecution of defendant for rape and sodomy, the trial court’s error in admitting — under the hearsay exception for past recollection recorded — a police officer’s phone message with the alleged license plate number of defendant’s car, was not harmless when viewed in conjunction with the trial court’s error in admitting an uncertified Department of Motor Vehicles record of defendant’s automobile registration (see, CPLR 4518 [c]). These two items provided a critical link between defendant and the crime by establishing that the car driven by the man — believed by the witnesses to be the person who had raped the victim — was owned by defendant. In cross-examining defendant, the prosecutor stressed the correspondence between what was written on the memorandum and the license number of defendant’s car. During summation, he emphasized that the license plate number was "very strong evidence” that defendant was the rapist. And he urged the jury to ask to see the phone message during their deliberations which they did. Moreover, the trial court, before admitting the phone message, characterized it as "an important piece of evidence.” People v Taylor, 80 NY2d 1. 45. Identification of Defendant. — In a robbery prosecution in which the trial court improperly admitted testimony of the victim regarding her lineup identification of defendant, an order of the Appellate Division, which affirmed defendant’s conviction, should be affirmed where the Appellate Division concluded that strong independent source evidence supporting the victim’s in-court identification of defendant was established and explicitly found by the hearing court, and that this evidence was sufficient to satisfy the harmless error test. While the Appellate Division was correct that the existence of an independent source for an in-court identification is relevant to harmless error determinations, in this case the strength of the independent source evidence, standing alone, does not establish harmless error, and a traditional and more thorough analysis is required. The victim’s strong, independently evolved, nonsuggestive, in-court identification was buttressed by her sister’s testimony and by other surrounding evidentiary inferences and circumstances; taken together, there is no reasonable possibility that the error might have contributed to defendant’s conviction and, thus, it was harmless beyond a reasonable doubt. People v Harris, 80 NY2d 796. 46. Identification of Defendant — Inconsistent Testimony of Sole Eyewitness.— An order of the Appellate Division, which affirmed a judgment convicting defendant of murder, attempted murder and criminal possession of a weapon, should be reversed and a new trial ordered since the erroneously received eyewitness testimony regarding the lineup identification of defendant cannot be deemed harmless, where the eyewitness, who was the sole witness to inculpate defendant, gave testimony which was internally contradictory and inconsistent in nature, and where the trial prosecutor pointedly relied on the erroneously admitted lineup evidence in his opening statement and summation, thus exacerbating the prejudicial impact. The educement before and finding by the suppression court of an independent source for the witness’s in-court identification does not, standing alone, satisfy the harmless error standard. It cannot be concluded on this record that there was no reasonable possibility that the error might have contributed to defendant’s conviction and that it was, thus, harmless beyond a reasonable doubt. People v Johnson, 80 NY2d 798. 47. Improper Admission of Voice Spectrographic Evidence. — In a homicide prosecution arising out of a chain snatching incident, an order of the Appellate Division, which modified a judgment convicting defendant of two counts of murder and criminal possession of a weapon by ordering all the sentences imposed on defendant to run concurrently, should be affirmed notwithstanding the erroneous admission at trial of voice spectrographie evidence relating to tape-recorded statements allegedly made by defendant, since the error was harmless in light of the fact that the voice spectrographie evidence did not affect the admissibility of the taped statements themselves which, together with other testimony linking defendant to the killing, the murder weapon found in defendant’s bed-
*1054 1054 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d room, and defendant’s admitted commission of the chain snatching, constitute overwhelming proof of guilt. The trial court could not properly have determined that voice spectrography is generally accepted as reliable based on case law and existing literature on the subject, since there is marked conflict in the judicial and legal authorities as to the reliability of the procedure, and New York courts are split on the issue of admissibility. Accordingly, the trial court lacked a proper basis to admit the voice spectrography evidence without a preliminary inquiry into reliability. People v Jeter, 80 NY2d 818. Identification of Defendant. See, also, Crimes, 45, 46,103. 48. Potentially Tainted Identification Procedure. — In a prosecution for armed robbery in which the People failed to provide timely notice of a witness’s photographic identification (CPL 710.30) and the trial court suppressed the witness’s in-court identification, it was reversible error for the court to have permitted the witness to say that the person he observed being chased down the street four days after the robbery had participated in the robbery, since without the improper identification testimony, the case was based entirely on the testimony of another witness, and on a second related robbery charge as to which only that other witness testified, the jury acquitted defendant. While the first witness was properly allowed to testify concerning his description of the robber given to the police prior to the potentially tainted identification procedure, there is no evidence that the first witness ever communicated to the police, prior to that identification, his perception that the person he saw being arrested four days after the robbery was the same person he saw commit the robbery. Therefore, there was nothing in the record to demonstrate that the perception testimony was untainted by the improper photo identification procedure. People v Moss, 80 NY2d 857. 49. Harmless Error — Physical Description of Robber. — In a prosecution for robbery and related crimes, in which the trial court suppressed both complainant’s identification of defendant, owing to a suggestive showup, and her in-court identification, owing to the absence of evidence of independent source, complainant was properly allowed to testify to details she could not have gleaned from the showup, and such details were corroborated by other evidence. Therefore, while it was improper for complainant to give a physical description of the robber at trial, there having been no finding that such description, given for the first time after the showup, was untainted, in this case the error was harmless. People v Fluitt, 80 NY2d 949. 50. Confirmatory Identification by Undercover Police Officer. — An order of the Appellate Division, which affirmed defendant’s conviction for robbery, criminal possession and sale of a controlled substance, and criminal possession of a weapon, is affirmed for the reasons stated in the memorandum thereat, which concluded that the trial court correctly found that a precinct identification of defendant by an undercover narcotics officer was confirmatory in nature; that the officer had an excellent opportunity to view defendant and the other drug dealers; that although the undercover officer was temporarily detained and held at gunpoint by drug dealers who suspected that he was a police officer, the well-trained and experienced officer was able to maintain his presence of mind to such a degree as to preserve his ability to confirm the identities of his captors; that the trial court did not commit reversible error in summarily denying defendant’s motion to suppress the officer’s identification testimony, and that the precinct identification was neither too removed in time to be considered as anything other than confirmatory, nor compromised by suggestiveness. People v Polanco, 80 NY2d 1012. Indictment. 51. Sufficiency of Evidence — Reckless Endangerment. — In a criminal prosecution stemming from the death of an employee of the corporate defendant, which was engaged in the business of transporting petroleum products, when petroleum vapors exploded while the employee was cleaning a tank trailer, evidence before the Grand Jury indicating that defendants allowed a tank containing petroleum
*1055 DIGEST-INDEX, 80 NY2d 1055 CRIMES — Cont’d products to be cleaned without adequate ventilation and in the presence of numerous sources of ignition is legally sufficient to sustain a count of the indictment charging reckless endangerment in the second degree (Penal Law § 120.20). With respect to a charge of reckless endangerment in the second degree, there is no requirement that defendants’ reckless conduct cause injury or death and, therefore, the fact that defendants could not have foreseen the manner in which the employee’s injury occurred does not negate their liability under the statute. People v Roth, 80 NY2d 239. 52. Sufficiency of Evidence — Reckless Manslaughter — Criminally Negligent Homicide — Foreseeability of Manner in Which Fatal Explosion Occurred.— Charges of reckless manslaughter and criminally negligent homicide stemming from the death of an employee of the corporate defendant, which was engaged in the business of transporting petroleum products, when petroleum vapors exploded as the result of a spark from a nonexplosion proof trouble light while the employee was cleaning a tank trailer, must be dismissed for legal insufficiency. To sustain the charges the People were required to show that it was foreseeable that the explosion would occur in the manner that it did, and the evidence before the Grand Jury was insufficient to support the conclusion that the defendants should have foreseen that their employee would place the unprotected trouble light in the path of a high pressure washer during the tank cleaning operation and that an explosion-causing spark would result from this combination. People v Roth, 80 NY2d 239. 53. Sufficiency of Evidence — Responsibility of Defendants for Conditions Causing Fatal Explosion. — With respect to charges of reckless manslaughter, criminally negligent homicide, reckless endangerment and endangering public health, safety or the environment stemming from the death of an employee of the corporate defendant, which was engaged in the business of transporting petroleum products, when petroleum vapors exploded while the employee was cleaning a tank trailer, the evidence before the Grand Jury consisting of the testimony of a fire investigator, the only witness to offer an expert opinion about the actual cause of the explosion, that he was 99.9% certain the explosion was caused by a spark from a nonexplosion proof trouble light, was sufficient to establish that the fatal explosion was so triggered so as to support the conclusion that the explosion was in fact caused by conditions for which defendants were responsible. People v Roth, 80 NY2d 239. Informers. 54. Identity of Informer — Proving Existence of Informer — Confidential Informer Who is Unavailable Because of Fear. — Once the People have established to the Trial Judge’s satisfaction that a confidential informant is unavailable because of fear, the court has the discretion to permit the People to establish the informant’s existence through alternative means. If the People are not able to meet this initial threshold, however, the court similarly has the discretion to require production of the informant. The nature and degree of evidence that will be required to establish unavailability under these circumstances is left to a case-by-case determination. People v Carpenito, 80 NY2d 65. Instructions. 55. Reasonable Doubt — Instruction Requiring Jurors to Supply Concrete Reasons Based on Evidence. — An Allen charge given during the jury’s deliberations, which defined reasonable doubt as a doubt with respect to which "you would be willing and able to give [a fellow juror] what you believe is a fair, calm explanation for your position based upon the evidence or the lack of evidence in this particular case”, violated defendant’s due process rights under the Federal and State Constitutions. An instruction that requires jurors to supply concrete reasons "based upon the evidence” for their inclination to acquit implicitly imposes on defendants the burden of presenting a defense that supplies the jurors with the arguments they need to legitimize their votes. As such, the charge actually reverses the constitutionally required principles that the defense bears no burden and that it is the prosecution that must introduce evidence sufficient to
*1056 1056 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d persuade the fact finder, beyond a reasonable doubt, of the defendant’s guilt. People v Antommarchi, 80 NY2d 247. 56. Reasonable Doubt — Instruction That Jurors be Capable of Articulating Reason. — In its main charge, the court’s instruction to the jury that "[a] reasonable doubt is a doubt based upon reason [for] which a juror can give a reason if he or she is called upon to do so in the jury room” did not deprive defendant of a fair trial. It is not improper for a court to instruct the jury that a reasonable doubt is one for which a reason can be given, nor to augment that definition with an explanation that the doubt should be sufficiently clear so that the juror would be capable of giving a reason for his or her views. Thus, language defining a reasonable doubt as one which a juror could, if called upon to do so, express or articulate is appropriate. It would be wise, however, for a court using similarly worded instructions to follow them with a clarifying statement that the jurors have no obligation to articulate the basis for their doubts. People v Antommarchi, 80 NY2d 247. Jurisdiction of Offenses. 57. Burden of Proof as to Territorial Jurisdiction. — When a defendant disputes the State’s territorial jurisdiction over an alleged criminal offense under CPL 20.20, the People must prove such jurisdiction beyond a reasonable doubt. Although venue in the proper county under CPL 20.40 is established pursuant to the lesser burden of preponderance of the evidence, the distinct conceptual differences between venue and territorial jurisdiction and their different jurisprudential purposes make it virtually impossible to equate the two. Further, when measured in terms of the effect on the fundamental rights of the defendant, there is a marked contrast in importance between questions relating to territorial jurisdiction and venue. Moreover, although territorial jurisdiction is not classified as an element of the crime which must be established beyond a reasonable doubt (see, CPL 70.10 [1]; 300.10), when the power of the State to try and convict the defendant is disputed, proof of that power is no less critical to a legal conviction than proof of the elements of the crime; there is no reason why a different burden of proof should be required. People v McLaughlin, 80 NY2d 466. Jurors. See, also, Crimes, 82. 58. Challenge to Jury — Impermissible Exclusion of Prospective Jurors on Basis of Race — Racially Neutral Explanation for Exclusions. — With respect to defendant’s claims that the prosecutor was impermissibly excluding members of the venire on the basis of race in violation of Batson v Kentucky (476 US 79), the prosecutor’s statements in response that he was excluding African-American and Latino jurors "Because I know [defense counsel will] knock the whites off” and because defense counsel was "using his peremptory challenges to knock off people who were white and middle class”, do not provide a racially neutral explanation for the prosecutor’s challenges of prospective jurors; rather, they betray a clear racial motive for the prosecutor’s exercise of peremptory challenges. Because the exclusion of even a single juror on racial grounds is constitutionally forbidden, defendant has sustained his Batson claim and a new trial is ordered. People v Mitchell, 80 NY2d 519. 59. Discharge of Juror. — An order of the Appellate Division, which reversed a judgment convicting defendant of second degree burglary, fourth degree criminal mischief, and attempted petit larceny, and ordered a new trial, is affirmed for the reasons stated in the memorandum thereat, which concluded that the trial court’s discharge of a juror who had called the court after three days of trial and said that she could not come to court that day because her husband had been hospitalized, was precipitous and violative of defendant’s right to be tried by a particular jury in whose selection he had a voice where the trial court had not inquired into the nature of the husband’s illness or the juror’s availability to attend the trial the next day, and seated an alternate juror, over defendant’s objection, only a few hours later. People v Powell, 80 NY2d 852. 60. Misconduct of Juror — Experiment by Juror. — An order of the Appellate Division, which affirmed a judgment convicting defendant of first degree robbery
*1057 DIGEST-INDEX, 80 NY2d 1057 CRIMES — Cont’d arising out of a knife-point chain-snatching incident, is affirmed for the reasons stated in the memorandum thereat, which concluded that a juror’s actions in conducting an experiment during deliberations did not deny defendant a fair trial where the juror folded a paper towel or a piece of cardboard to simulate a knife in order to determine whether defendant could have folded a knife while being pursued by the complainant and his brother; that the issue of whether the defendant possessed or folded a knife during the pursuit was neither a critical point at issue in the trial nor prejudicial to defendant, and that the juror was merely using common everyday experience to clarify a non-critical point in the case. People v Cortez, 80 NY2d 855. 61. Challenge to Jury — Race-Based Peremptory Challenges. — An order of the Appellate Division, which affirmed defendant’s conviction of first degree robbery and first degree reckless endangerment, should be affirmed since defendant’s contention that the People exercised their peremptory challenges in a racially discriminatory manner is baseless; the courts below properly concluded that defendant failed to make out a prima facie showing that the prosecution purposefully excluded members of his race from the jury. People v Hernandez, 80 NY2d 872. 62. Challenge to Jury — Race-Based Peremptory Challenges. — An order of the Appellate Division, which affirmed a judgment convicting defendant of second and third degree robbery, should be modified by remitting to Supreme Court for a hearing to afford the People an opportunity to provide a racially neutral reason for the exercise of a peremptory strike against an African-American venireperson, where defendant — pointing to the fact that the prosecutor challenged four of the six African-American members of the venire — has made a prima facie showing that the prosecution exercised its peremptory challenges in a racially discriminatory manner. Accordingly, the burden then shifted to the prosecution to come forward with racially neutral reasons for the strikes. However, because the prosecutor was not asked to provide a racially neutral reason for one of the challenged jurors in question, there must be a remittal. Should satisfactory explanation be provided by the People, the judgment should be amended to show that result; otherwise, the judgment of conviction should be vacated and a new trial ordered. People v Hawthorne, 80 NY2d 873. 63. Challenge to Jury. — In a narcotics prosecution, an order of the Appellate Division, which reversed defendant’s convictions for criminal possession of a controlled substance in the first and third degrees, and ordered a new trial, is affirmed for the reasons stated in the memorandum thereat, which concluded that it was reversible error for the trial court to have permitted the prosecutor to exercise a peremptory challenge after he had indicated to the court that he had completed his peremptory challenges and while defense counsel was exercising his peremptory challenges (see, CPL 270.15 [2]). People v De Conto, 80 NY2d 943. Justification. 64. Prevention of Burglary. — An individual who invites another onto his premises and then actively and willingly joins in that person’s criminal conduct should not be permitted to kill that person merely because he or she does not promptly cease pursuing the criminal endeavor upon being ordered to leave the premises, since Penal Law § 35.20 (3), which authorizes a person to use deadly physical force against another person if one reasonably believes that such force is necessary to terminate a burglary of one’s home, was intended to protect those individuals who suddenly find themselves the victim of an intrusion upon their premises by one bent on a criminal end. There is nothing to suggest that the statute was also meant to protect one who, like defendant, invites another person into his home, fully aware that such person intends to commit a crime once inside; such an individual is no less responsible for any ensuing invasion of his own security than the would-be burglar and, therefore, cannot claim the protections of the statute. Accordingly, the trial court in defendant’s murder prosecution did not err in refusing defendant’s request to charge the jury on the justifiable use of deadly physical force to terminate a burglary. People v Godfrey, 80 NY2d 860.
*1058 1058 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d Lesser Included Offense. See, also, Infants, 5. 65. Death Resulting from Street Fight. — An order of the Appellate Division, which affirmed a judgment convicting defendant of second degree murder and two counts of attempted second degree murder, should be reversed and a new trial ordered where the trial court refused defense counsel’s request to instruct the jury concerning lesser-included crimes, particularly manslaughter in the first degree, since the lesser-included charge instruction, based on a view of the entire evidence, which revealed that defendant fatally stabbed a person who had come to his assistance in a street melee, cannot be said as a matter of law to have no reasonable support in the record evidence. People v Aviles, 80 NY2d 997. Merger Doctrine. 66. Propriety of Kidnapping Conviction Where Defendant Acquitted of Underlying Crime. — In applying the merger doctrine in a prosecution for kidnapping and an underlying crime, the standard remains the same whether defendant is acquitted or convicted of the underlying crime: did the Legislature intend to punish the restraint or abduction separately as kidnapping. The guiding principle is whether the restraint was so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them. Accordingly, in a prosecution for kidnapping and attempted rape in which the complainant, trapped in a car, was driven around for up to two hours and terrorized by defendant, and was then pushed from the car and lost consciousness after being informed by defendant that he would rape her, defendant’s conviction for kidnapping in the second degree (Penal Law § 135.20) should not be merged with his acquittal on the attempted rape charge. The lengthy abduction, accomplished with a deadly weapon, constituted the discrete crime of second degree kidnapping which was already completed, in all its elements, before the victim was allegedly sexually assaulted. The restraint was not a minimal intrusion necessary and integral to another crime, nor was it simultaneous and inseparable from another crime. People v Gonzalez, 80 NY2d 146. Murder. 67. Supervening Cause of Death — Medical Malpractice — Standard of Causation. — In the prosecution of defendant for murder in the second degree arising from the death of a stabbing victim, wherein defendant claimed that medical malpractice was the supervening cause of the victim’s death, the legal standard for determining if defendant will be relieved from criminal responsibility for the death is whether the death can be attributed solely to the negligent medical treatment. People v Eulo (63 NY2d 341), which held that "brain-based criteria” could be used to define death — the time at which criminal liability for a homicide would attach — did not change that standard. Accordingly, the trial court did not commit prejudicial error with respect to defendant in precluding expert testimony that medical malpractice was the supervening cause of the victim’s death and, therefore, defendant’s conviction should not be overturned. People v Griffin, 80 NY2d 723. Plea Bargaining. 68. Breach of No-Arrest Condition — Showing Necessary to Impose Enhanced Sentence Where Defendant Denies Commission of Act Underlying Arrest. — When a court has made a plea bargain containing a no-arrest condition and the defendant is arrested prior to sentencing, the court must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation if an issue is raised concerning the validity of the postplea charge or there is a denial of any involvement in the underlying crime. The nature and extent of the inquiry — whether through a summary hearing pursuant to CPL 400.10 or some other fair means — is within the court’s discretion. Proof that defendant actually committed the postplea offense which led to the arrest is not necessary. The inquiry must be of sufficient depth, however, so that the court can be satisfied not of defendant’s guilt of the new criminal charge, but of the
*1059 DIGEST-INDEX, 80 NY2d 1059 CRIMES — Cont’d existence of a legitimate basis for the arrest on that charge. People v Outley, 80 NY2d 702. 69. Breach of No-Arrest Condition — Sufficiency of Inquiry as to Legitimate Basis for Arrest. — Where the court, in accepting defendant’s guilty plea, expressly conditioned the agreed-upon sentence on defendant not being arrested while on release awaiting sentence, and defendant was arrested on a charge of criminal contempt for violating two court orders directing him to stay away from his wife and daughter and their residence, but defendant denied the commission of any criminal act, the basis for arrest developed on the record by the court’s inquiry, before it imposed an enhanced sentence, was sufficient to establish a failure of the no-arrest condition. Defendant had concededly violated the subject orders, and defendant and his counsel were permitted to explain the circumstances of the visit to his home in an effort to demonstrate that defendant had no intent to defy the courts’ authority. It cannot be said, however, that the sentencing court and the Appellate Term erred in holding, from the fact that defendant’s wife had signed the complaining affidavit, that there was a legitimate foundation for the contempt charge. People v Outley, 80 NY2d 702. 70. Breach of No-Arrest Condition — Sufficiency of Inquiry as to Legitimate Basis for Arrest. — Where the court, in accepting defendant’s guilty plea, expressly conditioned the agreed-upon sentence on defendant not being arrested while on release awaiting sentence, and defendant was arrested on a charge of burglary, but defendant denied the commission of any criminal act, the basis for arrest developed on the record by the court’s inquiry, before it imposed an enhanced sentence, was sufficient to establish a failure of the no-arrest condition. The fact that a Grand Jury had found a prima facie case for the charge by returning an indictment against defendant constituted an additional filter for the quality of the arrest. The jeep involved in the burglary was concededly owned by the defendant and a policeman identified him as the driver of the vehicle when it left the scene. Given this evidence and the plainly suspect nature of the statement given by defendant’s witness, a professional burglar who had participated with defendant in past crimes, it can hardly be said that there was not enough in the record on which to predicate a breach of the condition. People v Outley, 80 NY2d 702. 71. Breach of No-Arrest Condition — Sufficiency of Inquiry as to Legitimate Basis for Arrest. — Where the court, in accepting defendant’s guilty plea, expressly conditioned the agreed-upon sentence on defendant not being arrested while on release awaiting sentence, and defendant was arrested on a charge of possession of cocaine, but defendant denied the commission of any criminal act arguing that his possession was unknowing and did not evince an intent to violate the court’s condition, the basis for arrest developed on the record by the court’s inquiry, before it imposed an enhanced sentence, was sufficient to establish a failure of the no-arrest condition. The sentencing court afforded defendant an adequate opportunity to explain the circumstances of the arrest, and it cannot be concluded that the courts below erred in finding the explanation insufficient. People v Outley, 80 NY2d 702. Plea of Guilty. See, also, Motor Vehicles, 2. 72. Effect of Reversal of Trial Convictions on Guilty Pleas Entered in Return for Promise of Concurrent Sentences. — Where defendant was found guilty after tried of separate crimes involving two different victims and, before sentencing, pleaded guilty to other similar crimes involving different victims with the understanding that the sentences for those charges would be concurrent with and no longer than the sentences to be imposed for the trial convictions, the guilty pleas cannot be sustained after reversal of the trial convictions by the Court of Appeals, since the guilty pleas were based on the promise that the sentences imposed thereon would be concurrent with the sentences imposed at trial. People v Taylor, 80 NY2d 1. Proof of Other Crimes. 73. Preservation of Issue for Appellate Review — Presence of Defendant at Sandoval Hearing. — In a homicide prosecution, the order of the Appellate Divi-
*1060 1060 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d sion, which reversed defendant’s conviction for second degree murder and granted a new trial, should be affirmed. Defendant’s failure to raise an objection when the trial court proceeded to conduct a Sandoval hearing in his absence is not an obstacle to Court of Appeals review. Since defendant’s presence was required at that material stage, which in the circumstances of this case inferentially and directly affected the prosecutor’s trial strategy to cross-examine defendant with respect to drug-related activities — he had no prior criminal convictions, as was brought out at the Sandoval hearing and decision — the Appellate Division correctly reversed and ordered a new trial. People v Beasley, 80 NY2d 981. Rape. See Crimes, 74. Renunciation. 74. Attempted Rape — Incomplete Abandonment — Culmination of Attempted Rape Not Avoided by Abandonment. — In the prosecution of defendant for attempted rape, the trial court correctly denied defendant’s request to charge renunciation as an affirmative defense to the attempted rape count (Penal Law § 40.10 [3], [5]) since, although arguably there was enough for the jury to have concluded that defendant voluntarily stopped the sexual assault, apparently in response to the victim’s intimations concerning future gratification, there is no reasonable view of the proof that the abandonment of the criminal enterprise was complete (Penal Law § 40.10 [5]) or that the culmination of the intended rape was avoided by defendant’s abandoning the criminal effort (Penal Law § 40.10 [3]). On these critical issues there is only the testimony of the victim that when she and defendant left her apartment defendant was holding her by the arm, that she managed to duck from under his arm and get back through the apartment door which closed and locked automatically behind her, and that defendant thereafter attempted to regain entry into the apartment by knocking on the door and asking for a tissue. This evidence hardly evinces a complete abandonment by defendant of his criminal purpose. On the contrary, it strongly suggests that the criminal enterprise was continuing and that what prevented its completion was not defendant’s intention to abandon it but the victim’s escape. People v Taylor, 80 NY2d 1. Right to be Present at Trial. 75. Side-Bar Discussion with Prospective Jurors Concerning Objectivity and Impartiality — Effect of Defendant’s Failure to Object to Exclusion from Side-Bar Discussion. — Defendant’s right to be present during a material stage of the trial was violated where, during the impaneling of the jury, defendant was excluded from side-bar questioning of certain jurors concerning their ability to weigh evidence objectively and to hear testimony impartially. Although a court may conduct side-bar discussions with prospective jurors in a defendant’s absence if the questions relate to juror qualifications such as physical impairments, family obligations and work commitments, defendants are entitled to hear questions intended to search out a prospective juror’s bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and the venire person’s answers so that they have the opportunity to assess the juror’s facial expressions, demeanor and other subliminal responses. Moreover, because defendant had a fundamental right to be present, his failure to object to being excluded from the side-bar discussions is not fatal to his claim. People v Antommarchi, 80 NY2d 247. 76. Federal Due Process — Presence at CPL 60.20 Competency Hearing.— Defendant’s Federal due process right to be present at trial was not violated when the trial court preliminarily examined a child-witness pursuant to CPL 60.20 to determine whether she understood the nature of an oath in defendant’s absence. The hearing was confined to issues relating to competency, and defendant has presented no evidence that his relationship with the child, or his knowledge of facts regarding her background could have resulted in a more assured determination of competency. Accordingly, defendant’s presence at the competency hearing would have been useless, or the benefit but a shadow, and thus there was no Federal due process violation. People v Morales, 80 NY2d 450.
*1061 DIGEST-INDEX, 80 NY2d 1061 CRIMES — Cont’d 77. State Law — Presence at CPL 60.20 Competency Hearing. — Defendant’s right to be present at trial under State law was not violated when the trial court preliminarily examined a child-witness pursuant to CPL 60.20 to determine whether she understood the nature of an oath in defendant’s absence. Under State law a defendant ordinarily has an unfettered right to be personally present at core segments of trial, but only a qualified right to attend ancillary proceedings (see, CPL 260.20). Whether defendant’s qualified right has been violated is measured by the effect that defendant’s absence might have on the opportunity to defend. Here, the hearing did not involve evidentiary testimony or issues about which defendant has shown he had special knowledge. Instead, the proceeding related to a witness’ testimonial capacity, a legal determination unrelated to trial issues. In these circumstances, moreover, there is no greater right to be present under the State Constitution than already provided by statute. People v Morales, 80 NY2d 450. 78. Propriety of Pre-Antommarchi Side-Bar Questioning of Prospective Jurors in Defendant’s Absence. — In three prosecutions in which juror selection occurred prior to the Court of Appeals decision in People v Antommarchi (80 NY2d 247), side-bar questioning of prospective jurors outside defendants’ presence and without objection, which involved such matters as whether the prospective jurors had been crime victims, had been involved in criminal matters, or had doubts about their ability to remain impartial given the general nature of the case, did not deprive defendants of their right to be present "during the trial of an indictment” (CPL 260.20) or call for automatic reversal. Moreover, inasmuch as the questioning involved matters of general bias or hostility, there was no violation of defendants’ constitutional right to be present. People v Mitchell, 80 NY2d 519. 79. Prospective Application of People v Antommarchi. — People v Antommarchi (80 NY2d 247), which held that the court may not actively solicit answers from a prospective juror which relate to that juror’s bias or hostility in the absence of defendant, should be applied only prospectively to those cases in which jury selection occurred after October 27,1992, the date Antommarchi was decided. The purpose of the rule is not to cure any constitutional infirmity inherent in the trial courts’ former practice of questioning potential jurors regarding matters going to general bias or hostility in the defendant’s absence, but rather to permit a defendant a more active role in the examination and selection of potential jurors. Moreover, it relates to the fact-finding process only indirectly and therefore retroactivity is not mandated. Further, the courts have substantially relied on the prior practice. Finally, the voir dire process is involved in every jury trial and most if not all of the judgments of conviction in the cases currently on appeal will present an Antommarchi question. The reversal, or even the reconsideration, of these appeals on Antommarchi grounds would create a substantial burden on the administration of justice and delay the disposition of countless pending cases. People v Mitchell, 80 NY2d 519. 80. An order of the Appellate Division, which affirmed a judgment convicting defendant of second degree murder, is reversed and a new trial ordered, where defendant was excluded from hearings conducted pursuant to People v Sandoval (34 NY2d 371) and/or People v Ventimiglia (52 NY2d 350). People v Alexander, 80 NY2d 801. 81. An order of the Appellate Division, which reversed a judgment convicting defendant of first degree rape and remanded the matter for a new trial, is affirmed where the trial court conducted a Sandoval hearing in defendant’s absence. People v Rose, 80 NY2d 802. 82. Dismissal of Juror — Preservation of Issue for Appellate Review. — An order of the Appellate Division, which affirmed a judgment convicting defendant of murder, attempted murder and criminal possession of a weapon, is affirmed where a juror was dismissed on consent following an inquiry, at which defendant was not present, concerning whether the juror knew defendant, and after an off-the-record conference between the court and counsel, since defendant’s right to be present was not violated in light of the nature and scope of the inquiry, which
*1062 1062 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d consisted of a single question and answer. Moreover, defendant’s contention that the trial court failed to conduct a sufficiently probing inquiry at the disqualification hearing or otherwise comply with the procedures announced in People v Buford (69 NY2d 290, 299) is unpreserved, since unlike defendant’s claim that the right to be present was abridged when the inquiry was conducted in his absence, an issue reviewable even without objection at trial, a claim that a disqualification hearing was inadequate must be preserved to present a question of law for review in the Court of Appeals. People v Torres, 80 NY2d 944. 83. Defendant’s Absence from Sandoval Hearing — Reviewability of Issue on Appeal. — In a prosecution for attempted assault and criminal possession of stolen property, an order of the Appellate Division, which affirmed defendant’s conviction, should be reversed and a new trial ordered since defendant’s absence from a material part of his Sandoval hearing violated his right to be present at all material stages of his trial. The issue is reviewable, despite defendant’s failure to object, and the People’s contention that this case involves exceptional circumstances rendering defendant’s presence "superfluous” is unavailing. People v Gebrosky, 80 NY2d 995. Right to Counsel. 84. Effective Representation — Joint Representation — Conflict of Interest — Informed Consent to Joint Representation. — In the joint prosecution of defendant and two codefendants for robbery and related crimes, defendant was deprived of the effective assistance of counsel when his attorney absented himself during jury deliberations and the attorneys for the two codefendants assumed the defendant’s representation, because there was an actual conflict of interest between defendant and his codefendants. Where joint representation is undertaken at the crucial stage of jury deliberations, an actual conflict must be brought to the attention of a defendant so that any consent to that representation is an informed consent. Here, the key witness for one codefendant, who had previously been beaten by friends of defendant, testified that she observed defendant running with a gun in his hand and that she did not see the codefendants at the crime scene, thus implicating defendant while establishing a defense for the codefendants. Thus, an actual conflict existed, and defendant’s right to receive assistance from an attorney whose undivided responsibility is to that defendant alone was impaired by the joint representation by counsel for the codefendants. Moreover, the record reveals no explanation for defense counsel’s absence. Nor does the record indicate that the court, by proper inquiry, took the necessary precautions to ensure that the defendant perceived the potential risks inherent in joint representation by counsel for the codefendants. Thus, it cannot be concluded that defendant’s decision to pursue joint representation in this case was an informed one. People v Allah, 80 NY2d 396. 85. Trial Court Order Banning Consultation between Defendant and Counsel during Luncheon Recess Called during Cross-Examination of Defendant. — An order of the Appellate Division, which affirmed defendant’s conviction of criminal possession of a controlled substance in the first degree, should be affirmed where the trial court ordered defense counsel not to confer with his client during a luncheon recess, since the Appellate Division correctly concluded that defendant’s Sixth Amendment rights under the United States Constitution were not abridged by the trial court’s order. Moreover, there is no basis for a different result under the State Constitution. People v Enrique, 80 NY2d 869. Right to Speedy Trial. 86. Effect of Withdrawal of Appeal by People. — Inasmuch as a withdrawn appeal by the People is a nullity, it cannot serve as the basis for an exclusion from the time within which the People must be ready for trial pursuant to CPL 30.30. Thus, the People’s time to become ready will be deemed to have continued to run notwithstanding their CPL 450.20 (8) appeal from a trial court order suppressing evidence if, in fact, that appeal is withdrawn before it is determined. People v McIntosh, 80 NY2d 87. 87. Exclusions from Six-Month Speedy Trial Limitation — Unfitness of Defendant to Stand Trial — Parallel Supreme Court Orders of Incompetency in Different Proceedings. — Where defendant was found unfit to stand trial both in
*1063 DIGEST-INDEX, 80 NY2d 1063 CRIMES — Cont’d the instant prosecution by Supreme Court, Queens County, on April 10, 1985 and committed to the custody of the Commissioner of Mental Health for a period of six months by an order which expired on October 10, 1985, and on other pending charges by Supreme Court, New York County, on April 23, 1985 and committed to the Commissioner’s custody for a period not to exceed one year, and defendant was subsequently found fit to proceed to trial by Supreme Court, New York County, on September 24, 1986 and by Supreme Court, Queens County, on November 17, 1986, the time that defendant was incompetent to stand trial following the expiration of the Queens County commitment order and before the prosecution’s statement of readiness on October 16, 1986, was properly excluded under CPL 30.30 (4) (a) from the six-month speedy trial limitation. The speedy trial statute specifically recognizes as a separate factor resulting in delay warranting an exemption from the time limitation the period when, because of an existing determination of defendant’s unfitness to proceed due to his inability to understand the proceedings against him or to assist in his defense, the prosecution may not legally proceed to trial and conviction. Here, the New York County Supreme Court determination of unfitness, as long as it remained in effect, would have been a legal and constitutional bar to defendant’s prosecution and conviction in Queens County. Moreover, the Queens County finding of unfitness remained in effect until that court’s finding of fitness to proceed on November 17, 1986. People v Santana, 80 NY2d 92. 88. Consent to Adjournment — Silence of Defense Counsel. — A mere failure by defense counsel to object to an adjournment does not constitute "consent” within the meaning of CPL 30.30 (4) (b). People v Cortes, 80 NY2d 201. 89. Declaration of Readiness Required after Filing of New Indictment. — While the People are generally not required to declare their readiness repeatedly throughout the pendency of a criminal action, the dismissal of an indictment and the filing of a new one represents such a substantial break in the proceeding that a new communication of readiness is needed to eliminate guesswork and post hoc rationalizations. Thus, delays between the filing of new indictments against defendants and defendants’ separate arraignments on those indictments are not excludable on the ground that the People, having announced their readiness prior to dismissal of the first indictments, were, in fact, "ready” within the meaning of CPL 30.30 as soon as the second indictments were filed. People v Cortes, 80 NY2d 201. 90. Delay Attributable to Fault of Court — Failure of 18-B Panel to Promptly Supply Attorney to Represent Defendant. — For speedy trial purposes, delay resulting from the failure of a County Law article 18-B Panel to promptly supply an attorney to represent defendant is attributable to the "fault of the court” and, therefore, the exclusion from speedy trial time provided by CPL 30.30 (4) (f) for delay when the defendant is without counsel through no fault of the court is unavailable. Inasmuch as the judiciary is intimately involved in both the design and the operation of the 18-B Panel which assigns attorneys to represent indigent defendants, it is both fair and reasonable to hold the courts accountable for deficiencies in the system such as occurred here where the 18-B Panel failed to perform its basic mission of furnishing counsel to a defendant who could not afford to retain an attorney on his own. People v Cortes, 80 NY2d 201. 91. Delay Due to Postreadiness Adjournments — Burden of People to Ensure Clarity of Record of Proceeding at Which Adjournment Granted. — Although the defendant ordinarily has the burden of showing that any postreadiness adjournments occurred under circumstances that should be charged to the People, it is the People’s burden to ensure, in the first instance, that the record of the proceedings at which the adjournment was actually granted is sufficiently clear to enable the court considering the subsequent CPL 30.30 motion to make an informed decision as to whether the People should be charged. Thus, where defendant’s case was adjourned on August 1, 1989 and defendant moved for a CPL 30.30 dismissal on September 14, 1989, the delay between the adjournment
*1064 1064 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d and defendant’s motion is chargeable to the People, despite their argument that the delay was occasioned by defense counsel’s expressed intention to make a CPL 30.30 motion by the latter date, since no contemporaneous record was made of the reason for the August 1, 1989 adjournment and no determination could be made on the subsequent CPL 30.30 motion to whom the adjournment should be charged. People v Cortes, 80 NY2d 201. 92. Exclusion of Delay Due to Exceptional Circumstance — Dismissal of First Indictment on Ground Subsequently Proven to be Erroneous. — For speedy trial purposes, the period of delay between the dismissal of the original indictment on a ground that was subsequently proven erroneous and the People’s obtaining a new indictment should not be excluded as an "exceptional circumstance” under CPL 30.30 (3) (b) and (4) (g). The court’s decision to dismiss the indictment was not erroneous at the time it was made, but even if the trial court’s ruling had been legally improper, an erroneous dismissal is simply not what the Legislature had in mind when it enacted CPL 30.30 (3) (b) and (4) (g). People v Cortes, 80 NY2d 201. 93. Exclusion of Delay Due to Successful Appeal — Functional Equivalent of Successful Appeal. — For speedy trial purposes, the period of delay between the dismissal of the original indictment on a ground that was subsequently proven erroneous on appeal in a different case and the People’s obtaining a new indictment should not be excused under CPL 30.30 (4) (a) as the functional equivalent of a successful appeal. There is no functional equivalence between an appeal and the procedure utilized here, i.e., a formal motion for permission to resubmit followed by a resubmission to a Grand Jury and the filing of a new indictment. Having opted to rely on this process, the People cannot now claim the benefit of the lengthier period of excusable delay that might have been permitted had they opted instead for an appeal. People v Cortes, 80 NY2d 201. 94. Postreadiness Delay — Delay Attributable to Failure of 18-B Panel to Promptly Supply Attorney for Defendant Not Chargeable. — Periods of postreadiness delay attributable to the failure of a County Law article 18-B Panel to promptly supply an attorney to represent defendant are not chargeable to the People for purposes of computing their compliance with CPL 30.30’s strictures. Since the impediment that caused the delay — defendant’s lack of representation— arose after the People had declared themselves ready, it did not affect the People’s ability to present their own case; thus, it did not affect their "readiness” as that term is used in CPL 30.30 analysis and the postreadiness delay attributable to defendant’s lack of representation is not cognizable under CPL 30.30. People v Cortes, 80 NY2d 201. 95. Prearraignment Delay — Necessity of Specific Statutory Exclusion. — Although some prearraignment delays may be excused if they are caused by events recognized as exclusions under CPL 30.30 (4), periods of delay between the filing of indictments against defendant and the arraignments on those indictments will not be excluded in their entireties "as a reasonable time to arrange for defendant’s arraignment” where the People did not claim any specific CPL 30.30 (4) ground for exclusion in response to the dismissal motion. Since the People failed to satisfy their burden of proving their entitlement to an exclusion during the period preceding their readiness declaration, they are fully chargeable with the period of prearraignment delay that occurred. People v Cortes, 80 NY2d 201. Search Warrant. 96. Probable Cause — Hearsay Statements of Child under Age of 12 — Applicability of CPL 60.20. — CPL 60.20, which requires that witnesses under the age of 12 be examined as to their ability to understand the nature of an oath, is inapplicable to the hearsay statements of a nine-year-old child that served as the predicate for probable cause for issuance of a warrant to search defendant’s residence. Although the more onerous legal sufficiency standard required to sustain an indictment (CPL 70.10 [1]; 190.65 [1]) demands competent evidence, there is no such requirement for the “reasonable cause to believe” standard for issuance of a search warrant (CPL 70.10 [2]; 690.40 [2]). Moreover, Aguilar v
*1065 DIGEST-INDEX, 80 NY2d 1065 CRIMES — Cont’d Texas (378 US 108), Spinelli v United States (393 US 410) and their New York progeny — detailing the circumstances under which hearsay information may provide the factual predicate for probable cause for a search warrant — presuppose that probable cause may in fact be based on incompetent hearsay evidence. The presumption under CPL 60.20 against the testimonial capacity of a child less than 12 years old is an evidentiary rule relating only to the capacity of a child witness to give competent evidence admissible at a criminal proceeding. Accordingly, here, the nine-year-old child’s hearsay statements, having satisfied the AguilarSpinelli test, were acceptable as the necessary factual basis for probable cause, notwithstanding that the Village Justice issuing the warrant failed to examine her pursuant to CPL 60.20 as to her ability to understand the nature of an oath. People v Hetrick, 80 NY2d 344. 97. Probable Cause — Sufficiency of Factual Basis. — A nine-year-old child’s hearsay statements were acceptable as the necessary factual basis for probable cause under the Aguilar-Spinelli test for the issuance of a warrant to search defendant’s residence, where the child had a basis of knowledge for her statements, i.e., her personal observation of the events she described, and there were ample indicia of the reliability of her statements, including their thoroughness and detail, and the child’s understanding of her duty to tell the truth. Further, because the child was an identified citizen informant, and not an unnamed informant, there was a "built-in” basis for crediting her reliability. People v Hetrick, 80 NY2d 344. 98. Probable Cause — Confidential Informant. — The probable cause necessary for the issuance of a search warrant is lacking where the application for the warrant is supported by the affidavit of a confidential informant who has not been questioned by the issuing court and whose reliability has not been established. Accordingly, the requisite probable cause for a search warrant was lacking where the application for the warrant was supported by two affidavits that were signed by a person only as "Confidential Informant”, and by another affidavit of a police investigator that failed to specify any situations in which information previously provided by the informant had either resulted in a conviction or been independently verified, and prior to issuing the warrant, the Judge did not have the informant appear and did not question her. No basis for concluding that the informant was reliable can be found where the police officer’s affidavit articulates no verified history of success with this informant and the informant’s affidavits are signed merely "Confidential Informant”. Moreover, it is not sufficient for the police to conclude that the informant was reliable; the issuing Judge must be satisfied that there is a reasonable basis for the issuance of the warrant. People v Martinez, 80 NY2d 549. 99. Confidential Informant — Propriety of Conducting Suppression Procedure without Participation of Defendant. — Where defendant moved to suppress evidence seized pursuant to a search warrant issued on the basis of information supplied by a confidential informant, challenging the sufficiency of the warrant application and claiming that the search was tainted because of a prior police contact, the court properly denied defendant discovery of the search warrant and its supporting documente and conducted the suppression hearing in camera without defendant’s participation on the ground that disclosure of the informant’s identity and/or statements could compromise the safety of the informant or the integrity of future investigations. A defendant’s interest in availing himself of the exclusionary rule may, in exceptional circumstances, be subordinated to safety precautions necessary to encourage citizens to participate in law enforcement. Here, both the issuing Judge and the suppression court questioned the police officer affiant and the informant under oath, and concluded that there was probable cause for the search, that the police officer’s affidavit was truthful and that there was an overriding need for confidentiality. Although defense counsel’s affidavit in support of the motion to suppress also contained allegations that prior police activities tainted the search, the court found after sufficient inquiry and on sufficient evidence that there was no taint. Therefore, there is support in the
*1066 1066 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d record for the suppression court’s findings and under the circumstances the procedures it followed did not offend due process. People v Castillo, 80 NY2d 579. Sentence. See, also, Crimes, 17. 100. Concurrent and Consecutive Terms — Consecutive Terms for Separate Offenses Committed Through Separate Acts That Are Part of Single Transaction. —Penal Law § 70.25 (2), which mandates imposition of concurrent sentences where a defendant commits "two or more offenses * * * through a single act”, does not forbid consecutive sentencing of defendant upon his conviction of reckless endangerment in the first degree and criminal possession of stolen property in the third degree, arising from his conduct initially in unlawfully possessing and driving a stolen automobile, and in then accelerating the vehicle onto a sidewalk and into a crowd of pedestrians and police officers after the police ordered defendant to pull the vehicle over. Trial courts retain consecutive sentencing discretion when separate offenses are committed through separate acts, though they are part of a single transaction. Here, defendant’s discrete acts— possession and propulsion of the vehicle — impacted different victims, were separated by place and were temporally differentiated, though in part overlapping. Thus, the possessory and substantive crimes were not of the "single act” variety for which consecutive sentencing authority is forbidden. People v Brown, 80 NY2d 361. 101. Standard of Appellate Review. — In three unrelated narcotics prosecutions involving the sale of small amounts of crack cocaine, the orders of the Appellate Division, which affirmed judgments convicting defendants of criminal sale of a controlled substance in the third degree, and, in one case, criminal possession of a controlled substance in the third degree, and which also affirmed the sentences imposed thereon, should be affirmed. An intermediate appellate court has broad, plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though the sentence may be within the permissible statutory range (CPL 470.15 [6] [b]), and that sentence-review power may be exercised, if the interest of justice warrants, without deference to the sentencing court. Contrary to defendants’ assertions, the Appellate Division did not misapprehend its power in these cases, and its statements that the sentencing courts did not abuse their discretion may be read as meaning that the Appellate Division did not find the sentences unduly harsh or severe under the circumstances. People v Delgado, 80 NY2d 780. 102. Probation — Separate Accusatory Instruments. — Defendant’s sentence of one-year imprisonment following his plea of guilty to one superior court information, and five years’ probation following his plea of guilty to another information, was invalid under Penal Law §65.00 (1), which provides that a court shall not impose a sentence of probation "in any case” where it sentences a defendant for more than one crime and imposes a sentence of imprisonment for any one of the crimes, since the statutory language, "in any case”, should not be read to mean a single "case” or accusatory instrument (see, CPL 220.35). "In any case” refers to "in any instance”, rather than to a single accusatory instrument. Moreover, probation is inappropriate for defendants being imprisoned, because the basic purpose of probation is to provide supervision without removing offenders from the community, and that rationale applies with equal force whether defendant is sentenced for related crimes contained in a single accusatory instrument or, as here, for unrelated crimes charged in separate instruments. Accordingly, so long as defendant is imprisoned for "some other crime”, the Legislature did not authorize probation as a sentencing option. People v Cerilli, 80 NY2d 1016. Suppression Hearing. See, also, Crimes, 40. 103. Identification of Defendant — Denial of Request by Defendant to Call Complainants as Witnesses. — In the prosecution of defendant for separate crimes involving two different victims, where defendant was identified at a lineup that was viewed by the two complainants as well as two other victims of similar crimes allegedly committed by defendant, the hearing court did not improperly deny defendant’s request to call the complainants as witnesses at the suppression
*1067 DIGEST-INDEX, 80 NY2d 1067 CRIMES — Cont’d hearing to testify whether any of the four victims who had viewed the lineup improperly discussed it with the others. Inasmuch as the Appellate Division’s factual finding that the complainants waited in a room that was attended by a police employee who was instructed to prevent conversation is supported by evidence in the record, the hearing court did not abuse its discretion in denying defendant’s request because his claim of suggestiveness was purely speculative. People v Taylor, 80 NY2d 1. Suppression Motion. 104. Authority of Court to Dispense with Statutory Written Notice Requirement. — Trial courts are not empowered to dispense with CPL 710.60 (l)’s written notice requirement for pretrial motions to suppress evidence in the exercise of their "inherent authority” to control their own calendars. The statute’s prescriptions must be obeyed, and the courts have no authority to vary or override them. People v Mezon, 80 NY2d 155. 105. Effectiveness of Waiver of Statutory Written Notice Requirements by People. — The People did not waive compliance with CPL 710.60 (1), which provides that pretrial motions to suppress evidence must be made in writing and upon reasonable notice to the People, where, at defendant’s arraignment, the defense suggested proceeding on its suppression claims by oral motion, and the prosecutor asked for a written motion, but subsequently participated in the remainder of the proceedings, including the suppression hearing, without further objection, after the trial court stated unequivocally that it would permit an oral motion. The People’s conduct made it clear that they did not voluntarily intend to forgo their right to a written suppression motion, and no further protest was required. People v Mezon, 80 NY2d 155. 106. Waiver of Statutory Written Notice Requirements by People. — Compliance with CPL 710.60 (1), which provides that pretrial motions to suppress evidence must be made in writing and upon reasonable notice to the People, can effectively be waived by the People. Inasmuch as CPL 710.60 (1) exists to ensure that the People are adequately protected from unfair surprise and have sufficient opportunity to respond to the defendant’s suppression claims, the prosecution should be able to waive the statutory protections, particularly since there are no overriding public policies that would be offended by treating the People’s silence as a waiver. People v Mezon, 80 NY2d 155. Unlawful Search and Seizure. 107. Factual Basis Necessary to Justify Pursuit and Detention of Fleeing Individual — Reasonable Suspicion of Criminal Activity. — Police may forcibly stop or pursue an individual if they have information which, although not yielding the probable cause necessary to justify an arrest, provides them with a reasonable suspicion that a crime has been, is being, or is about to be committed. People v Martinez, 80 NY2d 444. 108. Pursuit of Fleeing Individual — Abandonment of Contraband. — A motion by defendant to suppress drugs he discarded while being pursued by police officers was properly denied since the police possessed the necessary reasonable suspicion to justify the pursuit and, therefore, defendant’s abandonment of the drugs was not precipitated by any illegal police conduct. Once defendant abandoned the box which contained the drugs, he lost his right to object to the opening of the box and the drugs discovered upon opening the box provided the police with probable cause to arrest him. People v Martinez, 80 NY2d 444. 109. Pursuit of Fleeing Individual — Reasonable Suspicion of Criminal Activity. —Police officers had a reasonable suspicion of criminal activity to justify their pursuit of defendant where there was evidence that defendant was seen standing at night in an area known for an excessive amount of drug activity, he was removing a device known to the officers to be used for hiding drug stashes from the steel grate of a store window, and he fled immediately upon observing the approaching police. Although defendant’s flight when the officers approached could not, in and of itself, create a reasonable suspicion of criminal activity, defendant’s removal of the drug stash device in a narcotics-prone neighborhood,
*1068 1068 80 NEW YORK REPORTS, 2d SERIES CRIMES — Cont’d when coupled with defendant’s immediate flight upon the officers’ approach, establishes the necessary reasonable suspicion to justify the pursuit. People v Martinez, 80 NY2d 444. 110. Inventory Search of Impounded Automobile. — An inventory search of an impounded automobile in which defendant had been a passenger violated both the State and Federal Constitutions where the police department policy governing the search failed to generate a meaningful inventory of the vehicle’s contents and allowed the officer conducting the search undue discretion. An inventory search is justified by the fact that a detailed and carefully recorded inventory protects the seized property while it is in police hands and insures against claims of loss, theft or vandalism. Here, the list was made five hours after the search and did not indicate the disposition of each item removed; such a procedure is so unrelated to the underlying justification for inventory searches that it is arbitrary and irrational. Moreover, the procedure was also flawed by the impermissible level of discretion given to the searching officer, notwithstanding that the discretion vested under the instant procedure involved decisions only after completing the search; arbitrary decision-making about what to seize, no less than arbitrary decision-making about what to search, creates unacceptable risks of unreasonableness in an inventory search policy. People v Galak, 80 NY2d 715. 111. Discovery of Pistol in Automobile. — An order of the Appellate Division, which reversed a judgment convicting defendant of second degree assault and ordered a new trial, is affirmed where the police, who had stopped defendant and ordered him and his passenger out of defendant’s car, searched defendant’s car and discovered a pistol therein before defendant and his passenger were identified by the victim and a witness as the perpetrators of the assault. In light of the fact that there is support in the record for the lower courts’ determination that the police lacked probable cause to believe that defendant’s vehicle contained a weapon or evidence of a crime, they had no basis for subjecting it to a search. People v Snyder, 80 NY2d 815. 112. Initial Police Inquiry of Suspect on Street. — An order of the Appellate Division, which affirmed a judgment convicting defendant of criminal possession of a controlled substance in the second degree, should be affirmed where trained narcotics officers driving through a drug-prone neighborhood spotted defendant clutching a plastic bag tightly against his body, since those circumstances, although not necessarily indicative of criminality, justified the officers’ initial approach for the purposes of asking defendant to identify himself and state his purpose in the neighborhood. That one officer held his hand on his bolstered gun as he approached defendant was not, by itself, sufficient to raise the encounter to a second-level investigatory stop under People v De Bour (40 NY2d 210); accordingly, the courts below correctly denied defendant’s motion to suppress where he intentionally abandoned the bag and fled before the officers had any opportunity to ask him any questions. People v Diaz, 80 NY2d 950. Witnesses. See, also, Crimes, 1, 67, 96. 113. Expert Witness — Defendant Not Entitled to Tape-Recording of Examination by People’s Psychiatric Expert. — In the prosecution of defendant for crimes to which he pleaded not guilty by reason of insanity, the trial court did not act improperly in declining to direct that the examination of defendant by the People’s psychiatric expert be tape-recorded. While CPL 250.10 (4) states that a written report of the psychiatric examination must be prepared and made available to both counsel, tape-recording of the examination is not mandatory. On the contrary, the statute provides that "[n]o transcript or recording of the examination is required, but if one is made, it shall be made available to both parties prior to the trial” (CPL 250.10 [4]). Thus, although both counsel are to be given access to the written report of the examination and to the transcript or recording, if one has been required, the decision of whether to require a transcript or recording is left to the discretion of the Trial Judge. People v Santana, 80 NY2d 92. 114. Expert Witness — Improper Restriction on Defense Counsel’s Right to Consult with Defendant’s Psychiatric Expert in Connection with Cross-Examinatian of People’s Expert. — In the prosecution of defendant, who pleaded not guilty
*1069 DIGEST-INDEX, 80 NY2d 1069 CRIMES — Cont’d by reason of insanity and was convicted on several charges after a jury trial at which the only issue was whether defendant lacked the mental capacity to commit the crimes by reason of mental disease or defect (Penal Law § 40.15), the trial court committed reversible error when it restricted defendant’s counsel’s right to consult with defendant’s psychiatric expert witness in connection with the cross-examination of the People’s expert by ruling that such consultation was prohibited until after defendant’s expert finished all his testimony in the case. The trial court’s ruling effectively precluded defense counsel from offering any surrebuttal evidence if he chose to enlist the assistance of his own expert in developing and conducting the cross-examination of the People’s expert, and interfered significantly with defendant’s right to make an effective presentation on the only issue before the jury — his affirmative defense of insanity. Moreover, to prevent one psychiatric expert from knowing the basis of the other expert’s opinion on the question of defendant’s sanity in a criminal case is incompatible with the legislative policy evident in CPL 250.10 (3) and (4) of assuring that each party has unrestricted access to the relevant psychiatric opinions and information of the other. People v Santana, 80 NY2d 92. DAMAGES. Lost Profits. 1. Availability in Action Based on Abrogation of Exclusive Right to Negotiate Contemplated Land Disposition Agreement. — In an action for damages against defendant City of New York arising from the termination of plaintiff’s exclusive right under two letter agreements to negotiate the terms and conditions of a contemplated land disposition agreement (LDA) for two sites within an urban renewal area, plaintiff cannot have a valid claim for loss of anticipated profits based upon the City’s anticipated performance of the obligations it would have undertaken assuming that the negotiations had progressed to agreement and that an LDA had received final approval by the Board of Estimate, where both the letter agreements and then existing law expressly conditioned the City’s contractual obligation on final approval by the Board of Estimate. The City’s sole obligation was to negotiate in good faith, and it was not bound to agree to an LDA or to continue the negotiating process. To allow the profits that plaintiff might have made under the prospective LDA as the damages for breach of the exclusive negotiating agreements would be basing damages not on the exclusive negotiating agreements but on the prospective terms of a nonexistent contract which the City was fully at liberty to reject. Moreover, under the rule of Hadley v Baxendale (9 Exch 341, 156 Eng Rep 145), loss of profits based on fulfillment of the terms of the contract being negotiated could not have been reasonably contemplated as damages for a breach of the agreement to negotiate those very contractual terms. Goodstein Constr. Corp. v City of New York, 80 NY2d 366. Punitive Damages. See Civil Rights, 1. DECEDENTS’ ESTATES. See Wilis, and other specific titles. DEEDS. Restrictive Covenants. See Public Housing, 1, 2. DISCLOSURE. Material Exempt from Disclosure. 1. Material Prepared for Litigation — Surveillance Tapes of Personal Injury Plaintiff. — In two personal injury actions, surveillance films prepared by defendants which defendants plan to use at trial are discoverable by the plaintiffs before trial. Surveillance films should be treated as material prepared in anticipation of litigation (CPLR 3101 [d] [2]), and as such are subject to a qualified
*1070 1070 80 NEW YORK REPORTS, 2d SERIES DISCLOSURE — Cont’d privilege that can be overcome only by a factual showing of substantial need and undue hardship. Here, plaintiffs’ substantial need to view surveillance films before trial is manifest because films are so easily altered that there is a very real danger that deceptive tapes, inadequately authenticated, could contaminate the trial process. Moreover, plaintiffs confronted with surveillance films for the first time at trial would not have an adequate opportunity to ascertain the films’ accuracy and authenticity. The danger that such disclosure would greatly impair the truth-finding function of cross-examination can be largely eliminated by providing that surveillance films be turned over only after a plaintiff has been deposed. In addition, plaintiffs have established that they cannot without undue hardship obtain the substantial equivalent of surveillance materials by other means, since it is only by observing the conditions as they appear on film that the plaintiffs can respond to possible distortions or prepare to explain seeming inconsistencies to the jury. DiMichel v South Buffalo Ry. Co., 80 NY2d 184. DISMISSAL AND NONSUIT. Want of Prosecution. 1. Medical Malpractice Action — Showing of Merit. — In a medical malpractice action, an order of the Appellate Division, which reversed an order denying defendant’s motion to dismiss for failure to prosecute, granted the motion and dismissed the complaint, should be affirmed, since the party opposing a motion to dismiss for failure to prosecute is obligated to make an evidentiary showing sufficiently demonstrating a "good and meritorious cause of action” (CPLR 3216 [e]), and in medical malpractice actions expert medical opinion evidence is required to demonstrate merit, except as to matters within the ordinary experience and knowledge of laypersons. Accordingly, the Appellate Division correctly concluded that plaintiff failed to satisfy these requirements where plaintiff’s opposition papers to defendant’s motion included only an attorney’s affirmation, containing merely "unsubstantiated assertions and speculations.” Mosberg v Elahi, 80 NY2d 941. ELECTIONS. Designating Petitions. 1. Adequacy of Order to Show Cause. — In a proceeding to validate a designating petition for a party primary election, an order of the Appellate Division, which reversed a judgment validating the petition and reinstated a judgment invalidating the petition, is reversed and the judgment granting the petition to validate reinstated for the reasons stated by the dissenting Justices at the Appellate Division, where the objectors alleged that the order to show cause by which the proceeding was commenced was jurisdictionally defective because it failed to specify the court in which it was granted and in which it was returnable. The order to show cause adequately specified the time and place of the hearing thereon (see, CPLR 403 [a]) where it indicated that it was returnable on a certain date and directed the objectors to appear at a certain Part of Supreme Court to be held in a designated room. Moreover, the annexed verified petition specified that the proceeding was brought in the Supreme Court of the State of New York in New York County, as did the blue back annexed thereto. Accordingly, the order to show cause was not jurisdictionally defective. Matter of Osorio v Leventhal, 80 NY2d 898. 2. Residency of Candidate for County Legislature. — A designating petition naming appellant as a candidate for the public office of Monroe County Legislator, 8th District, was improperly invalidated on the ground that appellant did not reside in the 8th District at the time the designating petition was filed, since none of the relevant statutes (see, Public Officers Law § 3 [1]; Election Law § 6-122; Monroe County Charter § C2-3 [A]) expressly mandates that a candidate for public office be a resident of the election unit at the time the designating petition is filed; rather, the interplay of those statutes fixes the earliest time for residency at 30 days prior to the election. Matter of Weidman v Starkweather, 80 NY2d 955.
*1071 DIGEST-INDEX, 80 NY2d 1071 ENVIRONMENTAL CONSERVATION. Environmental Quality Review. 1. Cumulative Impact Study for Central Pine Barrens Development Projects Not Mandated by ECL 8-0109 (9). — With respect to 224 development projects currently proposed for Long Island’s ecologically sensitive Central Pine Barrens region, a legislative intent to mandate cumulative impact review under the State Environmental Quality Review Act (ECL art 8 [SEQRA]) may not be inferred from ECL 8-0109 (9), which provides that an Environmental Impact Statement for projects affecting the Central Pine Barrens "shall meet the requirements of the most detailed environmental impact statement required by this section or by any * * * rule or regulation promulgated pursuant to this section”. This general directive was not intended to mandate the substitution of SEQRA’s methods for the comprehensive, bicounty planning process contemplated by ECL article 55. Matter of Long Is. Pine Barrens Soey. v Planning Bd., 80 NY2d 500. 2. Mandatory Cumulative Impact Statements — "Related” Projects — Long Island Central Pine Barrens Region. — The 224 development projects currently proposed for the Central Pine Barrens region, an indispensable component of Long Island’s aquifer system, are not "related” so as to be subject to mandatory cumulative impact study pursuant to the State Environmental Quality Review Act (ECL art 8) and its accompanying regulatory scheme (see, 6 NYCRR 617.11 [a] [11]; [b]), simply because the region is both ecologically sensitive and subject to a large body of protective legislation. There is no cohesive framework for relating the 224 projects to each other since there is merely a host of Federal, State and local statutes designating the region as an ecologically sensitive one and mandating the development of adequate land-use controls. The only element the projects share — their common placement in the Central Pine Barrens — is an insufficient predicate under the present set of administrative regulations for mandatory cumulative impact analyses as preconditions to a myriad of local land use determinations. Moreover, a cumulative impact study involving individual decision-making by various "lead agencies”, acting in accordance with their own local policies and priorities, would be inappropriate here since the functions that might otherwise be served by the completion and use of a cumulative impact statement are to be served by a comprehensive management plan that the Long Island Regional Planning Board is responsible for preparing (see, ECL 55-0113, 55-0115). Further, the existing system of land-use planning in the region is plainly not equal to the massive undertaking that effective long-range planning would require, which demonstrates the need for centralized planning by a single regional agency as mandated by ECL article 55. Matter of Long Is. Pine Barrens Soey. v Planning Bd., 80 NY2d 500. EVIDENCE. See, also, Crimes; Disclosure; Witnesses, and other specific titles. Hearsay Evidence. 1. Present Sense Impression Exception — Corroboration Requirement. — The corroboration required for admissibility of statements under the present sense impression exception to the hearsay rule will depend on the particular circumstances of each case and must be left largely to the sound discretion of the trial court. But before present sense impression testimony is received, there must be some evidence in addition to the statements themselves to assure the court that the statements sought to be admitted were made contemporaneously and spontaneously with the events described. People v Brown, 80 NY2d 729. 2. Present Sense Impression Exception. — The present sense impression exception to the hearsay rule is the law in New York. Accordingly, spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence. Further, such statements may be admitted even though the declarant is not a participant in the events and is an unidentified bystander. People v Brown, 80 NY2d 729.
*1072 1072 80 NEW YORK REPORTS, 2d SERIES EVIDENCE — Cont’d Opinion Evidence. 3. Expert Testimony as to Earnings from Alternative Employment in Personal Injury Action. — In a personal injury action, the Trial Judge abused his discretion when he prevented the defendant’s experts from testifying as to the amount that plaintiff could have been expected to earn from alternative employment. The defense was precluded from offering relevant evidence regarding plaintiff’s future earning power, and this error was compounded by plaintiff’s efforts to portray defendant’s vocational expert’s testimony as incomplete and unreliable because of the expert’s failure to conduct a pretrial examination of plaintiff that was adamantly and successfully opposed by plaintiff’s counsel. DiMichel v South Buffalo Ry. Co., 80 NY2d 184. GRAND JURY. Defective Proceeding. 1. Right to Appear before Grand Jury — Prosecutor’s Use of Immunized Statement of Defendant during Defendant’s Testimony. — The prosecutor’s possession and review of an immunized statement of defendant during defendant’s testimony before the Grand Jury did not constitute a use of the statement warranting dismissal of the charges against defendant. There is no showing that the prosecutor employed the statement as a source of information for questioning defendant or for discovering other information in the investigation. Defendant was never confronted with the statement and there was no showing that defendant was even aware that the prosecutor had it. Nothing in the record supports the conclusion that the prosecutor’s conduct had the effect of forcing defendant to conform his testimony to the statement and, thus, restricted his right to testify under GPL 190.50 (5). Further, the transcript of defendant’s testimony reveals that the statement did not affect his testimony. Thus, defendant was in no way inhibited from exercising his right to testify before the Grand Jury, and there is no basis for a holding that the integrity of the Grand Jury was impaired or that the defendant somehow was prejudiced so as to require dismissal. Nevertheless, a prosecutor should avoid possessing an immunized statement during a Grand Jury presentation. People v Corrigan, 80 NY2d 326. Instructions to Jury. 2. Reckless Manslaughter — Criminally Negligent Homicide. — With respect to charges of reckless manslaughter and criminally negligent homicide stemming from the death of an employee of the corporate defendant, which was engaged in the business of transporting petroleum products, when petroleum vapors exploded while the employee was cleaning a tank trailer, it was error to instruct the Grand Jury that the defendants could be indicted "if you find that they recklessly created unsafe conditions that led to [the victim’s] death by a foreseeable event, namely, the explosion, since the People were required to show that it was foreseeable that the explosion would occur in the manner that it did. People v Roth, 80 NY2d 239. HORSE RACING. Suspension of Jockey’s License. 1. Serving Suspension at Saratoga Racetrack if Offense Occurred There. — The policy of the State Racing and Wagering Board that, following an administrative appeal, a suspension imposed for an infraction committed at the Saratoga racetrack be served at the Saratoga meet the following year, fits the definition of a "rule” contained in State Administrative Procedure Act § 102 (2) (a) (i), since it applies to every jockey who elects to race at Saratoga, commits an infraction there, and unsuccessfully appeals to the Board, and, thus, constitutes a fixed, general principle applied without regard to the facts and circumstances of an individual case. Accordingly, that policy may not be applied to petitioner jockey inasmuch as it was not formally promulgated by the Board pursuant to the rule-making procedures set forth in State Administrative Procedure Act § 202. It
*1073 DIGEST-INDEX, 80 NY2d 1073 HORSE RACING — Cont’d cannot be said that the Saratoga policy is not a "rule” because it only affects the implementation of a penalty, not a jockey’s conduct; the policy does not relate to the penalty as such, and does not purport to control the Board’s discretion as to what the suspension should be for a particular infraction, but rather establishes a mandatory procedure that pertains only to when and where a Saratoga suspension must be served in the event of an appeal. Matter of Cordero v Corbisiero, 80 NY2d 771. HUSBAND AND WIFE. See, also, Parent and Child; Social Services, and other specific titles. Equitable Distribution. 1. Marital Property — Assets Acquired after Commencement of Prior Separation Action. — A separation action does not, ipso facto, terminate the marital economic partnership and, therefore, does not preclude the subsequent accrual of marital property under Domestic Relations Law § 236 (B) (1) (c). The commencement of a separation action may be considered as a factor by the courts, among other relevant factors, as they attempt to calibrate the ultimate equitable distribution of marital economic partnership property acquired after the start of such an action by either spouse; however, assets acquired subsequent to the commencement of a separation action are not excluded, arbitrarily and per se, from the potential pool of accruing marital property. Anglin v Anglin, 80 NY2d 553. INFANTS. See, also, Adoption; Parent and Child; Social Services, and other specific titles. Juvenile Delinquents. See, also, Appeal, 4, 5. 1. Timeliness of Fact-Finding Hearing — Toll of 60-Day Limitation Period during Referral for "Adjustment Services”. — In a juvenile delinquency proceeding, a referral for "adjustment services” made pursuant to Family Court Act § 320.6 tolls the time specified in Family Court Act § 340.1 for commencing the fact-finding hearing for a period of up to 120 days, provided that section 308.1 (9)’s requirement for a judicially granted extension for efforts at adjustment is observed. Although section 308.1 is addressed primarily to situations in which "adjustment services” are to be provided before any juvenile delinquency petition is filed, Family Court Act § 320.6 (4) provides that, with one exception not pertinent here, the procedural mandates of section 308.1 are to be applied when a case has been judicially referred for adjustment after the initial appearance. Thus, it is evident that the Legislature intended the timing prescriptions applicable to prepetition adjustment proceedings to be available in analogous proceedings commenced after the petition has been filed and the respondent has appeared. Moreover, Family Court Act § 320.6 was enacted to encourage the adjustment of appropriate cases even after a petition is filed, and that goal would clearly be frustrated if there were no toll during the pendency of adjustment proceedings and a referral for adjustment thereby increased the risk of a dismissal for failure to comply with the timeliness requirements of section 340.1. Matter of Aaron J, 80 NY2d 402. 2. Sufficiency of Petition — Hearsay Nature of Supporting Deposition. — In a juvenile delinquency proceeding, the statement contained in complainant’s supporting deposition which was edited and revised by the Assistant Corporation Counsel before it was transcribed, and was neither read by nor to the complainant before she signed it, constitutes hearsay. The deposition was nothing more than a statement written by a law enforcement officer reporting what he or she had been told by an eyewitness. Although the complainant signed the deposition, she had never read — nor been read — its contents, and thus she never learned what the document actually said. Matter of Edward B., 80 NY2d 458. 3. Sufficiency of Petition — Nonhearsay Allegations — Latent Deficiency.— Latent deficiencies in a juvenile delinquency petition that are revealed during the trial or hearing do not provide a ground for mandatory dismissal under Family
*1074 1074 80 NEW YORK REPORTS, 2d SERIES INFANTS — Cont’d Court Act § 315.1 (1) (a). Neither the statutes establishing the criteria for accusatory instruments in juvenile delinquency proceedings nor the policies underlying those statutes suggest that an inquiry beyond the facial validity of the petition is necessary or even appropriate. Accordingly, where the juvenile delinquency petition against respondent was sufficient on its face under the standards set forth in Family Court Act §§ 311.1 and 311.2, but during the fact-finding hearing it was revealed that the supporting deposition was hearsay because the complainant was not made aware of its precise contents before she signed it, respondent’s midhearing motion to dismiss the petition on the ground that it was jurisdiction-ally deficient because it was supported in relevant part only by hearsay in violation of Family Court Act § 311.2 (3) was properly denied. Matter of Edward B., 80 NY2d 458. 4. Failure to Appear before Family Court as Bail Jumping. — In juvenile delinquency proceedings involving four respondents who previously had been charged with acts which, if committed by an adult, would constitute felonies, petitions charging respondents with acts which, if committed by an adult, would constitute bail jumping in the second degree (Penal Law § 215.56) based upon their failure to appear on scheduled dates before Family Court in connection with the previous charges were correctly dismissed, since section 215.56, by its terms, applies only to adults facing criminal prosecution for a felony. By its plain terms, the statute reaches only those released upon bail or their own recognizance and it is further limited to those facing a criminal action or proceeding relating to a felony. A juvenile respondent is never required to appear in connection with a charge against him of committing a felony; rather, the respondent appears in connection with allegations of juvenile delinquency. Further, a juvenile delinquency proceeding is not a criminal action or proceeding. Moreover, the word "felony” as used in section 215.56 is intended to calibrate the degree of bail jumping in a criminal action; it should not be read as "an act, which if done by an adult, would constitute a felony”. Matter of Natasha C., 80 NY2d 678. 5. Lesser Included Offense. — In a juvenile delinquency proceeding, it was proper for the Family Court to base its adjudication upon a finding that appellant had committed a lesser included crime (assault in the third degree) of the only crime charged in the petition (assault in the second degree), since the Family Court has long been recognized as possessing the authority to adjudicate a youth a juvenile delinquent based upon a finding that a lesser included crime, not specifically charged in the petition, has been committed. Although Family Court Act § 345.1 (2) requires that a juvenile delinquency petition be dismissed if its allegations have not been established, it has never been construed as precluding Family Court Judges from considering whether a respondent has committed a lesser included crime. Moreover, Family Court Act § 321.2 specifically empowers Family Court Judges to accept admissions to lesser included crimes, and the Legislature could not have intended that Family Court Judges would lack the authority to base juvenile delinquency adjudications upon a finding that a lesser included crime, not charged in the petition, had been committed when it had specifically authorized such Judges to accept admissions to such crimes. Matter of Dwight M., 80 NY2d 792. 6. Unlawful Search and Seizure — Matters Reviewable. — An order of the Appellate Division, which affirmed an order adjudicating appellant a juvenile delinquent upon a finding that she committed acts which, if committed by an adult, would have constituted the crime of criminal possession of a controlled substance in the first degree, should be affirmed. The courts below determined that a police officer possessed a founded suspicion that criminal activity was afoot sufficient to sanction the common-law inquiry into the contents of a bulge under appellant’s coat and that appellant voluntarily consented to open her coat, thereby revealing a plastic bag containing cocaine. Inasmuch as those determinations involve mixed questions of law and fact, and since there is evidence to support the hearing court’s findings, undisturbed by the Appellate Division, review in the Court of Appeals is at an end. Matter of Gissette Angela P., 80 NY2d 863.
*1075 DIGEST-INDEX, 80 NY2d 1075 INSURANCE. See, also, Workers’ Compensation, and other specific titles. Automobile Insurance. 1. Uninsured Motorist Endorsement — Coverage Required When Insured Vehicle Involved in Out-of-State Accident. — Insurance Law §5103 (e) and the implementing Insurance Department regulation (11 NYCRR 60-1.1 [e]) require that every New York automobile insurance policy must provide the minimum uninsured motorist coverage mandated by the law of another State when the insured automobile is involved in an accident in that State. The purpose of section 5103 was to assure that the carriers provide not only the amount of coverage but that type of coverage minimally required by the State in which the insured is visiting, notwithstanding any New York law to the contrary. Further, the regulation implementing the statute (11 NYCRR 60-1.1 [e]) specifies that policies must provide at least the minimum amount and kind of coverage which is required in such cases under the laws of such other jurisdiction, and the Insurance Department’s interpretation of the statute is entitled to deference. Accordingly, with respect to two New York residents whose automobiles were insured in New York and who were involved in automobile accidents in the State of New Jersey, the New York statutory and regulatory scheme contemplates that the New Jersey requirements for uninsured motorist coverage should be incorporated into the contracts of the New York insureds. Matter of American Tr. Ins. Co. v Abdelghany, 80 NY2d 162. 2. Underinsured Motorist Endorsement — "Exhaustion by Payment” of Applicable Bodily Injury Insurance Policies — Availability of Setoff to Satisfy Exhaustion Requirement. — Respondents, New York residents who were involved in a car accident in the Province of Quebec, Canada, with a Quebec resident whose vehicle was insured for bodily injury liability to nonresidents of Quebec up to a maximum of $20,000 under the Quebec Automobile Insurance Act (QAIA), are not entitled to underinsured motorist protection pursuant to the motor vehicle liability policy issued by their New York insurer until they have each "exhausted by payment” the insurance for pain and suffering afforded under the QAIA. The clear language of respondents’ policy and Insurance Law § 3420 (f) (2) requires respondents to "exhaust * * * by payment” the limits of all applicable bodily injury insurance policies before their insurer is required to pay pursuant to the underinsurance endorsement. Thus, the statutory scheme requires primary insurers to pay every last dollar, and requires plaintiffs to accept no less, prior to the initiation of an underinsurance claim. Inasmuch as one respondent was awarded $82.12 pursuant to QAIA for the injuries he sustained in the accident, while the other respondent’s claim under QAIA was denied because she was found 100% at fault for the accident, neither respondent has "exhausted by payment” the limits of all applicable bodily insurance policies as required by the statute and the subject policy. Moreover, since respondents’ policy does not include an agreement regarding a setoff of applicable injury insurance, respondents may not satisfy the exhaustion of payment requirement by allowing their insurer a setoff of the maximum amount recoverable under the QAIA. Matter of Federal Ins. Co. v Watnick, 80 NY2d 539. 3. Uninsured Motorist Endorsement — "Uninsured Vehicle” — Vehicle Covered by Quebec Automobile Insurance Act. — In arbitration proceedings arising from a car accident that occurred in the Province of Quebec, Canada, between a resident of Quebec and respondents, residents of New York State who were insured under a motor vehicle liability policy issued by a New York State insurer which contained an uninsured motorist endorsement, the Quebec resident’s vehicle was not "uninsured” within the meaning of the Insurance Law and the subject policy where that vehicle was insured for "bodily injury” under the Quebec Automobile Insurance Act (QAIA), which provides bodily injury insurance coverage to all owners of road vehicles using a public highway in the Province of Quebec. An "uninsured motor vehicle” is one as to which no proof of financial security exists, as defined by Vehicle and Traffic Law § 311 (3) (see, Insurance Law § 5202 [c], [d]). Section 311 (3) defines the term "proof of financial security” to
*1076 1076 80 NEW YORK REPORTS, 2d SERIES INSURANCE — Cont’d mean proof of ability to respond in damages for liability arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner’s policy of liability insurance. Here, the QAIA is tantamount to an owner’s policy of liability insurance and provides the Quebec resident with proof of financial security. Moreover, the record indicates that the Quebec vehicle was also insured by an insurance company. Matter of Federal Ins. Co. v Watnick, 80 NY2d 539. 4. Uninsured Motorist Endorsement — "Family Member” of Policyholder. — In a proceeding to stay arbitration of an uninsured motorist claim asserted by the 38-year-old son of the New Jersey policyholder, the petition to stay arbitration should be granted since the son, who maintained an apartment in Manhattan and resided there more than 80% of the time, is not a covered person entitled to uninsured motorist benefits under Ms father’s msurance policy, wMch provides coverage only for a "family member”, defined in the policy as "a person related to [the msured] by blood, marriage or adoption who is a resident of [the msured’s] household”. Although the son stored some belongings m his parent’s New Jersey house and spent the Mght there occasionally, Supreme Court’s findmg that he was not a resident of his father’s household more nearly comports with the weight of the evidence than does the Appellate Division’s contrary findmg. Matter of Aetna Cas. & Sur. Co. v Gutstein, 80 NY2d 773. Contribution among Insurers. 5. Plain English Exclusion Clause. — In an action by one msurer to recover from another insurer a pro rata contribution for a settlement paid in a personal injury action arising out of an accident suffered by an employee of both parties’ insured, plamtiff, which issued a combmed workers’ compensation and employer’s liability policy to the employer, may recover m contribution from defendant neither one half of the "fresh money” it contributed to the liability settlement of the underlying action nor one half of the value of its waived workers’ compensation lien where the plam English exclusion clause m defendant’s comprehensive general liability policy, wMch msures the employer unambiguously, excludes from coverage "claims that arise from bodily injury that your [the employer’s] employees suffer on the job”, smce that unambiguous language makes the exclusion applicable to any claim arising from bodily rnjury, whether m contribution or indemnity or as an exception to Workers’ Compensation Law § 11, and to divine ambiguity in this mstance would be to construe a clause in a way that drams it of its only intended meaning and defeat the use of plain English language. Commissioners of State Ins. Fund v Insurance Co., 80 NY2d 992. Disclaimer of Coverage. 6. Representations of Agent. — In an action seeking a declaration that defendant insurer is obligated to defend and indemnify plamtiff in an underlying personal rnjury action, defendant insurer and its agent are entitled to summary judgment smce plaintiffs assertion that the agent promised to provide some type of coverage wMch would have been effective on the date the underlying personal injury action accrued is insufficient to overcome defendants’ motion for summary judgment. Dedvukaj v Allstate Ins. Co., 80 NY2d 843. Duty to Defend and Indemnify. 7. Collateral Estoppel — Privity of Successor Corporations. — For the purpose of establishing an "occurrence” withm the meaning of a standard form comprehensive general liability policy so as to require plamtiff insurers to defend actions for personal injuries sustained tMough exposure to asbestos products manufactured by the msured’s predecessor corporation, the msured is not collaterally estopped from contesting mtent to cause rnjury by an assortment of punitive damage judgments against another successor corporation (Celotex) to the asbestos product manufacturer. The msured was not a party to or mvolved in the defense of the actions giving rise to the punitive damage awards and, therefore, could only be estopped if it were in privity with Celotex. Although the msured and Celotex are both successor corporations, they have no common ownersMp, and their mere succession to the same potential liability does not place the two corporations in
*1077 DIGEST-INDEX, 80 NY2d 1077 INSURANCE — Cont’d privity with one another. Since there is no obligation of the insured to Celotex or any common financial interest, the insured does not have the requisite interest in the judgments against Celotex for privity between the two corporations. Thus, plaintiffs’ estoppel claim is insufficient to avoid their duty to defend the insured. Continental Cas. Co. v Rapid-Am. Corp., 80 NY2d 640. 8. Pro Rata Contribution to Defense Costs by Insured Who was Self-Insured during Overlapping Occurrence Periods. — In a declaratory judgment action in which plaintiff insurers were held to be obligated to defend their insured in actions for asbestos-related personal injuries, the question whether the insured itself should have to contribute pro rata to defense costs because it was allegedly self-insured for some periods when there were occurrences is premature. The allegation that the insured was self-insured for a period of time predating coverage by plaintiffs cannot operate to deny the insured the complete defense to which it is entitled under plaintiffs’ policies in the event of overlapping occurrence periods. The question whether the insured itself must contribute to defense costs is appropriately deferred at least until such time as the underlying lawsuits are shown to involve "occurrences” during self-insured periods. Continental Cas. Co. v Rapid-Am. Corp., 80 NY2d 640. 9. Pro Rata Contribution to Defense Costs by Second Insurer. — In a declaratory judgment action in which plaintiff insurers were held to be obligated to defend their insured in actions for asbestos-related personal injuries, the question whether plaintiffs had a claim for contribution to defense costs from the insured’s present insurer is premature. The duty to defend is broader than the duty to pay, requiring each insurer to defend if there is an asserted occurrence covered by its policy, and the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible. When more than one policy is triggered by a claim, pro rata sharing of defense costs may be ordered, but there is no error or unfairness in declining to order such sharing, with the understanding that the insurer may later obtain contribution from other applicable policies. Continental Cas. Co. v Rapid-Am. Corp., 80 NY2d 640. 10. What Constitutes "Occurrence” — Practical Construction by Insured. — In a declaratory judgment action involving plaintiff insurers’ duty to defend actions for personal injuries sustained through exposure to asbestos products manufactured by the insured’s predecessor corporation, plaintiffs’ contention that the underlying lawsuits do not involve occurrences "during the policy period” — 1971-1979 — because the insured has demonstrated its own "practical construction” that a covered event "occurs” upon manifestation of asbestosis by previously looking to its new insurer instead of plaintiffs to defend asbestos suits where the manifestation of the disease occurred after 1979, is insufficient to avoid plaintiffs’ duty to defend the insured. The insured, by claiming under other policies, has not by implication claimed as of right under a doubtful provision, coupled with knowledge thereof and acquiescence therein with respect to plaintiffs’ policies. The insured’s actions vis-á-vis its new insurer are irrelevant for the purpose of determining rights and obligations with respect to plaintiff insurers. Continental Cas. Co. v Rapid-Am. Corp., 80 NY2d 640. Exclusions. See, also, Insurance, 5. 11. Pollution Exclusion — Asbestos-Related Personal Injury Claims. — In a declaratory judgment action involving plaintiff insurers’ duty to defend actions for personal injuries sustained through exposure to asbestos products manufactured by the insured’s predecessor corporation, coverage is not excluded by the subject comprehensive general liability policies’ "pollution exclusion” clause so as to relieve plaintiffs of their duty to defend, since the clause is ambiguous with regard to whether the asbestos fibers at issue — fibers inhaled by persons working closely with or suffering long-term exposure to asbestos products — were discharged into the "atmosphere” as contemplated by the exclusion. Continental Cas. Co. v Rapid-Am. Corp., 80 NY2d 640. 12. "Unexplained Loss” Exclusion — Unambiguous Policy. — In an action to recover on "jewelers block” insurance policies arising out of a loss of a bag
*1078 1078 80 NEW YORK REPORTS, 2d SERIES INSURANCE — Cont’d containing jewelry, defendant insurers properly disclaimed liability for the loss, relying on clauses in their policies that excluded from coverage "[ujnexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory”, where the corporate plaintiffs president was unable to say how or where the loss occurred, since, contrary to plaintiffs argument, the clause in question is susceptible of only one interpretation, viz., that each of the enumerated casualties is plainly an independent basis for exclusion, and there is nothing in the grammar or syntax of the exclusionary clause to suggest that the phrase "discovered on taking inventory” was intended to modify each one. Moreover, the burden of proof was not improperly shifted from the insurer to the insured, notwithstanding the fact that an insurer generally has the burden of proving that a loss is within the scope of a policy exclusion, since defendants satisfied that burden by simply showing that plaintiffs claim concededly involved an "unexplained loss” or "mysterious disappearance.” Goldman & Sons v Hanover Ins. Co., 80 NY2d 986. 13. Losses Caused by Freezing — Proximate Cause. — In an action to recover on a builders risk insurance contract, which excluded coverage for damage "caused by * * * freezing”, summary judgment on the issue of liability should have been granted to plaintiff insured where the damages in question resulted from a subbasement water spill occasioned by the freezing and rupturing of a sprinkler head, since the freezing was not the proximate, efficient and dominant cause of the flooding and water damage within the meaning of the exclusionary clause. As read by the ordinary and reasonable business person, a loss caused by freezing could not be found to incorporate a loss visibly occasioned by water damage by virtue of the mere fact that the presence of water can best be explained by the rupturing of a frozen sprinkler head. Rather, a reasonable business person would conclude that plaintiffs loss was caused by water damage and would look no further for alternate causes. That only this most direct and obvious cause should be looked to for purposes of the exclusionary clause becomes even more evident when the limited language of the clause ("caused by” freezing) is compared to the other exclusionary clauses, all of which use broader language, i.e., "caused by or resulting from”, "arising directly or indirectly from”, etc. Album Realty Corp. v American Home Assur. Co., 80 NY2d 1008. Liquidation of Insurer. 14. Insurer as Surety on Investor Bonds Securing Investor Notes — Nature of Risk. — In a proceeding to annul a determination of the Superintendent of Insurance denying a claim by a lender, who advanced funds in New York to a Kentucky limited partnership, for coverage by the New York Property/Casualty Insurance Security Fund for payment on investor bonds issued by a now defunct insurance company to secure payment of promissory notes executed by purchasers of limited partnership units in the Kentucky partnership, an order of the Appellate Division, which affirmed an order and judgment (one paper) and a judgment annulling the determination and remanding and remitting the matter, is affirmed for reasons stated in the opinion at Supreme Court, which concluded that the Superintendent was without basis to assert that the risk involved was not located in New York; that the risk in question was the repayment by the investors, most of whom were New Yorkers, rather than the underlying business investment (i.e., a Kentucky coal mining venture); that the liability on the bonds existed independent of the profitability of the underlying investment; that it is the failure of the investors to make payment on demand which triggers liability on the bonds, not the default by the Kentucky partnership on the loan; that the law does not preclude the possibility that the insured risk and the covered risk will be one and the same, and that the Superintendent has taken conflicting positions respecting the nature of the insured risk and the standard for covered risk vis-á-vis the locus of payment on the notes (see, Insurance Law § 7602 [former (g)j; § 7603 [a] [1] [former (B)j). Matter of Union Indem. Ins. Co., 80 NY2d 983.
*1079 DIGEST-INDEX, 80 NY2d 1079 INTEREST. Rate of Interest. 1. Satisfaction of Mortgage Debt. — In a mortgage foreclosure action, an order of the Appellate Division, which affirmed an order limiting the amount of interest payable on the judgment of foreclosure to the statutory rate of 9% per annum, is affirmed for the reasons stated in the memorandum thereat, which concluded that the language in the mortgage at bar could not be construed as altering the rule that the statutory rate of interest becomes applicable following entry of the judgment (see, CPLR 5003, 5004); that although the contract rate of interest, 25% herein, governs until payment of the principal, once the contract is merged in a judgment, the statutory rate applies; that there was nothing in the instant mortgage to suggest that defendant intended to bind itself to paying a 25% interest rate following entry of the judgment, and that in the absence of a clear, unambiguous and unequivocal expression that defendant agreed to pay 25% interest until the judgment was satisfied, the precedent establishing the statutory rate of interest of 9% as the proper rate to be applied to the judgment should not be departed from. Marine Mgt. v Seco Mgt., 80 NY2d 886. INTOXICATING LIQUORS. Dram Shop Act. 1. Sale to Minors — Liability for Indirect Sale to Minor. — A convenience store operated by defendant which sells alcoholic beverages may not be held liable under General Obligations Law §§ 11-100 and 11-101 for personal injuries resulting from an indirect sale of alcohol to a minor. The General Obligations Law is explicit in limiting liability for injuries caused by an intoxicated minor to the unlawful supply of alcoholic beverages to that person (General Obligations Law § 11-100 [1]; § 11-101 [1]). Moreover, liability under section 11-100 may be imposed only on a person who knowingly causes intoxication by furnishing alcohol to (or assisting in the procurement of alcohol for) persons known or reasonably believed to be underage. Here, defendant did not knowingly sell, furnish or assist in procuring alcoholic beverages to or for the intoxicated tortfeasor; rather, the intoxicated tortfeasor allegedly obtained the alcoholic beverages from a minor who had purchased them at defendant’s store. Nor are there facts or circumstances from which the requisite knowledge could reasonably be inferred. Moreover, nothing in the General Obligations Law imposed upon defendant a duty, merely because a quantity of alcoholic beverages was purchased, to investigate possible ultimate consumers in the parking lot beyond its doors. Sherman v Robinson, 80 NY2d 483. Sale to Minors. 2. Common-Law Liability for Indirect Sale to Minor. — A convenience store selling alcoholic beverages may not be held liable, under common law, for personal injuries resulting from an indirect sale of alcohol to a minor. The legal duty that a store selling alcoholic beverages owes to a third party is limited by General Obligations Law § 11-101 and does not include a duty to investigate possible indirect sales. Given the Legislature’s choice not to provide liability for the indirect sale in this case, the common law will not be expanded to impose such liability. Sherman v Robinson, 80 NY2d 483. JUDGES. Removal from Office. 1. Petitioner, a Judge of the Surrogate’s Court, is guilty of charges that he violated the Rules of Judicial Conduct, and the determined sanction of the respondent State Commission on Judicial Conduct that he be removed from office is accepted. After becoming a full-time Judge, and for more than two years after assuming the Bench, petitioner improperly continued to act as fiduciary in several estates, improperly continued performing business or legal services for clients, and maintained an inappropriate business and financial relationship with a law firm which had an active practice before his court; further, petitioner failed to file reports of his extrajudicial activities, and altered entries relating to these im-
*1080 1080 80 NEW YORK REPORTS, 2d SERIES JUDGES — Cont’d proper activities in an attempt to mislead Commission investigators. Matter of Moynihan, 80 NY2d 322. JUDGMENTS. Collateral Estoppel. See Insurance, 7. Summary Judgment. See Negligence, 2. LABOR. See, also, Arbitration; Civil Service; Master and Servant; Municipal Corporations; Schools; Workers’ Compensation, and other specific titles. Safe Place to Work. 1. Labor Law §241 (6) Not Limited to Building Sites. — The requirements of Labor Law § 241 (6) concerning safety precautions during construction, excavation and demolition operations, are not limited to building sites. To the extent that Dillon v State of New York (167 AD2d 574) contains a contrary interpretation of section 241 (6), it should not be followed. Accordingly, claimant’s allegations with respect to injuries she sustained while employed in a State highway repaving project fall within the purview of Labor Law § 241 (6). Mosher v State of New York, 80 NY2d 286. 2. Common-Law and General Statutory Duty to Protect Employees. — In an action to recover for personal injuries sustained by plaintiff when he fell from a ladder while cutting down a tree located on property which one defendant had contracted to purchase from defendant Estate, the Appellate Division correctly determined that plaintiff could not recover from defendant contract vendee, who is to be treated as the owner for the purposes of this action, on causes of action based on the common law and Labor Law § 200, since plaintiff’s account of the accident establishes that there was no dangerous condition on the premises which caused the accident; rather, it was caused by the manner in which removal of a tree branch was undertaken. Moreover, there is no evidence that defendant contract vendee exercised supervisory control or had any input into how the branch was to be removed. Lombardi v Stout, 80 NY2d 290. 3. Liability of Owner — Exemption for Owners of One- and Two-Family Dwellings — Preparation of Property for Commercial Rental. — In an action to recover damages for injuries sustained by plaintiff worker on property defendant contract vendee had contracted to buy, plaintiff’s cause of action under Labor Law § 240 (1) should not be dismissed as against defendant contract vendee, who is to be treated as the owner for purposes of the action, on the ground that he is exempt from liability under the statutory exception for certain owners of one- and two-family dwellings because the building located on the premises previously had been a one-family residence and was vacant at the time of the accident, where plaintiff has established a question of fact with respect to defendant’s intended use of the property for commercial rental and whether the work was part of the plan to accomplish that use. The exception was not intended to insulate from liability owners who use their one- or two-family houses purely for commercial purposes, and here defendant has stated that the purpose in renovating the premises included upgrading it for possible future rental and he did, in fact, subsequently rent the house to two families. Lombardi v Stout, 80 NY2d 290. 4. Scaffolding and Other Devices for Use of Employees — Tree Removal. — In an action to recover damages for injuries sustained by plaintiff when he fell from a ladder while cutting down a tree located on property which defendant contract vendee had contracted to buy from defendant Estate, plaintiff submitted sufficient evidence to warrant a trial of his cause of action under Labor Law § 240 (1) which requires owners and contractors to furnish or erect suitable devices to protect workers when work is being performed on a building or structure, where he established prima facie that the tree removal was part of a plan to remodel the house on the property into a two-family building and that, at the time he was working on the tree, scaffolding was placed against the building in preparation for doing so. Section 240 is to be construed "as liberally as may be” to achieve the
*1081 DIGEST-INDEX, 80 NY2d 1081 LABOR — Cont’d statute’s purpose of placing the ultimate responsibility for building practices on the owner and general contractor in order to protect the workers who are required to be there but who are scarcely in a position to protect themselves from accidents. Although a tree is not a "building” or a "structure” as those terms have been defined in connection with section 240 (1), it is well within the intended purposes of the statute to apply its provisions to the tree removal operation performed as part of the house renovations and paving, activities involving a building or structure. Lombardi v Stout, 80 NY2d 290. 5. Highway Reconstruction. — In an action to recover damages for the wrongful death of claimant’s decedent, a construction worker who was killed as a result of an accident which occurred during a highway reconstruction project, an order of the Appellate Division, which affirmed the dismissal of the claim, should be affirmed. Although the Appellate Division erred in concluding that Labor Law § 241 (6) applies only to work in connection with the construction or demolition of buildings and not to the highway construction project at bar, claimant’s cause of action under that statute was properly dismissed, since the record supports the Court of Claims conclusion that claimant failed to establish that a violation of a safety regulation promulgated pursuant to Labor Law § 241 (6) was the proximate cause of the accident. Ares v State of New York, 80 NY2d 959. 6. Injury Sustained in Course of Manufacturing Work — Common-Law Duty of Employer. — In a personal injury action arising out of plaintiff laborer’s fall in a factory from an upright steel mold that he was preparing during his customary occupational work of fabricating a concrete septic tank, plaintiff has pleaded a cause of action pursuant to Labor Law § 200, which codifies the common-law duty of an owner or employer to provide employees with a safe place to work, and which covers all places to which the Labor Law applies, including factories (see, Labor Law § 2 [9], [10]; see also, Labor Law art 11). Inasmuch as section 200 is not limited to construction work and does not exclude employees engaged in normal manufacturing processes, plaintiff’s cause of action in that regard should not have been dismissed. Jock v Fien, 80 NY2d 965. 7. Injury Sustained in Course of Manufacturing Work — Strict Liability. — In a personal injury action arising out of plaintiff laborer’s fall in a factory from an upright steel mold that he was preparing during his customary occupational work of fabricating a concrete septic tank, the Appellate Division properly dismissed causes of action asserted pursuant to Labor Law §240 (1), which imposes a nondelegable duty and absolute liability upon owners or contractors for failing to provide safety devices necessary for protection to workers subject to the risks inherent in elevated work sites who sustain injuries proximately caused by that failure, and Labor Law § 241 (6), which requires contractors and owners to provide reasonable and adequate protection and safety to employees working in, and persons lawfully frequenting, all areas in which construction, excavation, or demolition work is being performed, since at the time of the accident, the injured plaintiff was not engaged in any construction or sewer project and was not involved in renovation or alteration work on the factory. His work fabricating the molds during the normal manufacturing process did not involve "erection, demolition, repairing, altering, painting, cleaning or pointing” (Labor Law § 240 [1]) or "construction” or "excavation” work (Labor Law § 241 [6]). Thus, plaintiff was not engaged in any activity protected under the statutes. Jock v Fien, 80 NY2d 965. 8. Work Involving Risks Related to Differences in Elevation. — In a personal injury action brought by a construction laborer pursuant to Labor Law § 240 (1) arising out of a forklift-related injury, it cannot be said that the Appellate Division erred in denying as premature plaintiffs’ motion for partial summary judgment as to liability on the ground that there was outstanding discovery sought by defendants, since defendants averred that they needed more discovery time to depose witnesses as to the use and existence of safety devices, and since the discovery timetables set forth in a preliminary conference order had not yet expired. Alternatively, although the Appellate Division improperly relied on Yaeger v New York Tel. Co. (148 AD2d 308) in concluding that partial summary judgment was improper because not every one of plaintiffs’ several varying
*1082 1082 80 NEW YORK REPORTS, 2d SERIES LABOR — Cont’d versions of the accident involved work performed at heights, denial of plaintiffs’ motion was nonetheless proper since plaintiff laborer’s account of the accident as set forth in the complaint may not support a finding that the statute was violated, given that the statute applies not simply where the work is performed at heights but involves risks related to differences in elevation. Groves v Land’s End Hous. Co., 80 NY2d 978. LEGISLATURE. Apportionment of Legislature. 1. Constitutionality of Senate Redistricting Plan — Constitutional Requirements Regarding Integrity of Counties. — Laws of 1992 (ohs 76, 77, 78), which embody a redistricting plan for the State Senate that results in 28 of 61 Senate districts crossing county lines, 23 counties being divided and 4 pairs of bi-county districts, do not unduly depart from the State Constitution’s requirements regarding integrity of counties (NY Const, art m, § 4) in its compliance with Federal mandates for apportionment substantially on an equal population basis. Notwithstanding that the Senate redistricting plan technically violates the express language of the State Constitution, more than enough evidence has been put forth to support the argument that any such violation was minimized and that the district lines were drawn as they were in order to comply with Federal statutory and constitutional requirements. Although the Senate plan compromises the integrity of 23 counties, a detailed defense of the proposed plan has been presented that is grounded in a complex analysis of population trends and voting patterns, and the way in which both must be accommodated in order to comply with Federal requirements. While the number of divided counties in the new plan and the four bi-county pairings are troubling, it is not appropriate for the Court of Appeals to substitute its evaluation of the relevant statistical data for that of the Legislature. In balancing State and Federal requirements, the State Constitution has been complied with as far as practicable, and it cannot be concluded on this record that the Legislature acted in bad faith in approving this redistricting plan. Matter of Wolpoff v Cuomo, 80 NY2d 70. 2. Constitutionality of Senate Redistricting Plan. — Laws of 1992 (ohs 76, 77, 78), which embody a redistricting plan for the State Senate that results in 28 of 61 Senate districts crossing county lines, 23 counties being divided and 4 pairs of bi-county districts, are constitutional. The presumption of constitutionality that attaches to the redistricting plan has not been overcome. The Senate redistricting plan does not unduly depart from the State Constitution’s requirements regarding contiguity, compactness and integrity of counties (NY Const, art m, §4) in its compliance with Federal mandates for apportionment substantially on an equal population basis. Matter of Wolpoff v Cuomo, 80 NY2d 70. LIBEL AND SLANDER. Actionable Words. 1. Federal Constitution — Statement Made at Public Hearing — Allegation of Fact. — In a defamation action, defendant’s statement that plaintiff’s restaurant, located in the building where defendant resided, "denigrated” the building, made in opposition to plaintiff’s application for a building permit during a public hearing conducted by a New York City Community Board, is constitutionally protected under the First Amendment, since the statement cannot be construed to allege facts. The term "denigration” falls far short of any requirement of verifiability. It does not state such factually ascertainable phenomena as the diminution of real estate values or the rendering of the building uninhabitable and, therefore, it cannot support an action for defamation. 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130. 2. Federal Constitution — Statement Made at Public Hearing — Allegation of Fact. — In a defamation action, defendant’s statement that plaintiff’s lease and "proposition” or "composition” to create a sidewalk cafe adjacent to its restaurant located on leased premises in the building in which defendant resided, were
*1083 DIGEST-INDEX, 80 NY2d 1083 LIBEL AND SLANDER — Cont’d fraudulent and smelled of bribery and corruption, made in opposition to plaintiff’s application for a building permit during a public hearing conducted by a New York City Community Board, is constitutionally protected under the First Amendment since the statement cannot be construed to allege facts. Given the loose nature of the language, the "general tenor” of the remarks made at a public hearing, and the skepticism a reasonable listener brings to such a proceeding, defendant’s statement is not such that a reasonable listener at the hearing understood defendant to be saying that plaintiff committed fraud and bribery and corrupted City officials or to be implying undisclosed defamatory fact as the basis for the opinion. 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130. 3. Federal Constitution — Statement Made at Public Hearing — Allegation of Fact. — In a defamation action, defendant’s statement that plaintiff’s lease was "illegal” because it "said they could take the sidewalk”, made during a public hearing conducted by a New York City Community Board in opposition to plaintiff’s application for a building permit to construct a sidewalk cafe adjacent to its restaurant located on leased premises in the building in which defendant resided, is constitutionally protected under the First Amendment since the statement cannot be construed to allege facts. From the plain language of the statement, a reasonable listener would not conclude that defendant was saying the plaintiff was engaged in criminal behavior. Even in the unlikely event that a person at the hearing would reasonably believe a private lease governed a public sidewalk, the listener would need to take the further step and believe that the lessee was engaged in criminal conduct by signing and accepting the terms of the document. At worst the statement alleges nothing more than the lease provision is unenforceable. 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130. 4. State Constitution — Statements Made at Public Hearing — Allegation of Fact. — In a defamation action arising from remarks made during a public hearing conducted by a New York City Community Board in connection with plaintiff’s application for a building permit to construct a sidewalk cafe adjacent to its restaurant located on leased premises in the building in which defendant resided, defendant’s statements that the restaurant "denigrated” the building, that the lease and "proposition” or "composition” were fraudulent and smelled of bribery and corruption, and that there was an illegal lease, are constitutionally protected under NY Constitution, article I, § 8 since, looking at the content of the whole communication, its tone and apparent purpose, defendant’s speech was a statement of opinion and advocacy and not a presentation alleging objective fact. 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130. Malice. 5. Common-Law Standard — Spite or 111 Will as Motivation for Defamatory Statement. — In a defamation action commenced by plaintiff landlord against defendant, a tenant in plaintiff’s building who is on the board of governors of the tenants’ association, there is no triable malice issue under the common-law standard that would defeat the qualified "common interest” privilege which attached to defendant’s alleged statement to a colleague on the board of governors that "[tjhere is a cop on the take from [plaintiff]”. Under the common-law malice standard, malice means spite or ill will that is referable not to defendant’s general feelings about plaintiff, but to the speaker’s motivation for making the defamatory statements. A triable issue is raised only if a jury could reasonably conclude that malice was the one and only cause for the publication. Here, defendant did not make a public announcement of his suspicions — from which an inference could be drawn that his motive was to defame plaintiff — but relayed them to a colleague who was in a position to investigate. The conversation was within the common interest of defendant and his colleague on the governing board, and there is nothing in the record from which a reasonable jury could find that defendant was not seeking to advance that common interest. Liberman v Gelstein, 80 NY2d 429. 6. Constitutional Standard — High Degree of Awareness of Probable Falsity.— In a defamation action commenced by plaintiff landlord against defendant, a
*1084 1084 80 NEW YORK REPORTS, 2d SERIES LIBEL AND SLANDER — Cont’d tenant in plaintiff’s building who is on the board of governors of the tenants’ association, there is no triable malice issue under the constitutional standard that would defeat the qualified "common interest” privilege which attached to defendant’s alleged statement to a colleague on the board of governors that "[t]here is a cop on the take from [plaintiff]”. Under the constitutional malice standard, the plaintiff must demonstrate that the conditionally privileged statements were made with a high degree of awareness of their probable falsity. Here, although defendant admitted that he did not know whether the bribery charge was true, there is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter will establish reckless disregard in a defamation action. Moreover, plaintiff’s mere characterization of the sources of defendant’s statement as "disgruntled” building employees is insufficient to raise a triable issue. Liberman v Gelstein, 80 NY2d 429. Privilege. 7. Speech Used in Discharging Public Function Arising from Duties of Office — Participant in Public Hearing of Community Board. — Allegedly defamatory comments made by defendant, a member of the Building Committee of the Board of Managers of a condominium, at a public hearing conducted by a New York City Community Board, in opposition to plaintiff’s application for a building permit to create a sidewalk cafe near the condominium building, are not protected under the common law by an absolute privilege extended to those participating in judicial, legislative or executive proceedings. An absolute privilege is available only to those who in speaking are discharging a public function arising from the duties of their office; since defendant had no office at the hearing, no absolute privilege attached to his remarks. 600 W. 116th St. Corp. v Von Gutfeld, 80 NY2d 130. 8. Conditional "Common Interest” Privilege. — In a defamation action commenced by plaintiff landlord against defendant, a tenant in plaintiff’s building who is on the board of governors of the tenants’ association, defendant’s alleged statement to a colleague on the board of governors that "[t]here is a cop on the take from [plaintiff]”, although slanderous per se, falls within the "common interest” privilege as a communication made by one person to another upon a subject in which both have an interest. Defendant and his colleague were members of the governing board of an association formed to protect the tenants’ interests. If plaintiff was in fact bribing the police so that his cars could occupy spaces in front of the building, that would be inimical to those interests. Thus, defendant had a qualified right to communicate his suspicions — though defamatory of plaintiff — to his colleague. Liberman v Gelstein, 80 NY2d 429. Slander Per Se. 9. Statement Charging Serious Crime — Bribery as Serious Crime. — In a defamation action commenced by plaintiff landlord against defendant, a tenant in plaintiff’s building who is on the board of governors of the tenants’ association, defendant’s alleged statement that "[t]here is a cop on the take from [plaintiff]” is slanderous per se since it charges a serious crime — bribery. Thus, the alleged statement is actionable without the need to establish special harm. Liberman v Gelstein, 80 NY2d 429. 10. Statement Charging Serious Crime — Harassment Not Serious Crime. — In a defamation action commenced by plaintiff landlord against defendant, a tenant in plaintiff’s building who is on the board of governors of the tenants’ association, defendant’s alleged statement that "[plaintiff] * * * threatened to kill me and my family” is not slanderous per se on the ground that it falsely attributes to plaintiff the commission of the crime of harassment. Harassment is a relatively minor offense in the New York Penal Law and thus the harm to the reputation of a person falsely accused of committing harassment would be correspondingly insubstantial; it is, therefore, not slanderous per se to claim that someone committed harassment. Liberman v Gelstein, 80 NY2d 429. 11. Statement Tending to Injure Another in His or Her Business — Statement Charging Landlord with Harassment. — In a defamation action commenced by
*1085 DIGEST-INDEX, 80 NY2d 1085 LIBEL AND SLANDER — Cont’d plaintiff landlord against defendant, a tenant in plaintiffs building who is on the board of governors of the tenants’ association, defendant’s alleged statement that "[plaintiff] * * * threatened to kill me and my family” is not slanderous per se as tending to harm plaintiff in his business as a property owner since the statement is unrelated to plaintiffs status as a landlord. Liberman v Gelstein, 80 NY2d 429. LIBRARIES. Fiscal and Administrative Control of Library. 1. In an action to determine the powers and duties of a county and a library board of trustees over the management and fiscal control of a city and county public library, an order of the Appellate Division, which reversed a judgment holding plaintiff library to be under the fiscal control of defendant county, and declared that, subject to the amount of the appropriation granted by defendant, plaintiffs board of trustees has the authority to manage and control the library and its personnel, is affirmed for the reasons stated in the opinion thereat, which concluded that vesting fiscal and administrative control over the library in the county would be inconsistent with those portions of the legislation creating the library which unambiguously vest exclusive management and control in the library board of trustees (see, L 1953, ch 768); that a provision in the 1953 legislation requiring library appropriations to be subject to the provisions of the budget or fiscal laws applicable to such county (see, McKinney’s Uncons Laws of NY § 6215), merely requires the library to abide by the same fiscal restraints applicable to all counties in the same position as defendant, and that that interpretation is not only consistent with the plain language of the statute and gives effect to the general principle of statutory construction instructing courts to avoid interpretations resulting in irreconcilable conflicts, but also is consistent with Education Law § 259 and various decisions of the State Comptroller. Buffalo & Erie County Pub. Lib. v County of Erie, 80 NY2d 938. LICENSES. See Brokers, and other specific titles. LIMITATION OF ACTIONS. Contractual Limitations Period. 1. An agreement to extend the Statute of Limitations to six years from the date of final payment on a construction contract is void and unenforceable, since General Obligations Law § 17-103, which permits extensions of limitations periods, provides that a promise to extend the Statute of Limitations is effective "according to its terms”, and inasmuch as the parties’ agreement purported to extend the limitations period to an indefinite date in the future in contravention of the six-year maximum provided by the statute, it cannot be enforced "according to its terms”. The court cannot rewrite the parties’ agreement to provide that, instead of the explicit but unlawful extension of six years from final payment, the extension would run only for a lawful six years from the date of the agreement, since such a construction would require courts to ignore the legislative direction that a promise to extend the statute be enforced "according to its terms”, and either to speculate on the parties’ intent as to the length of the extension they would have desired, or to impose a blanket six-year extension irrespective of their intent. Bayridge Air Rights v Blitman Constr. Corp., 80 NY2d 777. Defendants United in Interest. 2. Transfusions of HIV-Infected Blood — Hospital Not Vicariously Liable for Alleged Negligence of Blood Collection Entity. — In an action arising out of the deaths of decedents, allegedly due to complications associated with AIDS resulting from intravenous transfusions of HIV-infected blood, untimely asserted wrongful death causes of action against defendant Blood Center, which collected, tested and provided the blood that was used for the transfusions, do not relate back to the timely commenced action against defendant Hospital so as to avoid the pertinent time bar, since the Hospital cannot be held vicariously liable for the alleged
*1086 1086 80 NEW YORK REPORTS, 2d SERIES LIMITATION OF ACTIONS — Cont’d negligence of the Blood Center in the discharge of the Blood Center’s discrete responsibilities and, therefore, the Hospital and the Blood Center are not "united in interest” within the meaning of CPLR 203 (b) and Brock v Bua (83 AD2d 61). With regard to the provision of blood, the Hospital and Blood Center provide respective, complementing parts of a "public health service” to the Hospital’s patients (Public Health Law § 580 [4]). Their discrete responsibilities, as a matter of policy choice on the allocation of vicarious tort liability, may be related but they are not legally united. Moreover, although one who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by its servants is liable for the negligence of the contractor, here the Hospital did not hold itself out as having screened blood for contagious disease or furnish any personnel for that purpose, and there is no basis to assign a generalized expectation or to credit individual subjective beliefs that a hospital is performing certain highly technical tests when that duty is already reposed by regulation in sophisticated and specialized blood collection entities. Mondello v New York Blood Ctr. — Greater N. Y. Blood Program, 80 NY2d 219. Tolling. 3. Infancy — Wrongful Death Action in Which Decedent’s Will Appoints Individual as Executrix and Guardian of Minor Children. — CPLR 208 does not apply to toll the Statute of Limitations for commencing an action for wrongful death and conscious pain and suffering on behalf of infant beneficiaries where the decedent’s will named plaintiff executrix of her estate and stated that plaintiff should be appointed guardian for her infant children since plaintiff, as executrix, could have timely sought appointment as the personal representative of the decedent’s estate and commenced the action on the infants’ behalf (see, EPTL 5-4.1). Baez v New York City Health & Hosps. Corp., 80 NY2d 571. 4. Wrongful Death Action against New York City Health and Hospitals Corporation — Statutory Waiting Periods. — With respect to a wrongful death action commenced against the New York City Health and Hospitals Corporation, the 30 days required between service of a notice of claim and commencement of an action (McKinney’s Uncons Laws of NY § 7401 [1]), and the time necessary for a claimant to comply with an examination request before commencing an action (McKinney’s Uncons Laws of NY § 7401 [2]) do not serve to toll the Statute of Limitations pursuant to CPLR 204 (a). Baez v New York City Health & Hosps. Corp., 80 NY2d 571. LOCAL LAWS. Preemption by State. 1. New York City "Hertz Law”. — New York State legislation addressing car rental practices does not set forth a sufficiently comprehensive scheme of regulations to preempt further legislation in the field by the municipalities of the State such as a local law adopted by the New York City Council (the Hertz Law) which would amend chapter 4 of title 20 of the Administrative Code of the City of New York to provide that no rental vehicle company shall refuse to rent a motor vehicle to any person otherwise qualified based on that person’s residence, nor impose fees or charges based on that person’s residence. There is no express conflict between State and local law. Moreover, no preemptive intent in the field of rental vehicle company practices is evident from General Business Law §§ 396-z, 391-g, 391-i and 398-b, which merely proscribe discriminatory practices against renters or the imposition of certain additional rental charges as a condition of renting the vehicle, since none of those statutes addresses the question covered by the Hertz Law. Nor is the State statutory scheme so broad in scope or so detailed as to require a conclusion that all local law in the area of rental vehicle company practices is preempted. Moreover, the State regulations imposed on all motor vehicles registered in the State, including vehicles owned by rental companies, do not evince an intent by the State to occupy the entire field of rental car company practices. Hertz Corp. v City of New York, 80 NY2d 565.
*1087 DIGEST-INDEX, 80 NY2d 1087 MASTER AND SERVANT. See, also, Civil Service; Labor; Municipal Corporations; Schools; Workers’ Compensation, and other specific titles. Abusive Discharge. 1. Existence of Cause of Action. — A cause of action for abusive discharge arising from the termination of plaintiff attorney’s employment as an associate with defendant law firm allegedly because of his insistence that the firm comply with DR 1-103 (A) of the Code of Professional Responsibility by reporting professional misconduct committed by another associate, was correctly dismissed. Significant alteration of employment relationships, such as plaintiff urges, is best left to the Legislature. The Legislature has enacted a "Whistleblower” statute (Labor Law § 740), and any additional protection must come from the Legislature. Wieder v Skala, 80 NY2d 628. At-Will Employment. 2. Associate of Law Firm — Implied-in-Law Obligation to Practice Law in Compliance with Professional Rules of Conduct and Ethical Standards. — Plaintiff, a member of the Bar, who claims that he was wrongfully discharged as an associate with defendant law firm because of his insistence that the firm comply with DR 1-103 (A) of the Code of Professional Responsibility (22 NYCRR 1200.4 [a]) by reporting professional misconduct allegedly committed by another associate, has stated a valid claim for breach of contract based on an implied-in-law obligation in his relationship with the law firm. In every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part. Intrinsic to the relationship between defendant law firm and plaintiff was the unstated but essential compact that in conducting the firm’s legal practice both plaintiff and the firm would do so in compliance with the prevailing rules of conduct and ethical standards of the profession. Insisting that as an associate in their employ plaintiff must act unethically and in violation of DR 1-103 (A), one of the primary professional rules, amounted to nothing less than a frustration of the only legitimate purpose of the employment relationship. Thus, plaintiff has stated a valid claim for breach of contract based on an implied-in-law obligation in his relationship with defendants. Wieder v Skala, 80 NY2d 628. MENTAL HEALTH. Placement of Discharged Mental Patients. 1. In a declaratory judgment action, an Appellate Division order which affirmed the judgment of Supreme Court in favor of plaintiffs, homeless, mentally ill persons, holding that the duties imposed on defendant New York City Health and Hospitals Corporation (HHC) under Mental Hygiene Law § 29.15 include a duty to implement the individual written service plans of mentally ill patients with respect to adequate and appropriate housing upon their discharge from its hospitals, is affirmed. In the context of this case, Mental Hygiene Law § 29.15 imposes on HHC the duties: (1) to prescribe and assist in locating adequate and appropriate housing for about-to-be-discharged mentally ill patients; (2) to discharge them in accordance with the individualized, written, patient service plans which include recommended housing; and (3) to coordinate the effectuation of those efforts among responsible entities. Neither the statute nor the affirmed judgment imposes upon HHC the explicit duty to build, create, supply or fund such housing. Heard v Cuomo, 80 NY2d 684. MORTGAGES. Satisfaction of Mortgage. See Interest, 1. MOTOR VEHICLES. Imputing Driver’s Negligence to Owner. 1. The vicarious liability imposed by Vehicle and Traffic Law § 388 (1) on the owner of a vehicle "used or operated in this state” for the negligence of a person
*1088 1088 80 NEW YORK REPORTS, 2d SERIES MOTOR VEHICLES — Cont’d using or operating the vehicle with permission does not extend to owners of vehicles that have never been registered, used, operated or intended for use within New York. The literal statutory terms do not impose vicarious liability on owners of vehicles that are "used or operated” exclusively outside of this State’s borders. Moreover, the statute’s goal — to ensure that owners of vehicles that are subject to regulation in New York "act responsibly” with regard to those vehicles —would not be advanced by imposing vicarious liability for vehicles having no connection with New York other than the fortuitous circumstance that their owners may be New York residents. Accordingly, in personal injury actions arising from two unrelated automobile accidents on the West Indies island of Jamaica which involved vehicles that were leased from Jamaican companies that were licensed, directly or indirectly, by car rental companies operating or based in New York, the New York rental concerns cannot be held liable under section 388. Fried v Seippel, 80 NY2d 32. Operating Vehicle while Under Influence of Alcohol or Drugs. 2. Plea of Guilty — Jurisdictionally Sufficient Accusatory Instrument — Supporting Deposition — Waiver of Objection to Sufficiency of Simplified Traffic Information. — Defendant, who was charged with two counts of driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]) in a simplified traffic information, waived his right to raise the claim that the factual allegations in a supporting deposition were insufficient to provide reasonable cause to believe that he committed the offenses with which he was charged, when he pleaded guilty to Vehicle and Traffic Law § 1192 (2), since a simplified traffic information can proceed to trial without a supporting deposition if the defendant fails to request one, and, thus, the absence of a factual allegation in the deposition can be waived. Even if, despite the GPL provisions, there be some defect in accusatory instruments that may never be waived, the defect in this case is not of that class. People v Beattie, 80 NY2d 840. Parking Violations. 3. Summons — Plate Type. — An order of the Appellate Division, which reversed a judgment upholding a determination that petitioner was guilty of four parking violations, annulled the determination, and dismissed the violations, should be affirmed where the four summonses in question misidentified the plate type on petitioner’s vehicles, since the five identification elements, including plate type, on a parking ticket are mandatory, and the omission or misdescription of any of the five elements mandates dismissal. Matter of Wheels, Inc. v Parking Violations Bur. of Dept. ofTransp., 80 NY2d 1014. Rental Cars. See Local Laws, 1. MUNICIPAL CORPORATIONS. See, also, Civil Service; Counties; Elections; Public Housing; Schools; Taxation; Workers’ Compensation, and other specific titles. Bids and Bidders. 1. Rejection of Lowest Bid — Due Process Rights of Lowest Bidder with Respect to Determination of Nonresponsibility. — With respect to a determination by the Board of Trustees of a community college awarding a public works contract to the second lowest bidder, which was subsequently approved by the County Legislature, petitioner, the lowest bidder who was implicitly rejected as a responsible bidder, was denied meaningful and timely opportunity to defend its name and reputation where the contract was not included on the published agenda for the Board’s meeting and was only added to the agenda after an executive session, and then quickly resolved before the adversely affected party could know or address its impact. Petitioner received absolutely no notice and no timely opportunity to address the Board’s concerns prior to its implied determination of nonresponsibility. That the County Legislature was required to approve the award (see, Education Law §6306 [7]) does not excuse this deficiency, since the decision-making
*1089 DIGEST-INDEX, 80 NY2d 1089 MUNICIPAL CORPORATIONS — Cont’d process was undertaken by the Board of Trustees and, therefore, petitioner’s conceded rights were triggered and inextricably implicated at that key stage. Moreover, in any event, there is no proof on this record that petitioner ever received notice or an adequate opportunity to present views even prior to the County Legislature’s action; thus, the circumstance that petitioner, after the Board’s vote, may have known that its responsibility as a bidder was at risk and that letters addressed to the Legislature were submitted on petitioner’s behalf attesting to its responsibility does not cure the defect. Matter of LaCorte Elec. Constr. & Maintenance v County of Rensselaer, 80 NY2d 232. Tort Liability. 2. Police Officer Killed in Line of Duty — Bullet-Proof Vest. — In a wrongful death action against a municipality arising out of the death of a police officer who was killed on duty when struck by a shotgun blast, plaintiff may not recover on the theory that defendant was negligent in supplying decedent with a "Davis” bullet-proof vest which allegedly was not fit for use in situations involving barricaded, armed individuals, such as the person who killed decedent, because, unlike some newer body armor equipment, it left the wearer’s sides exposed, since plaintiff’s proof established nothing more than that the Davis vest may not have been "state of the art” equipment and that there existed other devices that might have been safer for use in situations such as that in which the decedent was killed. The law only requires employers to furnish equipment that is reasonably safe, in good repair, and suitable for its intended use, and the Davis vest, which covers large areas of the upper torso, provides a measure of protection from gunfire and is, therefore, suitable for use in situations in which hostile gunfire is anticipated. Moreover, more protective devices available on the market reduce mobility, a disadvantage that might well lead municipal officials to choose the Davis vest over more protective alternatives, and the relative wisdom of such a choice may not be reviewed in a personal injury action founded on negligence, at least where the choice is not irrational. McCormack v City of New York, 80 NY2d 808. 3. Police Officer Killed in Line of Duty — No-Shoot Order. — In a wrongful death action against a municipality arising out of the death of a police officer who was killed on duty when struck by a shotgun blast fired by a person who had barricaded himself inside a house and then emerged firing, plaintiff may not recover on the theory that a negligently issued order from one of the commanding officers directing the police not to fire at the barricaded individual even if he discharged his weapon was the proximate cause of decedent’s death, since liability may not be imposed where the questioned conduct involves the exercise of professional judgment. Although plaintiff’s proof showed that orders not to shoot even if fired upon are unusual and that specially trained police officers such as decedent generally do not need their commanding officer’s express permission to shoot if they are immediately vulnerable to hostile gunfire, those circumstances alone are not sufficient to render the discretionary no-shoot order actionable: the presence of an unarmed negotiator at the scene provided a rational ground for the alleged directive. McCormack v City of New York, 80 NY2d 808. Zoning. 4. Variances — Unconstitutional Taking. — In a proceeding to review a determination denying petitioner’s application for four area variances, an order of the Appellate Division, which reversed a judgment granting the petition and directing the variances to be granted, is affirmed for the reasons expressed in the memorandum thereat, which concluded that petitioner failed to prove her entitlement to the variances under the single and separate ownership exception in the zoning ordinance; that petitioner failed to establish that the determination under review was arbitrary and capricious, and that her unconstitutional-taking argument failed for lack of proof. Petitioner has not satisfied her heavy burden of showing, with dollars and cents proof, that under no use permitted by the ordinance would her property be capable bf producing a reasonable return. Matter of Kransteuber v Scheyer, 80 NY2d 783.
*1090 1090 80 NEW YORK REPORTS, 2d SERIES NEGLIGENCE. See, also, Labor; Motor Vehicles; Municipal Corporations, and other specific titles. Negligent Misrepresentation by Attorney. 1. Attorneys may be held liable for economic injury arising from negligent representation. Moreover, where the negligent acts were carried out by the lawyer at the client’s express direction, the ethical considerations of Canons 4 and 5 of the Code of Professional Responsibility, regarding the preservation of client loyalty and client confidences, are insufficient reason to insulate attorneys from liability. Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377. 2. Liability of Attorney to Party Not in Privity — Opinion Letter Assertedly Containing False Assurances. — In an action against defendant law firm which, pursuant to its client’s instructions, furnished an opinion letter to plaintiff third party in connection with a proposed restructuring of a debt owed plaintiff by the client, plaintiff has failed to demonstrate that there is a triable issue of fact as to whether the duty of care owed plaintiff by defendant was breached because the opinion letter falsely assured plaintiff that the mortgage documents to be recorded in connection with the debt restructuring would continue to fully protect its existing security interest. In preparing the opinion letter, defendant represented that it took particular procedural measures in investigating and substantiating the mortgage documents in question. After taking those measures, defendant made certain general assurances to plaintiff in the opinion letter, but those assurances did not set forth a specific dollar amount as securing the debt. It was agreed that the letter was to be in a form satisfactory to plaintiff, which condition was satisfied when plaintiff accepted the letter containing no more than general assurances. On these facts, where neither procedural nor substantive misrepresentations were made by defendant, summary judgment was properly awarded to defendant. Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377. 3. Liability of Attorney to Party Not in Privity — Opinion Letter Prepared at Request of Client and Relied on by Third Party. — Defendant law firm which, pursuant to its client’s instructions, furnished an opinion letter to plaintiff third party in connection with a proposed restructuring of a debt owed plaintiff by the client, owed a duty of care to plaintiff so as to support plaintiff’s negligence cause of action based upon assertedly false assurances contained in the opinion letter. Defendant was well aware that the opinion letter was to be used by plaintiff in deciding whether to permit the debt restructuring, plaintiff unquestionably relied on the opinion letter in agreeing to the debt restructuring, and, by addressing and sending the opinion letter directly to plaintiff, defendant clearly engaged in conduct which evinced its awareness and understanding that plaintiff would rely on the letter, and provided the requisite link between the parties. Thus, despite the absence of direct privity between defendant and plaintiff, the bond between defendant and plaintiff was sufficiently close to establish a duty of care running from the former to the latter. Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377. Proximate Cause. 4. Road Signs. — In a personal injury action arising out of a one-car accident in which plaintiff’s vehicle went off the road after failing to negotiate a curve, the Appellate Division correctly granted defendant County’s motion to set aside a jury verdict awarding plaintiff damages, since plaintiff offered no proof at trial that defendant’s failure to install a warning sign in concrete caused the sign to fall or proximately caused his injuries. Viewing the proof adduced at trial in a ■ light most favorable to the plaintiff and giving him the benefit of every favorable inference, it is concluded that no valid line of reasoning and permissible inferences could possibly lead rational jurors to conclude that defendant’s failure to install the sign in concrete caused plaintiff’s injuries. Bommer v County of Erie, 80 NY2d 816.
*1091 DIGEST-INDEX, 80 NY2d 1091 PARENT AND CHILD. See, also, Adoption; Social Services, and other specific titles. Custody. See Social Services, 1, 2. Support. 1. Child Who Has Become Public Charge — Performance of Compromise Support Agreement No Bar to Court-Ordered Payment Pursuant to Child Support Standards Act. — The Commissioner of Social Services, as assignee of the rights of a mother who has become and whose child has become a public charge, can compel a father to pay child support in accordance with the Child Support Standards Act (Family Ct Act § 413) where the father has completely complied with a court-approved compromise agreement of support (Family Ct Act § 516). Although section 516 (c), which authorizes compromise agreements, states that ”[t]he complete performance of the agreement or compromise, when so approved, bars other remedies of the mother or child for the support and education of the child”, section 571 of the Family Court Act authorizes a social services official who has accepted an assignment of support rights from a person who receives public assistance for a dependent child to bring a filiation and support proceeding notwithstanding any inconsistent provision of law. Moreover, sections 545 (1), 513 and 413 (1) of the Family Court Act support the conclusion that where, as here, a filiation order has been entered in these circumstances, the court can direct parents to pay support in accordance with their financial resources for a child receiving public assistance, and are not limited to directing payment only of the amount of support stipulated in the section 516 agreement plus any amount of public assistance that the child is receiving. Matter of Commissioner of Social Servs. of City ofN. Y. v Ruben O., 80 NY2d 409. PLEADING. Sufficiency of Pleading. 1. Particularity of Statements in Complaint Supporting Theory of Liability. — In a personal injury action arising from an automobile accident, plaintiffs should not be foreclosed from prosecuting a viable theory of liability, which was asserted by plaintiffs in opposition to defendant’s motion for summary judgment, on the ground that the theory was not pleaded in their complaint or detailed in their bill of particulars, since the pleadings at least gave notice of the transactions or occurrences intended to be proved and defendant has not demonstrated that he has been in any way prejudiced. Fried v Seippel, 80 NY2d 32. PRINCIPAL AND AGENT. See Brokers, and other specific titles. PUBLIC HOUSING. Limited-Profit Housing Companies. 1. Voluntary Dissolution — Construction of Covenant Prohibiting Dissolution of Mitchell-Lama Project after 20-Year Statutory Period. — Petitioner, a limited-profit housing company formed under Private Housing Finance Law article H to provide Mitchell-Lama housing in a neighborhood designated as the West Side Urban Renewal Project (WSURP), is bound by a restrictive covenant in the land disposition agreement and in the deed conveying the subject parcel to petitioner, which prohibits petitioner from dissolving as Mitchell-Lama housing for 40 years, rather than after 20 years as provided in Private Housing Finance Law § 35 (2). The covenant language unequivocally states that the subject parcel "shall not be used for any use other than the uses specified therefor in the Urban Renewal and Project Plans [for the area in which the parcel is located] * * * or contrary to any limitations or requirements of said Plans”, and the WSURP requires that the subject parcel shall be used for "tax-abated housing at moderate rentals or carrying charges”, i.e., Mitchell-Lama housing. Likewise, the Project Plan provides that the parcel is used for "Middle-Income Cooperative Housing” as part of WSURP. WSURP’s general designation of the section of the area where the subject parcel is located for residential use does not conflict with WSURP’s
*1092 1092 80 NEW YORK REPORTS, 2d SERIES PUBLIC HOUSING — Cont’d specific requirement that the parcel be used for Mitchell-Lama housing, which is simply a more specific restriction on the use of the land. Also, since WSURP expressly excepts redevelopment parcels, such as petitioner’s, from the areas governed by its general definition of residential use, and subjects that parcel to the specific restriction for Mitchell-Lama housing, WSURP unequivocally limits the parcel’s use not only to housing, but more particularly to Mitchell-Lama housing. Petitioner’s argument that the substantial financial aid provided by the City of New York, including a 30-year tax exemption, was not a sufficient quid pro quo for petitioner’s agreement to provide Mitchell-Lama housing for 40 years is without merit. Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev., 80 NY2d 19. 2. Voluntary Dissolution — Construction of Covenant Prohibiting Dissolution of Mitchell-Lama Project after 20-Year Statutory Period. — Petitioner, a limited-profit housing company formed under Private Housing Finance Law article H to provide Mitchell-Lama housing on a parcel of land purchased from New York City, is bound by a restrictive covenant in the New York City Board of Estimate resolutions approving petitioner’s project and the deed conveying the subject parcel to petitioner, pursuant to which petitioner agreed to "devote the land to the uses specified in the plan for the area, approved by the Board of Estimate for [petitioner] * * * for a period of fifty (50) years” and, therefore, is not entitled to dissolve as Mitchell-Lama housing after 20 years as provided in Private Housing Finance Law § 35 (2). The plain meaning of this language shows that petitioner agreed to devote the land to the particular uses specified in the Project Plan— Mitchell-Lama housing — not merely the general residential uses described in the Citywide Master Plan or Zoning Resolution, which are neither plans that were "approved by the Board of Estimate for [petitioner]”, nor plans for the subject "area” as defined in Private Housing Finance Law § 12 (1) to which the covenant conforms. Moreover, to construe the covenant as merely restricting the land to residential use would obligate the owner to the very use already required by the Zoning Resolution and, thus, render the covenant superfluous in violation of basic principles of contract interpretation. Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev., 80 NY2d 19. PUBLIC OFFICERS. See Attorney-General; Civil Service; Elections; Judges; Municipal Corporations, and other specific titles. PUBLIC RELIEF. See Social Services. REAL ESTATE BROKERS. See Brokers. REAL PROPERTY. See Brokers; Environmental Conservation; Municipal Corporations (Zoning); Taxation; Vendor and Purchaser, and other specific titles. SALES. See Vendor and Purchaser, and other specific titles. SCHOOLS. Custodian. 1. Dismissal from Employment. — In a proceeding to review a determination of respondent school district, which found petitioner, a senior custodian, guilty of misconduct in that he falsely reported and verified time sheets for himself and another employee, and improperly reentered a building and removed documents, a judgment of the Appellate Division, which confirmed the determination dismissing petitioner from employment and dismissed the petition, is affirmed for the reasons stated in the memorandum thereat, which concluded that there was substantial evidence to support the determination, and that the penalty imposed
*1093 DIGEST-INDEX, 80 NY2d 1093 SCHOOLS — Cont’d was not excessive in light of petitioner’s supervisory position, the fact that petitioner had falsified the records for some time, and respondent’s need to deter similar false reporting in the future. Matter of Clark v Canandaigua City School Dist., 80 NY2d 912. Teachers. 2. Disciplinary Proceedings — Compensation and Composition of Tenure Hearing Panel. — In a proceeding pursuant to CPLR article 78, a determination of respondent Board of Education dismissing petitioner from her tenured teaching position for insubordination upon the recommendation of an Education Law § 3020-a tenure hearing panel is vacated and a new hearing ordered where respondent violated Education Law § 3020-a by paying compensation beyond that authorized by statute to a member of the hearing panel that considered petitioner’s case. The language of the relevant provisions of the statute concerning the compensation and composition of hearing panels (Education Law § 3020-a [3] [b], [c]) speaks in terms implying duty, not discretion; language found elsewhere in the statute authorizes discretion. Thus, the provisions on compensation and employment were intended to be strictly enforced. Moreover, section 3020-o’s dictates concerning compensation manifest a clear concern for the appearance of fairness as well as its substance, and the legislative intent to eliminate even the appearance of financial influence can be given effect only if the provisions are mandatory. Accordingly, even if the Board’s intentions here were innocent, even if no actual prejudice resulted, the Board did not have the discretion to pay the extra compensation, and its doing so interfered materially with a fundamental purpose of the enactment and constituted error entitling petitioner to relief in the article 78 proceeding. Matter ofSyquia v Board. ofEduc., 80 NY2d 531. SLANDER. See Libel and Slander. SOCIAL SERVICES. Foster Care. 1. Custody of Child Not Freed for Adoption — Award of Custody to Foster Parents. — In a proceeding pursuant to Social Services Law § 392 involving a determination of custody of a child voluntarily placed in foster care but not freed for adoption, the Appellate Division erroneously relied on Social Services Law § 392 (6) (b) in awarding custody of the child to the foster parents. There are three possible dispositions after foster care review with respect to a child not freed for adoption: continued foster care; release to a parent, guardian, relative or other suitable person; and institution of parental termination proceedings (Social Services Law § 392 [6] [a]-[c]). In the statutory scheme the Legislature has provided a means for foster parents to secure a temporary arrangement under paragraph (a) and a permanent arrangement under paragraph (c) — both of which specifically mention foster parents. They are not also implicitly included in paragraph (b), which addresses different interests. Therefore the Appellate Division erred in interpreting Social Services Law § 392 (6) to permit the award of legal custody to respondent foster parents. Matter of Michael B., 80 NY2d 299. 2. Custody of Child Not Freed for Adoption — "Best Interest” Test. — In a proceeding pursuant to Social Services Law § 392 involving a determination of custody of a child voluntarily placed in foster care and not freed for adoption, the requisite "best interest” inquiry under Social Services Law § 392 (6) must begin not by measuring biological parent against foster parent but by weighing past and continued foster care against discharge to the biological parent, or other relative or suitable person within section 392 (6) (b). The fitness of the biological parent must be a primary factor. The court is also statutorily mandated to consider the agency’s plan for the child, what services have been offered to strengthen and reunite the family, what reasonable efforts have been made to make it possible for the child to return to the natural home, and if return home is not likely, what efforts have been or should be made to evaluate other options (Social Services
*1094 1094 80 NEW YORK REPORTS, 2d SERIES SOCIAL SERVICES — Cont’d Law § 392 [5-a]). Finally, the court should consider the more intangible elements relating to the emotional well-being of the child, among them the impact on the child of immediate discharge versus an additional period of foster care. While emotional well-being may encompass bonding to someone other than the biological parent, it includes as well a recognition that, absent termination of parental rights, the nonparent cannot adopt the child, and a child in continued custody with a nonparent remains in legal — and often emotional — limbo. Accordingly, in such a proceeding, the Appellate Division applied an erroneous "best interest” test when it held that extraordinary circumstances — the child’s lengthy stay and psychological bonding with his foster family — triggered a full inquiry into the more suitable placement as between the biological and foster parents. Matter of Michael B., 80 NY2d 299. Public Assistance. See, also, Constitutional Law, 1. 3. Home Relief — Constitutionality of "Grandparent-Deeming” Rule — Equal Protection of Laws — Due Process of Law. — Social Services Law § 131-c (2) — the "grandparent-deeming” rule — which requires that a portion of the income of a grandparent who resides in the same dwelling unit as an infant grandchild and minor parent under the age of 18, be deemed available to the infant in determining the infant’s eligibility for Home Relief payments, does not subject the infants of minor mothers to disparate treatment in violation of the Equal Protection and Due Process Clauses of the State and Federal Constitutions. It is entirely reasonable for the Legislature to assume that grandparents will contribute to the support of infant grandchildren residing in their household, notwithstanding the absence of a legal obligation to do so. Similarly, the fact that grandparent-deeming ceases for minor mothers between the ages of 18 and 21 parallels the reasonable assumption of Federal law that, after the mother turns 18, grandparents may be less willing to contribute to the support of their grandchildren, and will instead ask that the minor mothers assume greater responsibility for their infants. In addition, Social Services Law § 131-c (2) furthers the State’s legitimate goal of allocating limited public assistance resources to the neediest applicants. Further, while the Federal Deficit Reduction Act of 1984 requires only that the rule be applied to Aid to Families with Dependent Children (AFDC), the Legislature’s application of the rule to New York State benefits is rationally related to the State’s interest in assuring consistency between the AFDC and Home Relief programs. Lovelace v Gross, 80 NY2d 419. 4. Home Relief — Constitutionality of "Grandparent-Deeming” Rule — State Constitutional Requirement to Aid Needy. — Social Services Law § 131-c (2) — the "grandparent-deeming” rule — which requires that a portion of the income of a grandparent who resides in the same household as an infant grandchild and minor parent under the age of 18, be deemed available to the infant in determining the infant’s eligibility for Home Relief payments, does not violate the State constitutional requirement for the provision of public assistance to the needy (NY Const, art XVII, § 1), since the rule falls within the ambit of permissible legislative discretion in defining the term "needy”. The rule is reasonable in that its conformance to the Federal Deficit Reduction Act of 1984 avoids risk to reimbursement, inequalities in treatment among program participants, and increased administrative costs. Further, the assumption underlying the rule — that there are economies of scale in rent, food, fuel and other expenses of a single, three-generational household — is not unreasonable. Nor is the assumption that grandparents residing in a family unit with their minor children will voluntarily share income with their infant grandchildren even though not legally obligated to do so. Moreover, the grandparent-deeming rule is not a complete bar to public assistance in forms other than cash benefits, and where available income still falls below the standard of need, the infant remains eligible for assistance. Lovelace v Gross, 80 NY2d 419.
*1095 DIGEST-INDEX, 80 NY2d 1095 STATE. Unjust Conviction and Imprisonment Act. 1. Conviction Not Caused by Claimant’s Conduct. — In a claim under the Unjust Conviction and Imprisonment Act (Court of Claims Act §8-b) arising from claimant’s acquittal of murder and robbery charges following a retrial at which a new witness provided "other culprit” testimony, claimant, under the circumstances of this case, may not be found to have personally done something which caused his original conviction based upon his attorney’s failure in the first trial to seek an adjournment or to call that witness to testify after that witness telephoned the attorney with the "other culprit” information on the night before summations were to be made in the first trial. Ivey v State of New York, 80 NY2d 474. 2. Grounds for Reversal of Conviction — Enumerated Grounds Do Not Exclude Claimant Whose Conviction is Reversed Followed by Acquittal After Retrial.— The limitations of the proviso clause of the Unjust Conviction and Imprisonment Act (Court of Claims Act § 8-b), which states that a claimant may be eligible to seek relief under the statute when the "judgment of conviction was reversed or vacated, and the accusatory instrument dismissed or, if a new trial was ordered, either he was found not guilty at the new trial or he was not retried and the accusatory instrument dismissed; provided that the judgment of conviction was reversed or vacated, and the accusatory instrument was dismissed, on any of the [enumerated grounds]” (Court of Claims Act § 8-b [3] [b] [ii]), do not deprive a claimant of his day in the Court of Claims where the claimant’s conviction was reversed and was followed by an acquittal after retrial. There is not a per se disqualification in such a situation because the criminal conviction was not reversed on one of the grounds enumerated in the proviso. Neither, however, is there a per se entitlement to recovery. Claimants must still prove innocence by clear and convincing evidence, and that their convictions were not caused by their own conduct. Ivey v State of New York, 80 NY2d 474. 3. Sufficiency of Evidence that Claimant Did Not Commit Crimes Charged. — In a claim under the Unjust Conviction and Imprisonment Act (Court of Claims Act § 8-b) arising from defendant’s acquittal, after retrial, of murder and robbery charges, there is record evidence supporting the conclusions of the Court of Claims and the Appellate Division that claimant did not commit the crimes charged. Claimant presented evidence in the Court of Claims that included the "other culprit” testimony of a new witness at claimant’s second trial, claimant’s alibi testimony and the supporting testimony of his alibi witnesses. Additionally, there are discrepancies between the pretrial descriptions and the trial testimony of the eyewitnesses, differences between claimant’s appearance and the description of the perpetrator given by the eyewitnesses, and testimony of four disinterested witnesses that claimant had been totally bald on the day of the crimes, while the perpetrator was described as having long hair. Ivey v State of New York, 80 NY2d 474. STATUTE OF LIMITATIONS. See Limitation of Actions. STATUTES. Federal Preemption. 1. State Gains Tax on Real Property Transfers by Qualified Employee Benefit Plan Preempted by ERISA. — The New York tax imposed on gains derived from real property transfers within the State (Tax Law § 1441) — a State tax of general application — is preempted by the Employee Retirement Income Security Act (29 USC § 1001 et seq. [ERISA]) because it relates to the qualified employee benefit plan in issue in this case (the Plan) in more than a tenuous, remote or peripheral way. The gains tax clearly impacts on the structure and administration of the Plan, and will necessarily influence the Plan’s investment strategy. Moreover, preemption in this case would be consistent with the favorable tax treatment given to benefit plans under the Internal Revenue Code. There is no basis for determining preemption by whether a general law applies to covered plans in the
*1096 1096 80 NEW YORK REPORTS, 2d SERIES STATUTES — Cont’d same way, and for the same reasons, as it applies to other citizens. Matter of Morgan Guar. Trust Co. v Tax Appeals Tribunal, 80 NY2d 44. SURETYSHIP AND GUARANTEE. Insurer as Surety on Investor Bonds Securing Investor Notes. See Insurance, 14. TAXATION. Assessment. 1. Industrial Wastebed Facility — Property Used as "Specialty” — Continuing Special Use — Economic Feasibility and Appropriateness. — In a tax certiorari proceeding, Supreme Court improperly rejected the valuation of petitioner’s property, which consisted of more than 1,000 acres of earthen-walled wastebeds and buffer zones where industrial waste material from petitioner’s nearby industrial plant has been deposited to eventually solidify, as a specialty for tax purposes in 1987 and 1988 on the grounds that the property was no longer receiving waste in 1987 and 1988, and that the improvements were no longer appropriate and economically feasible. The record demonstrates that the wastebeds’ primary purpose was retaining waste after receiving it until the solidification process has run its course. In that function the wastebeds continue to be used even though no new material is being added and they are not 100% functionally depreciated by virtue of the fact that new material is not being added. The site’s design makes plain petitioner’s intention to create a specialized storage and solidification operation with a long-term lifespan; the improvements on the property were obviously made specially in contemplation of that ongoing process. Thus, on the relevant taxable status dates, the wastebeds continued to be "specially used”. Even if the beds, by 1987, contained solid materials, the walls of the wastebeds continue to hold a definable material undergoing a long-term process of leaching out and settling. Moreover, in its own self-interest, it would appear that petitioner would have to maintain the beds until the leaching process was complete or nearly complete. In addition, since the wastebeds were in use and not 100% functionally depreciated on the taxable status dates, the facility was economically feasible and appropriate. Matter of Allied Corp. v Town of Camillus, 80 NY2d 351. 2. Property Used as "Specialty” — Expectancy of Replacement Not Relevant Consideration. — In a tax certiorari proceeding, consideration of whether an improvement can reasonably be expected to be replaced is not relevant in determining whether the property constitutes a "specialty” for the purpose of measuring a property’s value for assessment. The relevant consideration in assessment cases is the property’s value on the taxable status date — not its future use or value or the intentions of the owner; thus, the "expected to be replaced” criterion that has been applied in eminent domain cases adds nothing to the analysis in assessment cases. Matter of Allied Corp. v Town of Camillus, 80 NY2d 351. 3. Utility Company Real Property — Classification. — In an action for a judgment declaring that defendant municipality too narrowly construed the scope of a 1989 law (L 1989, ch 143, § 2), which effectively reclassified certain utility-related real property described in RPTL 102 (12) (a) and (b) from "class three” to "class four” property, thereby reducing the tax burden on it (see, RPTL 1801 [c]; 1802 [1]), an order of the Appellate Division, which affirmed a judgment upholding defendant’s decision not to reclassify certain of plaintiff public utility’s generation, transmission, distribution and storage equipment as "class four” property, should be affirmed. Nothing in the language or legislative history of the 1989 legislation indicates that the Legislature ever contemplated that the utility-related equipment that plaintiff argues should have been reclassified by defendant would be regarded as falling within the scope of RPTL 102 (12) (a) or (b). Rather, it appears that defendant correctly viewed that property as coming within the ambit of RPTL 102 (12) (e) or (f), and therefore as remaining unaffected by the 1989 legislation. Consolidated Edison Co. v City of New York, 80 NY2d 794.
*1097 DIGEST-INDEX, 80 NY2d 1097 TAXATION — Cont’d Exemptions. 4. Liability of County for Refunds of Excess School Taxes Paid. — Pursuant to the unambiguous language of Nassau County Administrative Code § 6-26.0 (b) (3) (c), the County must be held liable for refunds of excessive school taxes paid by plaintiffs/petitioners inasmuch as "deficiencpes] existing or hereafter arising * * * by reason of exemptions * * * shall be a county charge”, where plaintiffs/ petitioners were improperly denied the exemption provided in RPTL 485-b. Holding the County liable is consistent with the statutory taxing scheme existing in Nassau County: the County Board of Assessors exclusively prepares the assessment rolls for State, county, town, special district and school taxes and, consistent with those responsibilities, the Legislature imposed responsibility for all taxing errors emanating from those assessment rolls solely upon the County. Therefore, the County should bear the burden of paying to the litigating taxpayers the refunds necessitated by the erroneous removal of their exemptions from the tax rolls. Matter of Bowery Sav. Bank v Board of Assessors, 80 NY2d 961. Personal Income Tax. 5. Constitutionality of Nonresident Tax on New York Income — Due Process of Law. — Tax Law § 601 (d) and (e), which establish a method of determining the nonresident tax on income earned in New York State whereby New York takes into account both New York and non-New York source income in calculating the tax rate to be applied to the New York income, do not violate due process on the ground that New York is in effect impermissibly taxing out-of-State income. The subject matter here regulated is a tax on in-State income, which is within the jurisdiction of the State. When the State levies taxes within its authority, property not itself taxable can be used as a measure of the tax imposed on property within the State and to do so is in no just sense a tax on the foreign property. Brady v State of New York, 80 NY2d 596. 6. Constitutionality of Nonresident Tax on New York Income — Privileges and Immunities — Equal Protection of Laws. — Tax Law §601 (d) and (e), which establish a method of determining the nonresident tax on income earned in New York State whereby New York takes into account both New York and non-New York source income in calculating the tax rate to be applied to the New York income, do not violate the Privileges and Immunities and Equal Protection Clauses since similarly situated residents and nonresidents, i.e., those with the same total income, are treated the same. Brady v State of New York, 80 NY2d 596. Real Property Transfer Gains Tax. See Statutes, 1. Sales and Use Taxes. 7. Utility Service Provided Incidental to Rental of Office Space — Overtime Heating, Ventilation and Air Conditioning. — Tax Law § 1105 (b), which imposes a 4% tax on receipts from every sale of utilities and utility services, authorizes a tax on a utility service only when furnished in an identifiable sale transaction as a commodity or article of commerce and, therefore, the statute does not authorize a tax on heating, ventilation and air conditioning (HVAC) services provided by landlords incidental to the rental of office space. Giving the words of section 1105 (b) their natural and most obvious meaning, the statute authorizes a tax only on the receipts from those transactions which can be identified as independent sales of utilities or utility services. Thus, by its plain import, the statute applies only to separate transactions which have as their primary purpose the furnishing of utilities or utility services. Accordingly, the provision of overtime HVAC services to plaintiff tenant pursuant to a lease agreement which requires plaintiff to pay additional rent for such overtime services may not be taxed as a sale of "refrigeration and steam service” under section 1105 (b). The HVAC is furnished solely as an incident of the leasehold and for the purpose of assuring that the leased premises are maintained at a reasonably comfortable temperature for use by the tenant; the lease section requiring payment of additional rent for such overtime HVAC services can in no way be construed as a sales clause and nothing in the
*1098 1098 80 NEW YORK REPORTS, 2d SERIES TAXATION — Cont’d lease agreement suggests that those services are to be sold separately or to be furnished in any transaction independent of the lease. Debevoise & Plimpton v New York State Dept, of Taxation & Fin., 80 NY2d 657. 8. Revenues Received by Municipalities from Off-Street Parking. — In a proceeding to review a determination requiring local governmental units that collect off-street parking revenues to collect sales taxes on those revenues, an order of the Appellate Division, which affirmed a judgment dismissing the petition, is affirmed for the reasons stated in the opinion thereat, which concluded that respondents’ interpretation of the relevant statute (Tax Law § 1105 [c] [6]) was not unreasonable; that petitioners, who concededly qualify as "persons” under the statute, are also "vendors” of a service ordinarily sold by private persons; that the fact that petitioners do not make a profit from their parking facilities is of little consequence; that the operation of municipal parking lots is a proprietary function, and that respondents did not act arbitrarily in excluding municipal parking lots and fields from the "on-street” exception, since on-street parking is not ordinarily sold by private persons while off-street parking commonly is. Matter of Town of N. Hempstead v Regan, 80 NY2d 936. TOWNS. See Municipal Corporations. TRIAL. Argument and Conduct of Counsel. See, also, Appeal, 2. 1. Comment as to Failure of Defense to Use Disclosed Surveillance Tapes of Personal Injury Plaintiff Prohibited. — Where surveillance films of a plaintiff prepared by a defendant in a personal injury action have been duly turned over to the plaintiff pursuant to the rule that requires a defendant to disclose such tapes as defendant plans to use at trial, and the defendant decides subsequently, as a matter of trial strategy, not to use such films at trial, plaintiff cannot turn this strategy to his or her advantage and comment on this decision to the jury. DiMichel v South Buffalo Ry. Co., 80 NY2d 184. Failure to Call Witness. See Witnesses, 1. UNITED STATES. Federal Preemption. See Statutes, 1. USURY. Loan Rendered Usurious by Attendant Expenses. 1. Inasmuch as a borrower may pay reasonable expenses attendant on a loan without rendering the loan usurious, the defendants in an action to enforce a loan agreement failed to create a triable issue of fact as to whether various closing costs rendered the loan usurious since they have made no showing that the fees charged were a pretext for higher interest. Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124. VENDOR AND PURCHASER. See, also, Brokers, and other specific titles. Contract for Sale of Real Property. 1. Agreement that Purchaser Obtain Subdivision Approval. — In an action seeking specific performance of a contract to sell real property, an order of the Appellate Division, which reversed an order granting plaintiffs partial summary judgment and dismissed the complaint, is affirmed for the reasons stated in the memorandum thereat, which concluded that pursuant to the contract at bar, plaintiffs were obligated to obtain subdivision approval from the local zoning authority as a condition precedent to closing; that defendant’s sale of one parcel of its tract to a third party did not constitute bad faith by creating an obstacle to the performance of the subject contract, since plaintiff, prior to executing the contract, knew of the third-party contract and of the need to obtain subdivision
*1099 DIGEST-INDEX, 80 NY2d 1099 VENDOR AND PURCHASER — Cont’d approval if that sale was consummated first; that plaintiffs could not waive the condition requiring compliance with zoning laws and compel specific performance on the theory that the condition was for their benefit, since the seller’s assent to the waiver had to be obtained given its retention of lots to be included in the subdivision, and there is no evidence of such assent; that it could not be said that defendant failed to exert all necessary efforts to initiate or assist in accomplishing the contingency, and that in light of defendant’s diligence and good faith, it was entitled to rescission of the contract. Goewey v Delta D & I Corp., 80 NY2d 788. VILLAGES. See Municipal Corporations. WILLS. Probate. 1. Undue Influence — Applicability of Putnam Inference to Nondraftsman Attorney-Legatee. — The Putnam inference of undue influence where an attorney has drafted a will in which he or she is a beneficiary (Matter of Putnam, 257 NY 140) should not automatically be applied where an attorney-legatee has had a professional relationship with the testator but was not the attorney who drafted the testamentary instrument. A testator’s freedom to bequeath property in accordance with his or her wishes should not be diminished merely because the object of the testator’s generosity happens to be an attorney with whom the testator has enjoyed a beneficial professional relationship. Matter of Henderson, 80 NY2d 388. 2. Undue Influence — Nondraftsman Attorney-Legatee — Sufficiency of Objectant’s Submissions to Warrant Hearing. — In a probate proceeding, objectant, the decedent’s sister, who was virtually disinherited in decedent’s will, is entitled to a hearing on her claim that the will was the product of fraud and undue influence on the part of the testatrix’ long-time attorney and financial adviser, who did not draft the will but who was the will’s primary beneficiary, where it can be inferred from objectant’s submissions that the testatrix did not receive the benefit of counselling by an independent attorney and that her will was essentially the indirect product of her discussions and relationship with the attorney-legatee. According to the deposition of the attorney draftsman, who the testatrix located through the auspices of the local Bar Association, he met briefly with the testatrix before actually drafting the will, but never seriously inquired into the reasons for her decision to leave such a large portion of her assets to the attorney-legatee and to virtually disinherit her sister, the person some might regard as the natural object of her bounty. Rather then conducting an independent review of her personal situation, the draftsman prepared the will primarily on the basis of the attorney-legatee’s four-page memo to the testatrix outlining her assets and testamentary wishes, which named the attorney-legatee and his family members. In such circumstances, the crucial element of discrete independent representation by disinterested counsel may be lacking. Thus, the Surrogate’s Court was justified in deciding to allow a hearing to determine whether the attorney-legatee exercised undue influence over the testatrix in the discussions surrounding the preparation of her will, particularly in light of the size of the bequest to him and the virtual exclusion of a natural object of the testatrix’ bounty. Matter of Henderson, 80 NY2d 388. WITNESSES. See, also, Crimes; Evidence; Wills, and other specific titles. Missing Witness. 1. Admissibility of Medical Testimony to Explain Absence of Witness. — In a personal injury action in which defense counsel was unable to produce at trial a witness who was undergoing open heart surgery, the trial court’s decision precluding the admission by defendant of medical testimony to that effect was improper, as were statements in plaintiff’s counsel’s summation portraying the witness as reluctant to talk about the case and arguing that defendant did not
*1100 1100 80 NEW YORK REPORTS, 2d SERIES WITNESSES — Cont’d produce the witness in an effort to cover up the real facts behind the underlying accident. DiMichel v South Buffalo Ry. Co., 80 NY2d 184. WORKERS’ COMPENSATION. Causal Relation. 1. Rejection of Expert Opinion by Workers’ Compensation Board. — In a proceeding to review a determination of the Workers’ Compensation Board finding that claimant had sustained an accidental injury in the course of his employment, an order of the Appellate Division, which reversed the determination and dismissed the claim is affirmed for the reasons stated in the memorandum thereat, which concluded that the determination lacked substantial evidence in the record since it was in direct conflict with the conclusion of the only medical experts who expressed opinions on the issue of the causal relationship between claimant’s heart attack, suffered at his home, and the stress claimant encountered in his employment as chief welfare fraud investigator; that the only opinion that such a causal relationship existed was that of the Board, and that although the Board may have a certain expertise in medical matters, it was not free to reject the unanimous conclusion of the only medical experts on the issue before it, viz., causation of claimant’s condition. Matter of Doersam v Oswego County Dept, of Social Seros., 80 NY2d 775. Medical Expenses. 2. Reimbursement out of Schedule Award — Municipal Self-Insurer — Injured Deputy Sheriff. — A municipal self-insurer, which paid an injured Deputy Sheriff his full wages for the period he was totally disabled and unable to work, plus a sum representing necessary medical expenses (see, General Municipal Law § 207-c), is not entitled to receive a credit for the medical expense payments, chargeable against claimant’s workers’ compensation schedule award, notwithstanding the plain language of Workers’ Compensation Law § 30 (3), since the literal statutory construction urged by the municipality, viz., that section 30 (3) compels crediting of section 207-c medical expense payments even against Workers’ Compensation Law § 15 (3) schedule awards because a schedule award is an "award of compensation”, does not further the Legislature’s expressed purpose in enacting section 30 (3) and would lead to an incongruous result. Paying a section 15 (3) schedule award to an injured police officer and separately paying section 207-c medical expenses for that officer does not constitute the duplication of salary benefits the statute was designed to prevent, and it would be anomalous to disadvantage employees in claimant’s position, relative to other public employees, by allowing a credit against a schedule award for section 207-c medical expense payments when such a credit is not allowed for Workers’ Compensation Law § 13 payments. Matter of Leone v Oneida County Sheriff’s Dept., 80 NY2d 850. ZONING. See Municipal Corporations.
*1101 TABLE OF STATUTES AND RULES CONSTRUED CIVIL PRACTICE LAW AND RULES. 203 (b) (Computing periods of limitation; defendants united in interest; relation back). Mondello v New York Blood Ctr. — Greater N. Y. Blood Program, 80 NY2d 219. 204 (a) (Limitations of time; tolling; stay of commencement of action). Baez v New York City Health & Hosps. Corp., 80 NY2d 571. 208 (Limitations of time; tolling; infancy). Baez v New York City Health & Hosps. Corp., 80 NY2d 571. 403 (a) (Special proceedings; notice of petition). Matter of Osorio v Leventhal, 80 NY2d 898. 1021 (Parties; substitution procedure; dismissal for failure to substitute; presentation of appeal). Akivis v Drucker, 80 NY2d 786. 3101 (d) (2) (Material exempt from disclosure; material prepared in anticipation of litigation; exceptions). DiMichel v South Buffalo Ry. Co., 80 NY2d 184. 3216 (e) (Dismissal for want of prosecution; failure to serve and file note of issue within 90 days). Mosberg v Elahi, 80 NY2d 941. 4518 (c) (Business records; certification of certain records). People v Taylor, 80 NY2d 1. 5003 (Interest upon judgment). Marine Mgt. v Seco Mgt., 80 NY2d 886. 5004 (Rate of interest; 9%). Marine Mgt. v Seco Mgt., 80 NY2d 886. 5513 (b) (Time to move for permission to appeal). Matter of Hempstead Gen. Hosp. v National Grange Mut. Ins. Co., 80 NY2d 800; Matter of Apar Realty Corp. v Division of Hous. & Community Reneal, 80 NY2d 946; Vazem Corp. T/A Paradise Caterers v Sea & Sky Garden, 80 NY2d 946; Davis v 383 Warburton Ave. Assocs., 80 NY2d 957; Matter of Melette v Berry, 80 NY2d 1022. 5519 (a) (1) (Appeals; stay of enforcement). Matter of Genesis of Mount Vernon v Zoning Bd. of Appeals, 80 NY2d 823. 5601 (Appeals to Court of Appeals as of right). People v Soto, 80 NY2d 824; City of Poughkeepsie v Poughkeepsie Associated Fire Dept., 80 NY2d 891; Matter of Marx v Planning Bd., 80 NY2d 970; Starosta v Pedzik, 80 NY2d 970; McGlynn v Gurda, 80 NY2d 988; 31-33 Lenox Ave. Wine & Liq. Corp. v Brueckner, 80 NY2d 1005; People v Hughes, 80 NY2d 1022. 5601 (a) (Appeals to Court of Appeals as of right; two-Justice dissent). 1776 Assocs. Corp. v Broadway W. 57th St. Assocs., 80 NY2d 824; Clarendon Place Corp. v Landmark Ins. Co., 80 NY2d 918; Matter of Tamara B. v Pete F, 80 NY2d 959. 5601 (b) (1) (Appeals to Court of Appeals as of right; constitutional grounds). Matter of Seymour v Cuomo, 80 NY2d 958. 5601 (b) (2) (Appeals to Court of Appeals as of right; constitutional grounds). Rent Stabilization Assn, v Higgins, 80 NY2d 788; Reform Educ. Fin. Inequities Today v Cuomo, 80 NY2d 801; Matter of Lossy v Commissioners) of Labor, 80 NY2d 921; Board of Educ. v New York State Teachers’ Retirement Sys., 80 NY2d 968; Dawson v Higgins, 80 NY2d 969; Matter of Carella v Collins, 80 NY2d 1020. 5601 (c) (Appeals to Court of Appeals as of right; from order granting new trial or hearing, upon stipulation for judgment absolute). Matter of Diamond Architectural v EFCO Corp., 80 NY2d 919. 1101
*1102 1102 80 NEW YORK REPORTS, 2d SERIES CIVIL PRACTICE LAW AND RULES — Continued 5602 (Appeals to Court of Appeals by permission). People v Soto, 80 NY2d 824; Matter of Lossy v Commissioners) of Labor, 80 NY2d 921; Nickerson v Worytko, 80 NY2d 921; People v Hughes, 80 NY2d 1022. 5602 (a) (Appeals to Court of Appeals by permission). Baba v 469 W. 43rd St. Corp., 80 NY2d 1004. 5602 (a) (1) (ii) (Appeals to Court of Appeals by permission). Board of Educ. v Rettaliata, 80 NY2d 822; Board of Educ. v Jones, 80 NY2d 823; Board of Educ. v Vecchio, 80 NY2d 823. 5602 (a) (2) (Appeals to Court of Appeals by permission; nonfinal order in proceeding). Matter of Parkway Hosp. v Axelrod, 80 NY2d 921. 5611 (When Appellate Division order deemed final). Matter of Hempstead Gen. Hosp. v National Grange Mut. Ins. Co., 80 NY2d 800. CIVIL SERVICE LAW. §50 (4) (Examinations generally; disqualification of applicants or eligibles). Matter ofHasenstab v McGuire, 80 NY2d 812. § 52 (2) (Promotion examinations; factors in promotion). Matter of Hasenstab v McGuire, 80 NY2d 812. CODE OF PROFESSIONAL RESPONSIBILITY. DR 1-102 (A) (6) (Former) (Misconduct; conduct adversely reflecting on fitness to practice law). Matter of Rowe, 80 NY2d 336. DR 1-102 (A) (7) (22 NYCRR 1200.3 [a] [7]) (Misconduct; conduct adversely reflecting on fitness to practice law). Matter of Rowe, 80 NY2d 336. DR 1-103 (A) (22 NYCRR 1200.4 [a]) (Duty of lawyer to disclose knowledge of misconduct by another lawyer). Wieder v Skala, 80 NY2d 628. COUNTY LAW. Art 18-B (Assignment of counsel to indigent defendants). People v Cortes, 80 NY2d 201. § 652-a (Appointment and promotion of Deputy Sheriffs). Matter of Orlopp v Stirpe, 80 NY2d 946. COURT OF CLAIMS ACT. § 8-b (Unjust Conviction and Imprisonment Act). Ivey v State of New York, 80 NY2d 474. § 8-b (3) (b) (ii) (Claim for unjust conviction and imprisonment; enumerated grounds for reversal or vacatur of criminal conviction). Ivey v State of New York, 80 NY2d 474. CRIMINAL PROCEDURE LAW. 20.20 (Geographical jurisdiction of offenses; jurisdiction of State). People v McLaughlin, 80 NY2d 466. 30.30 (Speedy trial; time limitations). People v McIntosh, 80 NY2d 87; People v Cortes, 80 NY2d 201. 30.30 (3) (b) (Speedy trial; exclusions; unreadiness due to exceptional circumstance). People v Cortes, 80 NY2d 201. 30.30 (4) (a) (Speedy trial; time limitations; exclusion of period during which defendant incompetent to stand trial; delay resulting from appeals). People v Santana, 80 NY2d 92; People v Cortes, 80 NY2d 201. 30.30 (4) (b) (Speedy trial; exclusions; adjournment with consent of defense counsel). People v Cortes, 80 NY2d 201. 30.30 (4) (f) (Speedy trial; exclusions; defendant without counsel through no fault of court). People v Cortes, 80 NY2d 201. 30.30 (4) (g) (Speedy trial; exclusions; exceptional circumstances). People v Cortes, 80 NY2d 201. 60.20 (Testimonial capacity; evidence given by children under age of 12). People v Hetrick, 80 NY2d 344; People v Morales, 80 NY2d 450. 60.42 (5) (Rules of evidence; admissibility of evidence of victim’s sexual conduct in sex offense cases; interest of justice). People v Halbert, 80 NY2d 865. 70.10 (1) ("Legally sufficient evidence” defined). People v Hetrick, 80 NY2d 344. 70.10 (2) ("Reasonable cause to believe” defined). People v Hetrick, 80 NY2d 344. 190.50 (5) (Grand Jury; defendant as witness). People v Corrigan, 80 NY2d 326.
*1103 STATUTES AND RULES CONSTRUED, 80 NY2d 1103 CRIMINAL PROCEDURE LAW — Continued 190.65 (1) (When indictment authorized; legally sufficient evidence). People v Hetrick, 80 NY2d 344. 220.35 (Hearing on predicate felony conviction). People v Cerilli, 80 NY2d 1016. 240.10 (2) (Discovery; "attorneys’ work product” defined). People v Banch, 80 NY2d 610. 250.10 (3) (Psychiatric examination of defendant upon application of prosecutor; presence of counsel). People v Santana, 80 NY2d 92. 250.10 (4) (Psychiatric examination of defendant upon application of prosecutor; recording of examination). People v Santana, 80 NY2d 92. 260.20 (Defendant’s presence at trial). People v Morales, 80 NY2d 450; People v Mitchell, 80 NY2d 519. 270.15 (2) (Trial jury; peremptory challenges; prosecution to exercise challenges first). People v De Conto, 80 NY2d 943. 450.10 (1) (Appeal by defendant to intermediate appellate court; in what cases authorized as of right). People v Callahan, 80 NY2d 273. 450.20 (8) (Appeal by People to intermediate appellate court; order suppressing evidence). People v McIntosh, 80 NY2d 87. 450.30 (2) (Appeal from sentence; by People where sentence invalid as matter of law). People v Cosme, 80 NY2d 790. 450.50 (1) (Appeal by People from order suppressing evidence; filing of statement in appellate court). People v McIntosh, 80 NY2d 87. 450.50 (2) (Taking of appeal by People from order suppressing evidence as bar to further prosecution). People v McIntosh, 80 NY2d 87. 450.90 (Appeals to Court of Appeals from order of intermediate appellate court; in what cases authorized). People v Soto, 80 NY2d 824; People v Hughes, 80 NY2d 1022. 450.90 (1) (Appeal to Court of Appeals from order of intermediate appellate court; order adverse or partially adverse to appealing party). People v Jackson, 80 NY2d 112. 450.90 (2) (a) (Appeal to Court of Appeals from intermediate appellate court; in what cases authorized; reversal on law alone). People v McCullars, 80 NY2d 800; People v Brockington, 80 NY2d 855. People v Bordeaux, 80 NY2d 915; People v Elam, 80 NY2d 958; People v Maynard, 80 NY2d 1022. 450.90 (2) (b) (Appeal to Court of Appeals from order of intermediate appellate court; illegal corrective action by appellate court). People v Jackson, 80 NY2d 112. 470.15 (6) (b) (Determination of appeals by intermediate appellate courts; scope of review; interest-of-justice jurisdiction; review of legal, albeit unduly harsh or severe, sentence). People v Delgado, 80 NY2d 780. 470.35 (2) (a) (Determination by Court of Appeals of appeals from orders of intermediate appellate courts; scope of review; question of law which constituted basis for intermediate appellate court’s order of reversal or modification). People v Santorelli, 80 NY2d 875. 470.35 (2) (b) (Scope of review of Court of Appeals on appeals from orders of intermediate appellate courts; question of law adversely affecting nonappealing party). People v Carpenito, 80 NY2d 65. 690.40 (2) (Search warrants; probable cause). People v Hetrick, 80 NY2d 344. 700.50 (3) (Eavesdropping warrants; written notification requirement). People v Bialostok, 80 NY2d 738. 710.30 (Motion to suppress evidence; notice to defendant of intention to offer evidence; identification of defendant). People v Moss, 80 NY2d 857. 710.60 (1) (Motion to suppress evidence; motion to be in writing). People v Mezon, 80 NY2d 155. 710.60 (4) (Motion to suppress evidence; procedure; admissibility of hearsay evidence at suppression hearing). People v Gonzalez, 80 NY2d 883. DOMESTIC RELATIONS LAW. § 111 (1) (e) (Adoption; consent of unwed father). Matter of Robert O. v Russell K„ 80 NY2d 254. § 111-a (2) (Adoption; unwed fathers entitled to notice). Matter of Robert O. v Russell K., 80 NY2d 254.
*1104 1104 80 NEW YORK REPORTS, 2d SERIES DOMESTIC RELATIONS LAW — Continued § 236 (B) (1) (c) (Equitable distribution; "marital property” defined). Anglin v Anglin, 80 NY2d 553. EDUCATION LAW. § 259 (Library taxes). Buffalo & Erie County Pub. Lib. v County of Erie, 80 NY2d 938. § 1718 (1) (Union free school districts; limitation upon expenditures). Board of Educ. v Christa Constr., 80 NY2d 1031. § 3020-a (3) (b) (Teachers; disciplinary proceedings; hearing panel members). Matter of Syquia v Board of Educ., 80 NY2d 531. § 3020-a (3) (c) (Teachers; disciplinary proceedings; hearing procedures). Matter of Syquia v Board of Educ., 80 NY2d 531. §6306 (7) (Community colleges; contracts; approval by local legislative body). Matter of LaCorte Elec. Constr. & Maintenance v County of Rensselaer, 80 NY2d 232. ELECTION LAW. § 6-Í22 (Designation or nomination; eligibility, restrictions; residency). Matter of Weidman v Starkweather, 80 NY2d 955. ENVIRONMENTAL CONSERVATION LAW. Art 8 (State Environmental Quality Review Act). Matter of Long Is. Pine Barrens Socy. v Planning Bd., 80 NY2d 500. 8-0109 (9) (Environmental impact statement; special groundwater protection area). Matter of Long Is. Pine Barrens Socy. v Planning Bd., 80 NY2d 500. 55-0113 (Special groundwater protection areas; Long Island designation). Matter of Long Is. Pine Barrens Socy. v Planning Bd., 80 NY2d 500. 55-0115 (Sole source aquifer protection; comprehensive management plan). Matter of Long Is. Pine Barrens Socy. v Planning Bd., 80 NY2d 500. 71-2713 (1) (Endangering public health, safety or environment, second degree; physical injury to nonparticipant). People v Roth, 80 NY2d 239. 71-2720 (1) (Endangering public health, safety or environment; exemptions from liability). People v Roth, 80 NY2d 239. ESTATES, POWERS AND TRUSTS LAW. 5-4.1 (Wrongful death actions). Baez v New York City Health & Hosps. Corp., 80 NY2d 571. EXECUTIVE LAW. § 63 (12) (General duties of Attorney-General; prosecuting and enjoining consumer fraud). People v Health & Sports Clubs, 80 NY2d 803. §297 (9) (Unlawful discriminatory practices; court action). Thoreson v Penthouse Inti., 80 NY2d 490. FAMILY COURT ACT. § 308.1 (Juvenile delinquency; preliminary procedure for adjustment services). Matter of Aaron J., 80 NY2d 402. § 308.1 (9) (Juvenile delinquency; extension of period for efforts at adjustment). Matter of Aaron J., 80 NY2d 402. § 311.1 (Juvenile delinquency; definition and contents of petition). Matter of Edward B„ 80 NY2d 458. § 311.2 (Juvenile delinquency; sufficiency of petition). Matter of Edward B., 80 NY2d 458. § 315.1 (1) (a) (Juvenile delinquency; motion to dismiss; defective petition). Matter of Edward B., 80 NY2d 458. § 320.6 (Juvenile delinquency; initial appearance; referral for "adjustment services”). Matter of Aaron J., 80 NY2d 402. § 320.6 (4) (Juvenile delinquency; initial appearance; applicability of Family Court Act § 308.1 upon referral for adjustment services). Matter of Aaron J., 80 NY2d 402. § 321.2 (Admissions to part of juvenile delinquency petition; lesser included crimes). Matter of Dwight M., 80 NY2d 792. § 340.1 (Juvenile delinquency; time of fact-finding hearing). Matter of Aaron J., 80 NY2d 402.
*1105 STATUTES AND RULES CONSTRUED, 80 NY2d 1105 FAMILY COURT ACT — Continued § 345.1 (2) (Juvenile delinquency; orders; dismissal of petition upon failure to establish allegations therein). Matter of Dwight M., 80 NY2d 792. § 413 (Parents’ duty to support child). Matter of Commissioner of Social Servs. of City ofN. Y. v Ruben O., 80 NY2d 409. §413 (1) (Parents’ duty to support child; standards; payment of fair and reasonable sum as court may determine). Matter of Commissioner of Social Servs. of City ofN. Y. v Ruben O., 80 NY2d 409. § 513 (Obligation of parents; child support). Matter of Commissioner of Social Servs. of City ofN. Y. v Ruben O., 80 NY2d 409. § 516 (Agreement or compromise concerning support). Matter of Commissioner of Social Servs. of City ofN. Y. v Ruben O., 80 NY2d 409. § 516 (c) (Agreement or compromise concerning support; performance as bar to other remedies). Matter of Commissioner of Social Servs. of City of N. Y. v Ruben 0., 80 NY2d 409. § 545 (1) (Order of support by parents; payment according to means). Matter of Commissioner of Social Servs. of City ofN. Y. v Ruben O., 80 NY2d 409. §571 (Enforcement of support and establishment of paternity). Matter of Commissioner of Social Servs. of City ofN. Y. v Ruben O., 80 NY2d 409. GENERAL BUSINESS LAW. § 622-a (Health clubs; bond, letter of credit or certificate of deposit required). People v Health & Sports Clubs, 80 NY2d 803. GENERAL MUNICIPAL LAW. § 207-c (Payment of salary, wages, medical and hospital expenses of policemen with injuries or illness incurred in performance of duties). Matter of Leone v Oneida County Sheriff’s Dept., 80 NY2d 850. GENERAL OBLIGATIONS LAW. § 11-100 (Compensation for injury or damage caused by intoxication of minor). Sherman v Robinson, 80 NY2d 483. § 11-100 (1) (Compensation for injury or damage caused by intoxication of minor; right of action against person who knowingly causes such intoxication). Sherman v Robinson, 80 NY2d 483. § 11-101 (Compensation for injury caused by illegal sale of intoxicating liquor). Sherman v Robinson, 80 NY2d 483. § 11-101 (1) (Compensation for injury caused by illegal sale of intoxicating liquor; right of action against person who causes or contributes to intoxication). Sherman v Robinson, 80 NY2d 483. § 17-103 (Agreements waiving Statute of Limitations). Bayridge Air Rights v Blitman Constr. Corp., 80 NY2d 777. INSURANCE LAW. §3420 (f) (2) (Supplementary uninsured motorist insurance; exhaustion by payment of limits of all applicable bodily injury insurance). Matter of Federal Ins. Co. v Watnick, 80 NY2d 539. § 5103 (e) (Automobile liability insurance; vehicle used in other State; coverage at least in minimum amount required by other State). Matter of American Tr. Ins. Co. v Abdelghany, 80 NY2d 162. § 5202 (c) ("Insured motor vehicle” defined). Matter of Federal Ins. Co. v Watnick, 80 NY2d 539. § 5202 (d) ("Uninsured motor vehicle” defined). Matter of Federal Ins. Co. v Watnick, 80 NY2d 539. §7602 (former [g]) (Property/casualty security funds; "allowed claim” defined; risks located in State). Matter of Union Indem. Ins. Co., 80 NY2d 983. § 7603 (a) (1) (former [B]) (Property/casualty insurance security fund; coverage for risks located in State). Matter of Union Indem. Ins. Co., 80 NY2d 983. LABOR LAW. Art 11 (Factories). Jock v Fien, 80 NY2d 965. § 2 (9), (10) ("Factory”, "Factory building” defined). Jock v Fien, 80 NY2d 965. §200 (General duty to protect health and safety of employees). Lombardi v Stout, 80 NY2d 290; Jock v Fien, 80 NY2d 965.
*1106 1106 80 NEW YORK REPORTS, 2d SERIES LABOR LAW — Continued § 240 (1) (Scaffolding and other devices for use of employees). Lombardi v Stout, 80 NY2d 290; Jock v Fien, 80 NY2d 965; Groves v Land’s End Hous. Co., 80 NY2d 978. § 241 (6) (Construction, excavation and demolition work; protection and safety of persons employed). Mosher v State of New York, 80 NY2d 286; Ares v State of New York, 80 NY2d 959; Jock v Fien, 80 NY2d 965. MCKINNEY’S UNCONSOLIDATED LAWS OF NEW YORK. § 6215 (City and county libraries; annual budget request; audit of appropriations). Buffalo & Erie County Pub. Lib. v County of Erie, 80 NY2d 938. § 7401 (1) (Actions against New York City Health and Hospitals Corporation; 30-day waiting period between demand and commencement of action). Baez v New York City Health & Hosps. Corp., 80 NY2d 571. § 7401 (2) (Action against New York City Health and Hospitals Corporation; delay for examination of claimant before commencement of action). Baez v New York City Health & Hosps. Corp., 80 NY2d 571. MENTAL HYGIENE LAW. § 29.15 (Discharge and conditional release of patients to community). Heard v Cuomo, 80 NY2d 684. MONROE COUNTY CHARTER. § C2-3 (A) (Residency requirement for county legislators). Matter of Weidman v Starkweather, 80 NY2d 955. NASSAU COUNTY ADMINISTRATIVE CODE. § 6-26.0 (b) (3) (c) (Tax deficiencies to be county charge). Matter of Bowery Sav. Bank v Board of Assessors, 80 NY2d 961. NEW YORK CITY ADMINISTRATIVE CODE. § 12-127 (b) (Payment of hospital bills for city employees injured in course of duty without fault or misconduct). Matter ofHeintz v Brown, 80 NY2d 998. NEW YORK CITY CHARTER. § 812 (d) (Civil service; appeals). Matter ofHasenstab v McGuire, 80 NY2d 812. NEW YORK CONSTITUTION. Art I, § 8 (Freedom of speech). 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130. Art HI, § 4 (Legislature; reapportionment; contiguity, compactness and integrity of counties). Matter of Wolpoff v Cuomo, 80 NY2d 70. Art V, § 1 (Duties of Comptroller; Legislature not to assign Comptroller any administrative duties). County of Rensselaer v Regan, 80 NY2d 988. Art VI, § 3 (b) (Jurisdiction of Court of Appeals). City of Poughkeepsie v Poughkeepsie Associated Fire Dept., 80 NY2d 891; Matter of Lussy v Commissioners) of Labor, 80 NY2d 921. Art VI, § 3 (b) (2) (Jurisdiction of Court of Appeals). Rent Stabilization Assn, v Higgins, 80 NY2d 788; Reform Educ. Fin. Inequities Today v Cuomo, 80 NY2d 801; Matter of Lussy v Commissioners) of Labor, 80 NY2d 921; Board of Educ. v New York State Teachers’ Retirement Sys., 80 NY2d 968; Dawson v Higgins, 80 NY2d 969; Matter of Carella v Collins, 80 NY2d 1020. Art VI, § 3 (b) (7) (Jurisdiction of Court of Appeals). Baba v 459 W. 43rd St. Corp., 80 NY2d 1004. Art VI, § 5 (b) (Power of appellate courts upon appeal from judgment or order; transfer of appeals taken to improper appellate court). Rent Stabilization Assn, v Higgins, 80 NY2d 788; Reform Educ. Fin. Inequities Today v Cuomo, 80 NY2d 801; Matter of Lussy v Commissioners) of Labor, 80 NY2d 921; Board of Educ. v New York State Teachers’ Retirement Sys., 80 NY2d 968; Dawson v Higgins, 80 NY2d 969; Matter of Carella v Collins, 80 NY2d 1020. Art XVH, § 1 (Aid, care and support of needy persons). Lovelace v Gross, 80 NY2d 419. PENAL LAW. § 35.20 (3) (Justification; use of deadly physical force to prevent or terminate burglary of one’s premises). People v Godfrey, 80 NY2d 860.
*1107 STATUTES AND RULES CONSTRUED, 80 NY2d 1107 PENAL LAW — Continued § 40.10 (3) (Renunciation as defense; abandonment of criminal effort). People v Taylor, 80 NY2d 1; People v Acosta, 80 NY2d 665. §40.10 (5) (Renunciation as defense; "voluntary and complete renunciation” defined). People v Taylor, 80 NY2d 1. § 40.15 (Defenses; mental disease or defect). People v Santana, 80 NY2d 92. § 65.00 (1) (Probation; court not to sentence defendant to probation and imprisonment). People v Cerilli, 80 NY2d 1016. § 70.25 (2) (Concurrent and consecutive terms of imprisonment; consecutive terms prohibited for separate offenses committed through single act). People v Brown, 80 NY2d 361. § 70.25 (2-b) (Concurrent and consecutive terms of imprisonment; consecutive sentences where defendant commits violent felony offense while on bail; exception; mitigating circumstances). People v Santiago, 80 NY2d 916. § 110.00 (Attempt to commit crime). People v Acosta, 80 NY2d 665. § 120.20 (Reckless endangerment, second degree). People v Roth, 80 NY2d 239. § 135.20 (Kidnapping, second degree). People v Gonzalez, 80 NY2d 146. § 200.00 (Bribery, third degree). People v Tran, 80 NY2d 170. § 215.56 (Bail jumping, second degree). Matter of Natasha C., 80 NY2d 678. § 245.01 (Exposure of person). People v Santorelli, 80 NY2d 875. PRIVATE HOUSING FINANCE LAW. Art II (Limited-profit housing companies). Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev., 80 NY2d 19. § 12 (1) ("Areas” defined). Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev., 80 NY2d 19. § 35 (2) (Voluntary dissolution of limited-profit housing company after 20 years). Matter of Columbus Park Corp. v Department of Hous. Preservation & Dev., 80 NY2d 19. PUBLIC HEALTH LAW. § 580 (4) (Blood collection deemed public health service). Mondello v New York Blood Ctr. — Greater N. Y. Blood Program, 80 NY2d 219. PUBLIC OFFICERS LAW. § 3 (1) (Qualifications for holding office; residency requirement). Matter of Weidman v Starkweather, 80 NY2d 955. REAL PROPERTY LAW. § 442-c (Real estate brokers and salespersons; broker’s responsibility for violations by salesperson; "actual knowledge” of violation). Matter of Roberts Real Estate v New York State Dept, of State, Div. of Licensing Seros., 80 NY2d 116. REAL PROPERTY TAX LAW. § 102 (12) (a), (b) ("Real property”, "property” or "land” defined as land, buildings and structures erected under or above land). Consolidated Edison Co. v City of New York, 80 NY2d 794. § 102 (12) (e), (f) ("Real property”, "property” or "land” defined to include utility pipes, boilers and power-generating apparatus). Consolidated Edison Co. v City of New York, 80 NY2d 794. § 485-b (Business investment exemption). Matter of Bowery Sav. Bank v Board of Assessors, 80 NY2d 961. § 1801 (c) ("Utility real property” defined). Consolidated Edison Co. v City of New York, 80 NY2d 794. § 1802 (1) (Classification of real property in special assessing unit). Consolidated Edison Co. v City of New York, 80 NY2d 794. REGULATIONS OF DEPARTMENT OF ENVIRONMENTAL CONSERVATION. 6 NYCRR 617.11 (a) (11) (Criteria for determining significant effect on environment; related actions cumulatively meeting criteria). Matter of Long Is. Pine Barrens Socy. v Planning Bd., 80 NY2d 500. 6 NYCRR 617.11 (b) (Criteria for determining significant effect on environment; simultaneous or subsequent actions). Matter of Long Is. Pine Barrens Socy. v Planning Bd., 80 NY2d 500.
*1108 1108 80 NEW YORK REPORTS, 2d SERIES REGULATIONS OF DEPARTMENT OF INSURANCE. 11 NYCRR 60-1.1 (e) (Automobile liability insurance; mandatory coverage; vehicle operated out of State; minimum amount and kind of coverage required under laws of other jurisdiction). Matter of American Tr. Ins. Co. v Abdelghany, 80 NY2d 162. RULES OF COURT OF APPEALS. 22 NYCRR 500.9 (Dismissal for failure to proceed or to file papers). Baez v New York City Health & Hosps. Corp., 80 NY2d 800. 22 NYCRR 500.11 (d) (1) (iii) (Motions; permission to appeal in civil cases; showing of timeliness). Reuschenberg v Town of Huntington, 80 NY2d 801; Franov v Exxon Co., 80 NY2d 822. Fifth & Bergen Tenants Assocs. v Koch, 80 NY2d 854; Myers v Weeks, 80 NY2d 855. 22 NYCRR 500.11 (g) (3) (Reargument of appeals and motions; timeliness). Broceo v Mileo, 80 NY2d 822; Cottone v Cottons, 80 NY2d 890; People ex rel. Dixon v Warden, 80 NY2d 922. 22 NYCRR 500.17 (Discretionary proceedings to review certified questions from Federal courts and other courts of last resort). Hertz Corp. v City of New York, 80 NY2d 854; Gonzales v Armas Indus., 80 NY2d 914. SESSION LAWS. 1953, ch 768 (Consolidation of city and county public libraries). Buffalo & Erie County Pub. Lib. v County of Erie, 80 NY2d 938. 1989, ch 143, § 2 (Class shares of taxes in special assessing units; amendment of definition of "utility real property”). Consolidated Edison Co. v City of New York, 80 NY2d 794. 1992, ohs 76-78 (Redistricting of State Senate and Assembly). Matter of Wolpoff v Cuomo, 80 NY2d 70. SOCIAL SERVICES LAW. § 131-c (2) (Assistance and care; eligibility; consideration of income of grandparents with whom minor parent and grandchildren reside). Lovelace v Gross, 80 NY2d 419. § 392 (Foster care status; periodic Family Court review). Matter of Michael B., 80 NY2d 299. § 392 (6) (Foster care status; order of disposition; best interest of child). Matter of Michael B„ 80 NY2d 299. § 392 (6) (a) (Foster care status; review; continuation of foster care). Matter of Michael B., 80 NY2d 299. § 392 (6) (b) (Foster care status; review; return of child to parent, relative or other suitable person). Matter of Michael B., 80 NY2d 299. § 392 (6) (c) (Foster care status; review; termination of parental rights). Matter of Michael B„ 80 NY2d 299. STATE ADMINISTRATIVE PROCEDURE ACT. § 102 (2) (a) (i) ("Rule” defined; agency procedures available to public). Matter of Cordero v Corbisiero, 80 NY2d 771. § 202 (Rule-making procedure). Matter of Cordero v Corbisiero, 80 NY2d 771. TAX LAW. § 601 (d) (Tax on certain unearned income). Brady v State of New York, 80 NY2d 596. § 601 (e) (Nonresident tax on New York income). Brady v State of New York, 80 NY2d 596. § 1105 (b) (Sales tax; utilities and utility services). Debevoise & Plimpton v New York State Dept, of Taxation & Fin., 80 NY2d 657. § 1105 (c) (6) (Imposition of sales tax; parking lots; municipalities). Matter of Town ofN. Hempstead v Regan, 80 NY2d 936. § 1441 (Gains tax on real property transfers). Matter of Morgan Guar. Trust Co. v Tax Appeals Tribunal, 80 NY2d 44.
*1109 STATUTES AND RULES CONSTRUED, 80 NY2d 1109 UNITED STATES CODE. 29 USC § 1001 et seq. (Employee Retirement Income Security Act). Matter of Morgan Guar. Trust Co. v Tax Appeals Tribunal, 80 NY2d 44. UNITED STATES CONSTITUTION. 1st Amend (Freedom of speech). 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130. 6th Amend (Right to counsel). People v Enrique, 80 NY2d 869. VEHICLE AND TRAFFIC LAW. § 311 (3) ("Proof of financial security” defined). Matter of Federal Ins. Co. v Watnick, 80 NY2d 539. § 388 (1) (Negligence in use or operation of vehicle attributable to owner). Fried v Seippel, 80 NY2d 32. § 1192 (2), (3) (Driving while intoxicated). People v Beattie, 80 NY2d 840. WORKERS’ COMPENSATION LAW. § 10 (1) (Liability for compensation; no fault). Matter of Heintz v Brown, 80 NY2d 998. § 11 (Compensation; alternative remedy). Commissioners of State Ins. Fund v Insurance Co., 80 NY2d 992. § 13 (Treatment and care of injured employees). Matter of Leone v Oneida County Sheriffs Dept., 80 NY2d 850. § 15 (3) (Schedule in case of disability; permanent partial disability). Matter of Leone v Oneida County Sheriffs Dept., 80 NY2d 850. § 30 (3) (Revenues or benefits from other sources not to affect compensation; salary and medical expenses paid pursuant to General Municipal Law § 207-c). Matter of Leone v Oneida County Sheriffs Dept., 80 NY2d 850.